**United States District Court**
**Eastern District of Michigan**
**Southern Division**

United States of America,            Criminal No. 17-20183

        Plaintiff,            Hon. Mark A. Goldsmith

v.

D-2 Janette Gaggo,
D-4 Terry Pruitt,
D-5 Lashawn Nero,

        Defendants.
_____/

**Government's Combined Response to Defendants' Motions for Discovery,
Early *Brady* and Jencks, Grand Jury Materials, Witness List,
<u>Exhibit List, and Other Items (R. 232, 237, and 241)</u>**

## **Issues Presented**

1. Should the Court order pretrial disclosure of Jencks Act and *Brady/Giglio* material—even though only the specific categories of evidence outlined in Rule 16 are required to be disclosed before trial?

2. Should the Court order pretrial disclosure of grand jury materials—even though Defendants have failed to allege an irregularity in grand jury, let alone make the required showing to overcome the presumption of grand jury secrecy?

3. Should the Court order the government to provide Defendants with a witness list and witness addresses?

4. Should the Court order the government to produce law enforcement rough notes and related materials?

5. Should the Court take any action given that the government is aware of its ongoing disclosure obligations under Rule 16 and *Brady*?

# Authority

**Cases:**
*Brady v. Maryland*, 373 U.S. 83 (1963)
*Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211 (1979)
*Hamling v. United States*, 418 U.S. 87 (1974)
*Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 295 (1959)
*El–Moussa v. Holder*, 569 F.3d 250 (6th Cir. 2009)
*Norris v. Schotten*, 146 F.3d 314 (6th Cir. 1998)
*United States v. Azad*, 809 F.2d 291 (6th Cir. 1986)
*United States v. Bencs*, 28 F.3d 555 (6th Cir. 1994)
*United States v. Chitwood*, 457 F.2d 676 (6th Cir. 1972)
*United States v. Crayton*, 357 F.3d 560 (6th Cir. 2004)
*United States v. Davis*, 306 F.3d 398 (6th Cir. 2002)
*United States v. Driscoll*, 970 F.2d 1472 (6th Cir. 1992)
*United States v. Fowler*, 819 F.3d 298 (6th Cir. 2016)
*United States v. Hurst*, 510 F.2d 1035 (6th Cir. 1975)
*United States v. McCullah*, 745 F.2d 350 (6th Cir. 1984)
*United States v. Mullins*, 22 F.3d 1365 (6th Cir. 1994)
*United States v. Nathan*, 816 F.2d 230 (6th Cir. 1987)
*United States v. Perkins*, 994 F.2d 1184 (6th Cir. 1993)
*United States v. Pope*, 574 F.2d 320 (6th Cir. 1978)
*United States v. Presser*, 844 F.2d 1275 (6th Cir. 1988)
*United States v. Stephens*, 492 F.2d 1367 (6th Cir. 1974)
*United States v. Word,* 806 F.2d 658 (6th Cir. 1986)
*United States v. Brazil*, 395 F. App'x 205 (6th Cir. 2010)
*United States v. Dorman*, 108 F. App'x 228 (6th Cir. 2004)
*United States v. Valentine*, 59 F. App'x 171 (6th Cir. 1995)
*United States v. Bilyeu*, 2006 WL 680862 (E.D. Mich. 2006)
*United States v. Hart*, 760 F. Supp. 653 (E.D. Mich. 1991)
*United States v. Manning*, 2007 WL 4239274 (E.D. Mich. 2007)
*United States v. Neuhard*, 2016 WL 6871454 (E.D. Mich. 2016)
*United States v. Pegross*, 2007 WL 1771542 (E.D. Mich. 2007)
*United States v. Watson*, 787 F. Supp. 2d 667 (E.D. Mich. 2011)

**Other:**
Federal Rule of Criminal Procedure 6(e)
Federal Rule of Criminal Procedure 16
18 U.S.C. § 3500 (The Jencks Act)

## I. Introduction

Defendants Janette Gaggo, Terry Pruitt, and Harold Nero cast for a wide range of discovery including pretrial disclosure of Jencks Act and grand jury materials. But the law in this Circuit and District is against them and they are only entitled to specified Rule 16 materials prior to trial.

The government is aware of, and will timely honor, its discovery obligations under Rule 16 and otherwise. Given the important safety concerns in this case, the government intends to provide Jencks material one week before trial. The government will also exchange witness lists—contingent upon reasonable safety concerns—and exhibit lists in advance of trial, which is set for January 2020.

The government does not object to the request to maintain rough notes and has reminded law enforcement to do so. But Defendants have not made the requisite showing for production of rough notes.

The Court should deny Defendants' motions.

## II. Facts

### *The superseding indictment and witnesses*

A grand jury indicted Defendants for their roles in a predatory drug and sex trafficking conspiracy at the Victory Inn. (R. 98: Superseding Indictment). The indictments in this case followed the January 12, 2017 federal search warrant at the Victory Inn Hotel in Detroit. (R. 183: Opinion and Order Denying Nero's Motion

for Revocation of Detention Order). During the execution, agents rescued 14 lethargic female human trafficking victims who were suffering from drug withdrawal. (*Id*. at Pg ID 566).

After rescuing the human trafficking victims, agents were able to interview some who confirmed that Darrick Bell and other codefendants controlled, directed, and participated in the drug distribution and commercial sex at the Victory Inn. (*Id*.). Multiple witnesses stated that the conspiracy employed beatings, various threats, degrading actions, and dangerous addictive drugs to coerce the victims into commercial sex acts. (*Id*. at Pg ID 570). Revealing the identity of witnesses would put them in serious jeopardy. This is especially true given the extensive and troubling criminal histories of many Defendants. (R. 48 Opinion and Order Denying Gaggo's Motion for Revocation of Detention Order). And authorities are still looking for ringleader Bell, who has three felony weapons convictions, two felony controlled-substance convictions, an assault-with-a-dangerous-weapon conviction, and a murder conviction. (*Id*. at Pg ID 155). Bell is a concrete danger to any potential witness.

### *Voluminous discovery*

Defendants have received extensive discovery on each of the charges. Based on the volume and complexity of discovery, the Court appointed a discovery coordinator and designated this a mega case. The government has provided

Defendants with almost one thousand pages of discovery, dozens of videos, and approximately 15,000 hours of surveillance video from the Victory Inn (subsequently identifying over 1,800 suspected criminal events from the surveillance video). Defendants, through the discovery coordinator or directly, can access thousands of additional pages of hotel records (which provides specific names and dates) and phone records.

### *Defendants' motions*

Defendants Nero, Gaggo, and Pruitt all filed discovery motions on November 13, 2018. (R. 232, 237, and 241). Some Defendants have joined the motions.

### III. Argument

### A. Criminal discovery is limited

Defendants' blanket requests are the type of "fishing expedition" which the Jencks Act was designed to prevent and which courts reject. *United States v. Presser*, 844 F.2d 1275, 1283 (citing *United States v. Pope*, 574 F.2d 320, 324 (6th Cir. 1978)). For example, Nero requests nine subcategories of discovery, including a "preliminary witness list and the substance of the anticipated testimony of each witness," a "preliminary exhibit list," and "drug tests and results of drugs tests of" Nero. (Nero's Motion at Pg ID 988). He does not bother to cite any authority in support of these requests. (*Id.*). Pruitt has a similar laundry list including grand jury transcripts, "all other statements obtained from any witness," and "presentence

5

investigation report[s] for all witnesses who will testify." (Pruitt's Motion at Pg ID 958). And so too does Gaggo. (Gaggo's Motion at Pg ID 922-23).

But criminal discovery is circumscribed by three rules: (1) Federal Rule of Criminal Procedure 16; (2) The Jencks Act, 18 U.S.C. § 3500; and (3) the doctrine set forth in *Brady v. Maryland*, 373 U.S. 83 (1963). *Presser*, 844 F.2d at 1285 n.12 (in most criminal prosecutions, these rules "exhaust the universe of discovery to which the defendant is entitled"). "With regard to *Brady* and *Jencks* material, 'so long as the defendant is given impeachment material, even exculpatory material, in time for use at trial,' there is no constitutional violation." *United States v. Watson*, 787 F. Supp. 2d 667, 672 (E.D. Mich. 2011) (Goldsmith, J.) (quoting *Presser*, 844 F.2d at 1283)). And "the Jencks Act prohibits a court from ordering disclosure of Jencks material before the witness has testified in direct examination." *Id*. "Only the specific categories of evidence outlined in Rule 16 are required to be disclosed before trial." *Watson*, 787 F. Supp. at 672 (citing *Presser*, 844 F.2d at 1284-85). The government has provided Defendants with voluminous discovery and will continue to comply with Rule 16. Defendants nonetheless seek *Brady*, Jencks Act and grand jury materials (including law enforcement rough notes), witness lists and addresses, exhibit lists, and other items far in advance of trial.

6

**B.     Jencks material**

The production of witness statements and other Jencks Act material prior to trial would violate the express terms of the Act. 18 U.S.C. § 3500 ("In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."). The Act makes no distinction between a witness statement in a "rough" form or a final report. And Defendants cites no case for that proposition.

The Sixth Circuit in *Presser* held that "the government cannot be compelled to disclose impeachment material which would be covered by the Jencks Act relating to any potential government witness, whether it be a witness in the case-in-chief or a rebuttal witness." 844 F.2d at 1285. It cautioned that "[t]he clear and consistent rule of this circuit is that the intent of Congress expressed in the Act must be adhered to and, thus, the Government may not be compelled to disclose Jencks Act material before trial." *Id*. at 1283. This rule is necessary because "providing the defense with such a broad right of pre-trial discovery would vitiate an important function of the Jencks Act, the protection of potential government witnesses from threats of harm or other intimidation before the witnesses testify at trial." *Id*. at 1285.

7

The same is true for *Brady* material covered by Jencks. As the Sixth Circuit has "stated repeatedly, '[w]hen *Brady* material sought by a defendant is covered by the Jencks Act . . . the terms of that Act govern the timing of the government's disclosure.'" *United States v. Brazil*, 395 F. App'x 205, 215 (6th Cir. 2010) ((quoting *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002)). "If impeachment evidence is within the ambit of the Jencks Act, then the express provisions of the Jencks Act control discovery of that kind of evidence . . . the government may not be compelled to disclose Jencks Act material before trial." *Id*. (quoting *Presser*, 844 F.2d at 1283). "Put another way: the Jenks Act trumps *Brady* where impeachment evidence is Jencks Act material." *Id.* The Court in *Presser* found that any prejudice a defendant may suffer from the disclosure of impeachment evidence during trial can be eliminated by the court ordering a recess. *United States v. Bencs*, 28 F.3d 555 (6th Cir. 1994) (quoting *Presser*, 844 F.2d at 1283-84).

Given the important safety concerns in this case, the government intends to provide Jencks material one week before trial—which is early. *See United States v. Hart*, 760 F. Supp. 653, 659 (E.D. Mich. 1991) ("material covered by both *Brady* and the Jencks Act needs not be disclosed until after the witness has testified on direct examination."). If additional safety concerns arise, the government will modify the production timing, provide reasonable notice, and move for a protective order as needed.

8

## C. *Brady/Giglio* exculpatory and impeachment material

Much of what Defendants are seeking falls under the ambit of *Brady/Giglio* exculpatory evidence and impeachment material. For example, presentence investigation reports, Rule 11 and cooperation agreements, and the like. Their attempt to use *Brady* and *Giglio* and as a discovery vehicle is improper and should be denied for numerous reasons.

First, on exculpatory information, the government is well aware of its *Brady* obligations and has complied and will continue to comply with all of its obligations. To the extent that the government becomes aware of *Brady* exculpatory evidence, it will be produced.

Second, with *Brady/Giglio* impeachment material, Defendants' attempt to use *Brady/Giglio* as a discovery vehicle is foreclosed. The Sixth Circuit has repeatedly explained that the "Supreme Court has made clear that the *Brady* rule is not an evidentiary rule which grants powers to a defendant and that '[t]here is no general constitutional right to discovery in a criminal case.'" *United States v. Driscoll*, 970 F.2d 1472, 1482 (6th Cir. 1992); *see also United States v. Valentine*, 59 F. App'x 171 (6th Cir. 1995) (citing *Presser*) (explaining that *Brady* established a rule of due process, not a general constitutional right to discovery). "The Court also made it clear that while the *Brady* rule imposes a general obligation upon the government to disclose evidence that is favorable to the accused and material to guilt or punishment,

9

the government typically is the sole judge of what evidence in its possession is subject to disclosure." *Driscoll*, 970 F.2d at 1482. Defendants' attempt to use *Brady*/*Giglio* as a method for discovery should be summarily rejected.

And any request for *Giglio* impeachment material is premature. *Giglio* only applies to "key government witnesses" who actually testify at trial. *United States v. Mullins*, 22 F.3d 1365, 1372 (6th Cir. 1994) (*Giglio* only applies to witnesses who actually testify at trial because the basis for this requirement is that the information is relevant to impeach the witness, not that it is exculpatory of the defendant). It is black-letter law in the Sixth Circuit that *Giglio* impeachment evidence need only be disclosed "in time for use at trial" – *i.e.*, shortly before the key government witness testifies. *United States v. Crayton*, 357 F.3d 560, 568-69 (6th Cir. 2004) (no violation where *Giglio* material was produced just before the witness testified, after the government determined that it would call the individual as a witness). "[The Government is] under no obligation to give [*Giglio* statements] to [the defendant] before trial." *Carter v. United States,* 160 F. Supp. 2d 805, 811 (E.D. Mich. 2001). The Sixth Circuit holds that no *Brady*/*Giglio* violation exists where the disclosure was made during trial, as long as the defendant was not prejudiced by the in-trial disclosure. *Norris v. Schotten*, 146 F.3d 314, 334 (6th Cir. 1998); *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986). This is because "the overriding [*Giglio*]

concern [is] with the justice of the finding of guilt, not with the accused's ability to prepare for trial." *Norris*, 146 F.3d at 334.

Any request for disclosure of *Brady/Giglio* impeachment material at this juncture is unfounded—the government recognizes its *Brady/Giglio* obligations and will provide any such *Brady/Giglio* impeachment material "in time for use at trial" as required by the Federal Rule of Evidence and the Sixth Circuit.

**D.     Witness list and addresses**

Defendants also request the early disclosure of the names of the government's witnesses and their addresses. Defendants want this information 60 days before trial.

But the default rule in the Sixth Circuit is that a "defendant is not entitled to a list of the names and addresses of the government's witnesses." *United States v. Perkins*, 994 F.2d 1184, 1190 (6th Cir. 1993); *see also United States v. McCullah*, 745 F.2d 350, 353 (6th Cir. 1984) ("The default rule in this Circuit remains that "defense counsel is not entitled to know in advance of trial who will testify for the Government."); *Watson*, 787 F. Supp. 2d 673-74 (rejecting the defendant's request for "witness disclosure 60 days in advance of trial" because "the Sixth Circuit has stated that ordinarily, a defendant is not entitled to a list of the names . . . of the government's witnesses.") (internal citations and marks omitted). The Sixth Circuit "has firmly established that defense counsel is not entitled to know in advance of trial who will testify for the government." *McCullah*, 745 F.2d at 353. On this rule,

11

"[e]ven if one argues that broader discovery rules in this area 'might be desirable, the Constitution surely does not demand that much.'" *Id*.

And Defendants' complaints about the volume or complexity of information are insufficient to compel pre-trial disclosure of the government's witness list. *See United States v. Manning*, 2007 WL 4239274, at *1 (E.D. Mich. 2007) (Steeh, J.) (defendant's "characterization of this case as complex does not warrant compelled pre-trial disclosure of a government witness list").

Notwithstanding the fact that Defendants are not entitled to a witness list, the government is willing to mutually exchange witness lists one week before trial. If safety concerns require it, the government may seek to modify the list, timing of disclosure, and also move for a protective order as needed. *See Watson*, 787 F. Supp. 2d 674-75 ("Should there be a security reason for withholding a name from the witness list, the government may move for a protective order[.]").

**E.     Expert witnesses**

Defendants request the names of any expert witnesses who will be testifying, copies of their reports and the data upon which their opinions are based. At this point, the government does not intend to call any expert witnesses. If that changes, the government will provide all reports as required by Rule 16(a)(1)(G).

12

**F.     Grand jury materials**

Defendants also request statements of witnesses who have testified before a grand jury. Any request for grand jury materials prior to trial is blocked by the Jencks Act and because they have not stated a "particularized need" for the disclosure of any grand jury testimony under Federal Rule of Criminal Procedure 6(e).

Rule 6(e) provides that the court may disclose grand jury material "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). But the Supreme Court held that the Rule 6(e) exceptions apply only when a party seeking disclosure of grand jury material shows a "particularized need" for that material. *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 222 n. 12 (1979); *United States v. Bilyeu,* No. 05-CR-80710, 2006 WL 680862, at *3 n.2 (E.D. Mich. Mar. 16, 2006) (denying request for grand jury materials where defendant failed to show particularized need).

A party challenging a grand jury proceeding carries a "heavy burden" in demonstrating "particularized need" for disclosure. *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 295, 299-400 (1959). And there is a presumption of regularity attached to grand jury proceedings. *Hamling v. United States*, 418 U.S. 87 (1974); *United States v. Azad*, 809 F.2d 291, 295 (6th Cir. 1986). Defendants have

failed to allege an irregularity in grand jury, let alone make the required showing to overcome the presumption of grand jury secrecy.

## G. Rough notes

Defendants also request law enforcement rough notes (and other materials) and want them before trial. The government does not object to maintaining rough notes and has reminded law enforcement to do so.

But rough notes of agent interviews of witnesses are not Jencks material and defendants have no discovery right to such documents, before, during or after trial. *See United States v. Hurst*, 510 F.2d 1035, 1036 (6th Cir. 1975) ("where the agent's report is available and produced on request, the destruction of his interview notes is not a violation of either the Jencks Act or applicable case law."). In short, "rough notes are typically not discoverable." *United States v. Neuhard*, No. 15-CR-20425, 2016 WL 6871454, at *12 (E.D. Mich. Nov. 22, 2016) (Drain, J.) (citing *United States v. Stephens*, 492 F.2d 1367, 1377 (6th Cir. 1974) ("The Jencks Act applies to a 'substantially verbatim recital' of an oral statement by a witness and does not apply to an officer's rough notes.")).

In contrast, a "government agent's rough notes taken during witness interviews may be discoverable per the Jencks Act if '(1) the notes were read back to and verified by the witnesses and (2) the reports summarized the notes without material variation.'" *Id*. (quoting *United States v. Chitwood*, 457 F.2d 676, 678 (6th

Cir. 1972)). "Unless those conditions are satisfied, the rough notes being retained by the government and its agents are not discoverable under the Jencks Act." *Id. See also United States v. Dorman*, 108 F. App'x 228, 245 (6th Cir. 2004) (agent "interview summaries did not constitute statements covered by the Jencks Act.") (citing *United States v. Nathan*, 816 F.2d 230 (6th Cir. 1987)). Defendants do not make this claim.

### H. Expert witnesses

Defendant Gaggo states that she was interviewed prior to her arrest but has not received "these statements or conversations." (Gaggo Motion at Pg ID 232). The government will confirm with the discovery coordinator that it has provided any defendant's statements (if such a statement exists) to that defendant as required by Rule 16(a)(1)(B)(ii) ("Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following . . . (ii) the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent[.]").

### I. The government will continue to comply with its discovery obligations

The government is aware of its ongoing disclosure obligations under Rule 16 and *Brady*, so there is no need for action by the Court. *See United States v. Pegross*,

15

No. 05-CR-80949, 2007 WL 1771542, at *2 (E.D. Mich. June 15, 2007) ("The Court will not compel pre-trial discovery where, as here, the Government has conceded that it is aware of its obligations under Rule 16, *Brady*, and *Giglio*; and Defendant fails to establish that any of these rules require disclosure of the requested material at this time."). This includes the retention of discoverable materials.

### IV.     Conclusion

This Court should deny Defendants' motions (R. 232, 237, and 241).

Respectfully Submitted,

Matthew Schneider
United States Attorney

*/s Jerome F. Gorgon Jr.*
JEROME F. GORGON JR.
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-9676
jerome.gorgon@usdoj.gov

Date: December 6, 2018

## **Certificate of Service**

I hereby certify that on December 6, 2018, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification to the attorneys of record, including Mark Magidson, S. Allen Early, and Michael Friedman.

>*/s Jerome F. Gorgon Jr.*
>JEROME F. GORGON JR.
>Assistant United States Attorney
>211 West Fort Street, Suite 2001
>Detroit, Michigan  48226-3211
>(313) 226-9676
>jerome.gorgon@usdoj.gov