UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-1 DARRICK DERNARD BELL,

    Defendant.

_____/

Case No. 17-cr-20183

HON. MARK A. GOLDSMITH

**OPINION & ORDER**
**GRANTING DEFENDANT'S MOTION FOR AN ORDER AUTHORIZING RULE 17(c) SUBPOENA (Dkt. 414)**

This criminal case involves multiple defendants, all of whom have been charged with involvement in a complex drug and human trafficking conspiracy and related crimes at the Victory Inn Hotel ("Victory Inn") in Dearborn, Michigan. Defendant Darrick Dernard Bell has filed a motion requesting an order authorizing the issuance of a subpoena duces tecum under Federal Rule of Criminal Procedure 17(c) and seeking the production of surveillance video from the Traveler's Motor Lodge ("Traveler's") in Redford, Michigan (Dkt. 414). Defendants Harold Nero, Shelvie Avery, Janette Gaggo Tawfik, Terry Pruitt, and Charles Ford join in Bell's motion (Dkts. 423, 425, 426, 427, 452). For the reasons discussed below, the Court grants Bell's motion.

**I. BACKGROUND**

A federal grand jury indicted Bell with eleven charges for various crimes, including participation in a sex trafficking conspiracy, 18 U.S.C. § 1594(c), and distribution of a controlled substance resulting in death, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). See generally Superseding Indictment (Dkt. 98). The indictment claims that Bell, one of the leaders and managers of the conspiracy, and other Defendants distributed illegal narcotics at the Victory Inn,

not only to customers but also to human trafficking victims, in order to control and coerce those victims into committing commercial sex acts. Because the Court has previously described the factual and procedural background of this case in greater detail in other opinions, it need not do so again for purposes of the present motion. See, e.g., 7/15/2019 Op. & Order (Dkt. 306) (denying Defendant Ford's motion for bond).

Of particular relevance to the present motion are the events that took place at Traveler's on October 17, 2016.[1] On that date, law enforcement agents responded to a complaint reporting human trafficking in room 102 at Traveler's. Gov't Resp. at 2. When agents arrived at Traveler's, they encountered Victim 2 outside room 102. Id. During an interview, Victim 2 reported that another woman in room 108 was involved in a human trafficking conspiracy and was loyal to an individual named "Tone," who might be a leader of a human trafficking organization.[2] Id. Agents surveilled rooms 102 and 108 and observed an individual later identified as Donyal Grant near the rooms. Id. Victim 2 identified Grant from a photograph, stating he was an enforcer who worked for Tone's organization. Id.

When Grant entered a nearby room, agents responded to room 108 and discovered a semi-conscious woman, later identified as Sarah Dehart, laying on the bed. Id. at 2-3. Next to Dehart was a bag of suspected crack cocaine and a pipe. Id. at 3. When questioned, Dehart stated that Tone was a good person and that the drugs were hers. Id. Agents arrested Dehart and removed her from the scene. Id.

---

[1] The following description of events is taken from the Government's response brief. The Government represents that these facts are documented in agents' reports supplied to defense counsel. Gov't Resp. at 3 (Dkt. 457). Bell does not dispute the Government's narrative. See generally Bell Reply (Dkt. 466).

[2] The indictment identifies "Tone" as one of Bell's aliases. Superseding Indictment at 1.

While agents were in room 108, Grant left a nearby room with Victim 1. Id. Agents arrested Grant and interviewed Victim 1. Id. Victim 1 stated that she was addicted to heroin, that Grant was her pimp, and that she was a prostitute. Id. She further explained that Grant took the money she earned from prostitution, and that he employed physical threats and withheld heroin to coerce her into working for him. Id. Victim 1 denied knowing an individual named Tone but stated that she might have heard Grant mention the name. Id. Agents transported Victim 1 from the scene at her request. Id. In total, agents were present at Traveler's on October 17, 2016, from approximately 10:15 a.m. until 2:00 p.m. Id.

The Government obtained, and supplied to defense counsel, surveillance video from Traveler's from 7:00 p.m. on October 14, 2016, through 8:00 a.m. on October 17, 2016. Id. at 3-4. Bell seeks the surveillance video for the remainder of October 17, 2016, from 8:00 a.m. through midnight. Bell Mot. at 4; Def. Correction of Dates at 2 (Dkt. 447).

## II. STANDARD OF DECISION

Federal Rule of Criminal Procedure 17(c) authorizes the issuance of subpoenas duces tecum in federal criminal proceedings. A subpoena issued pursuant to this rule "may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1). The rule further provides that "[t]he court may direct the witness to produce the designated items in court before trial or before they are to be offered into evidence." Id. The court may also "permit the parties and their attorneys to inspect all or part of those items when they arrive." Id.

But courts do not rubber-stamp such applications. The Supreme Court has repeatedly emphasized that Rule 17(c) was not intended to expand the scope of discovery in criminal cases. United States v. Nixon, 418 U.S. 683, 698-699 (1974) (noting the rule's "chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed

3

materials") (citing Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951)); see also United States v. Llanez-Garcia, 735 F.3d 483, 494 (6th Cir. 2013) ("Rule 17(c) is not meant to provide an additional way to secure pretrial discovery."); United States v. Jannuzzio, 22 F.R.D. 223, 228 (D. Del. 1958) ("[T]he purpose of a subpoena duces tecum is to enable a party to obtain evidence at the trial to use in support of his case—not to pry into the case of his adversary.") (emphasis in original).

Thus, the moving party must satisfy the following four conditions before a Rule 17(c) subpoena will issue: (i) the documents are evidentiary and relevant; (ii) the documents are not otherwise procurable through the exercise of due diligence prior to trial; (iii) the party cannot properly prepare for trial without the pretrial production and inspection of the documents; and (iv) the application was made in good faith and is not a fishing expedition. Nixon, 418 U.S. at 699-700; United States v. Hughes, 895 F.2d 1135, 1146 (6th Cir. 1990) (same).

The moving party must show that the requested materials are admissible, as well as identify and describe the documents with sufficient specificity. See Nixon, 418 U.S. at 700. This latter specificity requirement ensures that a Rule 17(c) subpoena will not be used as a "fishing expedition to see what may turn up," and it is often the most difficult hurdle to overcome. United States v. Wittig, 250 F.R.D. 548, 552 (D. Kan. 2008) (citation and quotation marks omitted); United States v. Libby, 432 F. Supp. 2d 26, 32 (D.D.C. 2006). A party's request will generally be sufficiently specific if "it limits documents to a reasonable period of time and states with reasonable precision the subjects to which the documents relate." Wittig, 250 F.R.D. at 552; see also United States v. Shanahan, 252 F.R.D. 536, 540 (E.D. Mo. 2008) ("As the period of time increases, so must the subpoena's particularity."). "If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes something useful will turn up, the requirement of specificity will not

4

have been met." United States v. Tucker, 249 F.R.D. 58, 62-63 (S.D.N.Y. 2008); accord Wittig, 250 F.R.D. at 552 ("The specificity and relevance requirements demand more than the title of a document and conjecture concerning its contents.").

### III.  DISCUSSION

Bell seeks production of Traveler's surveillance video from 8:00 a.m. through midnight on October 17, 2016, the date of the investigation described above.  Bell Mot. at 2.  The Government opposes Bell's motion on three grounds: (i) that the video is not relevant, (ii) that Bell has not demonstrated an inability to prepare for trial without production of the video, and (iii) that Bell merely speculates regarding the likely contents of the video.  Gov't Resp. at 6-8. As explained below, Bell has made a sufficient showing of the four requisite Nixon factors for the issuance of the requested Rule 17(c) subpoena directed to Traveler's.

With respect to the first factor, the October 17, 2016 investigation of human trafficking at Traveler's is evidentiary and relevant to the present charges involving a similar human trafficking conspiracy at the Victory Inn.  As described above, Victim 2 stated that Grant worked for an individual named "Tone," the leader of a human trafficking organization.  According to the indictment, "Tone" is one of Bell's aliases.  Superseding Indictment at 1.  Such allegations suggest that Bell was the leader of a pervasive human trafficking organization operating at both Traveler's and the Victory Inn.  Video documenting the investigation of the alleged human trafficking conspiracy at Travelers is, therefore, relevant to the present charges regarding a potentially related human trafficking conspiracy at the Victory Inn.

Bell further asserts that the video is relevant because it will demonstrate that he was uninvolved in the human trafficking allegedly taking place at Traveler's.  In particular, he maintains the video will show that he was not present at Traveler's on October 17, 2016, and that Victims 1 and 2 were associating exclusively with Grant, an independent actor with no

5

association to Bell. Bell Mot. at 4; Bell Reply at 4. Evidence that Bell was uninvolved in the human trafficking conspiracy at Traveler's would undermine, at least in part, any theory that Bell was a leader of a large-scale human trafficking organization operating at both Traveler's and the Victory Inn. These facts, therefore, permit a rational inference that the video is relevant to the present charges.

The Government disputes the video's relevance, arguing that Grant's possible guilt or involvement in a human trafficking conspiracy does not necessarily undermine Bell's participation in the conspiracy. Gov't Resp. at 6-7. The Government is correct that in many cases the potential guilt of another is not a defense to a charged crime. United States v. Farrow, 574 F. App'x 723, 730-31 (6th Cir. 2014). However, this principle is limited to cases in which a defendant alleges that other parties, in addition to himself, were responsible for the crime. Id. at 731. It does not preclude a defendant from presenting a defense alleging the guilt of other parties instead of himself. Id. Here, the defense asserts that Grant, and not Bell, was responsible for the human trafficking that allegedly took place at Traveler's. Therefore, this defense is not foreclosed, and Bell has established the relevance element.

Turning to the second Nixon hurdle, Bell has established that he is unable to otherwise procure the surveillance video. As stated above, the Government provided defense counsel with surveillance videos from Traveler's from 7:00 p.m. on October 14, 2016, through 8:00 a.m. on October 17, 2016. Gov't Resp. at 3-4. Bell requested from the Government the surveillance video for the remainder of October 17, 2016, from 8:00 a.m. through midnight; however, the Government indicated it did not have the additional video. Bell Mot. at 3. Thus, Bell has established, and the Government has made no effort to refute, that he is unable to procure the video through means other than a subpoena.

With respect to the third Nixon factor, Bell has established that he is unable to properly prepare for trial without the pretrial production of the video. Bell asserts that although the Government's witnesses and trial strategy are unknown to him, there is no doubt that the Government will present evidence at trial concerning the October 17, 2016 investigation at Traveler's, including testimony from responding agents and from Victim 2. Bell Reply at 2-3. Obtaining access to the video documenting the investigation is, therefore, critical to Bell's ability to rebut the Government's likely theory that Bell was the leader of a pervasive human trafficking conspiracy operating at both Traveler's and the Victory Inn. It would also complete the record and contextualize the surveillance video already supplied by the Government to the defense.

The Government contends that Bell can adequately prepare for trial without the additional surveillance video, as he has already been provided with a voluminous amount of discovery, including 15,000 hours of video surveillance from the Victory Inn. Gov't Resp. at 7. Additionally, the responding agents who conducted the investigation at Traveler's will be available to testify regarding their actions and observations. Id. at 8. But the Government does not explain how video surveillance from the Victory Inn would enable Bell to respond to evidence regarding his alleged role in human trafficking at Traveler's. And as indicated above, obtaining access to the video is critical to Bell's ability to properly defend against responding agents' testimony regarding the investigation. Thus, Bell has established that he is unable to effectively prepare for trial without the video.

Finally, regarding the fourth Nixon factor, there can be no question that Bell's subpoena request is sufficiently specific and does not constitute a "fishing expedition." A party's request will generally be sufficiently specific if "it limits documents to a reasonable period of time and states with reasonable precision the subjects to which the documents relate." Wittig, 250 F.R.D. at 552. Far from a request for "any and all records," Bell's request is precisely tailored to a

particular type of evidence (surveillance video) over a span of sixteen hours on a particular date. Cf. United States v. Mendinueta-Ibarro, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013) ("Subpoenas seeking 'any and all' materials, without mention of 'specific admissible evidence,' justify the inference that the [party] is engaging in the type of 'fishing expedition' prohibited by Nixon.").

The Government contends that Bell merely speculates regarding the contents of the information contained in the video, which is insufficient for purposes of Rule 17(c). Gov't Resp. at 6. To the contrary, Bell states with reasonable precision what he expects the video will show—the events of the investigation and that Grant, and not Bell, was present at the scene. Indeed, it is not necessary under Rule 17(c) to fully describe the contents of evidence where there is sufficient likelihood that the evidence is relevant to the charged offenses. See Nixon, 418 U.S. at 700. Consequently, Bell has established the specificity element.

### IV. CONCLUSION

For the reasons stated above, the Court grants Bell's motion requesting an order authorizing the issuance of a subpoena under Federal Rule of Criminal Procedure 17(c) (Dkt. 414). Specifically, the Court grants the motion to the extent it seeks an order authorizing the issuance of a subpoena to Traveler's Motor Lodge in Redford, Michigan, seeking production of video surveillance from October 17, 2016, taken between 8:00 a.m. and midnight.

SO ORDERED.

Dated: June 11, 2020　　　　　　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge