# US DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION-DETROIT

**UNITED STATES OF AMERICA**

        **Plaintiff,**

**v.**

        **Case No. 17-20183**
        **Hon. Mark Goldsmith**

**D-1 DARRICK BELL**

        **Defendant.**

---

| | |
|---|---|
| UNITED STATES ATTORNEY | AMBERG & AMBERG, PLLC |
| Matthew Schneider (P62190) | James W. Amberg (P68564) |
| Jerome Gorgon | Attorneys for D-1 Darrick Bell |
| Attorneys for the Government | 32121 Woodward Ave, Ste PH |
| 211 W. Fort Street, Suite 2001 | Royal Oak, MI 48073 |
| Detroit, MI | 248.681.6255 office |
| 313.226.9100 office | 248.681.0115 fax |
| | www.amberglaw.net |

---

## DEFENDANTS BELL AND NERO'S JOINT RESPONSE TO THE GOVERNMENT'S PROPOSED VIDEO EVIDENCE MEMORANDUM

### Certificate of Service

---

      In response to this Court's Order (ECF 632) requiring the Government to identify and disclose the segments of surveillance video it intends to present at trial as well as producing transcripts of the audio portions of the surveillance videos it intends to preset at trial.  The Government has done so (ECF 683) and this response follows.  Because of the lengthy proffer of the Government, Mr. Bell and Mr. Nero first provides general law that is involved in many of his objections to the Government's proffered evidence.  Ultimately, the Mr. Nero and Mr. Bell requests the Court deny the Government their request to use much of the evidence they wish in the videos.

**Pertinent Law**

I.  <u>Relevancy</u>

FRE 402 states that "[e]vidence which is not relevant is not admissible." FRE 401 states that "'Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FRE 403 indicates that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In determining whether the offered evidence is probative of a material issue other than character, the court must apply a three-part inquiry as follows: "(1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." *United States v Bell*, 516 F3d 432, 441 (2008)  Accordingly, the "government's purpose in introducing the evidence must be to prove a fact that the defendant has placed, or conceivably will place, in issue, or a fact that the statutory elements obligate the government to prove." *United States v Merriweather*, 78 F3d 1070, 1074 (6th Cir 1996)

II.  <u>Authentication and Foundation</u>

Many of the videos offered by the government show unknown people. Without any foundation or authentication from the unknown people in the videos, under FRE 901(b)(1), the government cannot speculate, infer, and conclude for the jury the meaning of their activities in the videos.

The Advisory Committee Notes on Fed R Evid 901 provide the following:

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

> Authentication and identification represent a special aspect of relevancy. Thus a telephone conversation may be irrelevant because on an unrelated topic or because the speaker is not identified. The latter aspect is the one here involved. Wigmore describes the need for authentication as "an inherent logical necessity." [Notes of Advisory Committee on Rules Subdivision (a)(citations omitted)]

There is no evidence that the unknown people in the videos either had a relationship with any of the Defendants or knew any of the Defendants. Without foundation, the videos are irrelevant. Fed R Evid 401, 901(a)

III.     Hearsay

Hearsay is any out-of-court statement that is offered to prove the truth of the matter asserted in the statement. FRE 801  If a statement qualifies as hearsay, it is inadmissible unless a hearsay exception applies. "[T]he burden of proving that the statement fits squarely within a hearsay exception rests with the proponent of the hearsay exception." *United States v Arnold*, 486 F3d 177, 206 (6th Cir 2007) (punctuation modified, citation omitted)

IV.     Use of Agent to Provide Lay Testimony of Video Interpretation

The Court has previously discussed this issue in the case at hand in denying without prejudice certain defendants requests to prevent the Government from allowing its agents to interpret the happenings on the videos.  (See ECF 383)  As the Court found:

> "Even when an officer's lay opinion is based on personal experience, however, that testimony must also be helpful to the jury under Rule 701(b). In general, lay opinion testimony is helpful within the meaning of Rule 701(b) when the witness has "enjoyed significantly more time to study and compare the evidence" than the jury. *United States v Shields*, 480 F App'x 381, 387 (6th Cir 2012)(approving admission of an officer's lay opinion regarding similarities between the tread on the defendant's shoes and a photograph of shoe prints at the crime scene). By contrast, lay opinion testimony is not helpful "when a witness ... forms conclusions for a jury that the jurors are competent to reach on their own." *Kilpatrick*, 798 F3d at 380 Thus, for example, an officer "may not explain to a jury what inferences to draw from recorded conversations involving ordinary language," which would be readily understandable to a juror. *Freeman*, 730 F3d at 598  Nor may an officer "merely tell the jury what result to reach" or "effectively spoon-fe[ed]

his interpretations of the phone calls and the government's theory of the case to the jury...." *Id*. Lay opinion witnesses must also avoid expressing a conclusion regarding a defendant's guilt. *Kilpatrick*, 798 F3d at 381"  ECF 383

V.    Confrontation of Witnesses

The Confrontation Clause guarantees a criminal defendant the opportunity for effective cross-examination, "the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v Alaska*, 415 US 308, 316 (1974)  Because cross-examination may reveal a witness' biases, prejudices, or ulterior motives, a violation of the Confrontation Clause occurs when a criminal defendant is "prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness...." *Delaware v Van Arsdall*, 475 US 673, 680 (1986)

VI.    Rule of Completeness

FRE 106, Remainder of or Related Writings or Recorded Statements, states that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time." *Id*

VII.    Other Act Evidence

FRE 404(b)(1) indicates that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

**General Argument to the Entirety of the Video Evidence**

As the Court will see argued in great detail below, the defendants object to nearly all of the proffered video clips being admitted at trial.  These arguments can be separated out into two distinct categories: Camera One, which contains audio;

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

and the remaining video evidence, which contains no audio.  As to the former, this response contains detailed objections, such as hearsay, confrontation, and numerous other issues.  These issues are specifically discussed at length in each objection.

As to the video that does not contain audio, it becomes clear that there is a common theme amongst nearly all of the proffered clips.  The vast majority of these clips involve speculation and lack an adequate foundational evidentiary basis to be admitted.  Many times, the individuals on the video are not known, yet the Government intends somehow to show the intent of what these people were doing. The inferences made in these videos are speculative and without having these individuals testify or somebody with intime knowledge of a particular video clip, the result is that the Government, if allowed, will be able to present evidence that is irrelevant and highly prejudicial.

A prime example of this is when the Government indicates their intention to admit evidence of an unknown person's intoxication.  There are a multitude of questions that must be answered before that evidence potentially becomes relevant.  Factors such as: whether the person is actually intoxicated or simply acts in a particular manner all of the time; if they are intoxicated, then is it drugs or alcohol; and where did the drugs or alcohol come from, as evidence certainly suggests that there were multiple non-conspiracy related drug dealers operating within the hotel, as well as a bar sharing the parking lot.  If the Government is simply allowed to have an agent say that an unknown person is intoxicated, without any of this information, then the defendants will have no ability to cross examine that person on those crucially important questions.  Further, without answer to these questions, the alleged evidence of intoxication is irrelevant.

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

The results of not knowing the individuals is that allowing their non-verbal statements and actions in as evidence will result in violations of the Confrontation Clause, and allows for speculative evidence to be improperly considered by the Jury.  As such, unless the Government can somehow answer these questions, then the admissibility of this evidence should be denied.

Even with the non-verbal evidence involving named defendants should be carefully scrutinized.  For instance, Nero's presence at the hotel by itself is not a fact that tends to make the allegations of a conspiracy more probable.  Even if Nero is interaction with other individuals, unless there is some evidential basis for the conversations or actions taking place, it is entirely speculative to simply assume that something criminal is afoot.  As such, these video clips are irrelevant.

### Government Exhibit A – Camera One

1.   <u>CH01-Item 201 (P16)</u>

The Government seeks to introduce video evidence of a conversation between Tawfik and Nero regarding an unknown woman whom Nero allowed into his room.  In what appears to be a bit of a disconnected conversation, the Government attempts to tie the unknown individual into the alleged conspiracy. There are numerous objections to this video.  First, the video appears to contain hearsay statements from the unknown individual which are inadmissible.  Second, unless the Government intends to call Ms. Tawfik to explain the meaning of the conversation, there is a lack of foundation as to what the parties meant during their conversation.  Instead, it appears that the Government will likely use its agents to provide impermissible lay testimony.  Third, without the impermissible interpretation by agents, the contents of this clip are not relevant and highly prejudicial.  Fourth, it appears that the individuals on the video may be discussing

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

a separate drug dealing group operating in the Victory Inn, which is far different from how the Government explains what happens.

2.  <u>CH01-Item 214 (P17)</u>

This clip is premised on hearsay statements of an unknown individual and are thus inadmissible.  Not knowing this individuals' motives, or even precisely what they are referring to, creates a relevancy issue.  Further, the inability of defense counsel to confront this witness is a violation of the Confrontation Clause.  Additionally, the defense viewing of this particular video suggests that the "woman" who was allegedly being beaten in her room for four days was referencing her boyfriend, an individual who is not involved in the alleged conspiracy.  Finally, viewing the video in the entirety, the conversation between defendant Gaggo and the unidentified woman is 24 minutes long, yet the Government only wishes to play less than two minutes of that conversation.  At trial, the Rule of Completeness may require playing additional parts of the clip as it appears the additional parts of the video puts who is hurting the woman into context and goes directly against the Government's arguments that this individuals' experience had any involvement with the alleged conspiracy.

3.  <u>CH01-Item 237 (P18)</u>

This clip involves clear hearsay.  An unknown woman makes statements about another unidentified prostitute has HIV and is not telling their clients about it.  This is not only hearsay, but there is no relevancy between the conversation and the alleged conspiracy.  Ultimately, this clip is hearsay, irrelevant, lacks foundation, and would violate the Confrontation Clause if played to the Jury.

4.  <u>CH01-Item 240 (P19)</u>

This clip involves multiple defendants and purported conspiracy members discussing various topics.  The first issue is whom will testify about the contents of

the clip.  If the Government intends on having the agent play this to the jury and then provide their opinion on what is being discussed, then Mr. Bell objects to its introduction.  Further, parts of this conversation, such as discussions of a bbq and rent, are not relevant to the case.

    5.   <u>CH01-Item 261 (P20)</u>

This clip is an encounter between Tawfik and an unknown woman.  The first objection is that the Government wishes to show the unidentified woman making a phone call, which would be hearsay, a violation of the Confrontation Clause, and not relevant as there is no known foundation for the evidence.  As to the remaining portions of the clip, unless Tawfik testifies, the same objection applies as to the relevancy of the conversation as it would require agent lay opinion testimony.

    6.   <u>CH01-Item 294 (P21)</u>

This is another clip involving a hearsay conversation between Tawfik and an unknown female.  Everything the unknown female says is hearsay, violation of the Confrontation Clause, and not relevant because there is a lack of foundation as to what events she is discussing.  Further, as with previous objections, this evidence cannot be interpreted by agents.

    7.   <u>CH02-2016-12-16-14-33-14; Item 307-1-CH 1-2019-12-16-19-40-05; 307-2 CH 1-2016-12-16-19-49-23a (P21-22)</u>

These clips reflect the "assault" videos that the Government has identified in numerous filings.  The objection to the admissibility of this evidence is first that there is an inadequate nexus between the actions on the video and that of an overarching sex trafficking conspiracy.  Unless the Government can provide some context for why the alleged assault takes place, the clip is nothing more than a fight at a hotel.  A further objection is if the Government attempts to have the

AMBERG & AMBERG, PLLC<br>ATTORNEYS AND COUNSELORS<br>32121 WOODWARD AVENUE, PH<br>ROYAL OAK, MI 48073<br>WWW.AMBERGLAW.NET<br>(248) 681-6255

agents testify as to the reasons for the assault.  Finally, this is improper character evidence unless it can b

### 8. CH01-Item 319 (P23)

As with many of the other clips, some of the video involves the hearsay statements of unknown individuals.  This violates the Confrontation Clause, is hearsay, and is otherwise irrelevant.  Further, the conversation referenced requires some type of agent interpretation in order to provide a foundational basis for admissibility and is otherwise speculative.  As such, its playing is objected to.

### 9. CH01-Item 324 (P24)

As with many of the other clips, some of the video involves the hearsay statements of unknown individuals.  This violates the Confrontation Clause, is hearsay, and is otherwise irrelevant.  Further, the conversation referenced requires some type of agent interpretation in order to provide a foundational basis for admissibility and is otherwise speculative.  As such, its playing is objected to.

### 10. CH01-Item 325a; 325b (P25)

As with many of the other clips, some of the video involves the hearsay statements of unknown individuals.  This violates the Confrontation Clause, is hearsay, and is otherwise irrelevant.  Further, the conversation referenced requires some type of agent interpretation in order to provide a foundational basis for admissibility and is otherwise speculative.  As such, its playing is objected to.

### 11. CH01-Item 344 (P26)

The video shows Randol turning to an unknown woman and telling her, "cut and make sure she pay her shit right now." Nero then addresses the woman saying "yeah, pay your shit right now." The woman pays Gaggo. Randol and Nero then pay Gaggo money.

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET
(248) 681-6255

Without any foundation or authentication from the persons in the video under FRE 901(b)(1), or any showing that there is some other context to this conversation at the front desk of an inn, it would invade the province of the jury for the government to speculate, infer, and conclude for the jury, via testimony about the video, that Nero is an enforcer who helps Gaggo collect money for a conspiracy. The woman could have been paying her bill for renting a room instead of paying into the conspiracy as the government suggests, and that is for the jury to decide. This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

12.  <u>CH01-Item 369 (P27)</u>

This clip shows conversation between Gaggo and an unidentified individual discussing another unknown individual in the context of a narcotics related discussion.  As was many of these clips, it contains mainly inadmissible hearsay. Further, there is a lack of foundation as to the exact meaning of the conversation, and no lay opinion testimony from an agent discussing the meaning of the conversation will eliminate the speculative nature of it.  As such, it is irrelevant, prejudicial, and inadmissible.

13.  <u>CH01-Item 393 (P28)</u>

This video shows Gaggo ask Randol if they are going to "need anything for tomorrow?" The government concludes that Gaggo was asking if Randol needed more drugs. Gaggo reminds Randol that the last time she and Bell came he did not answer Randol phone and they had to leave the stuff with "Honey." The government concludes that the stuff was drugs and that Honey is a known prostitute in the employ of Bell.

Gaggo and Randol discuss the fact that Honey is missing, and no one has heard from her in some time. Honey has not called or been seen by anyone.

Throughout their conversation, Randol hands Gaggo cash, which the government concludes is a "large sum." Gaggo counts the cash and tells Randol he owes "6" more. Gaggo takes the cash, puts some in a white envelope, and takes it to the back. Randol says Honey is "most definitely getting fucked up."

The assertions and claims of the Government are pure speculation, and therefore this clip is not relevant and is more prejudicial than probative.

Randol's statements about Honey are irrelevant under FRE 401.

It invades the province of the jury for the government to speculate, infer, and conclude for the jury, via testimony based on this video, that Bell, Randol, and Gaggo were involved in a drug and sex trafficking conspiracy at the Victory Inn; that Bell supplied the drugs to members of the conspiracy; Gaggo communicated to members of the conspiracy for Bell to help Bell minimize his visibility and involvement in the conspiracy; and Randol sold drugs as part of the conspiracy.

Without any foundation or authentication from the persons in the video under FRE 901(b)(1), or any showing that there is some other context to this conversation, the government cannot conclude and infer for the jury that the conversation was about Gaggo supplying drugs to Randol. The jury could conclude that the conversation was about something unknown to anyone not part of the conversation such as repayment of a prior loan.

14.   CH01-Item 475 (P29)

In this video, the government concludes that Gaggo has a conversation with Randol concerning issues with the conspiracy. Gaggo tells Randol that Nero did not pay, and that is causing problems. Gaggo says, "Tone (Bell) came up here yesterday and he didn't like what the fuck he saw . . . he got all these bitches working." Randol replies, "I told his ass, they fucking these rooms up."

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

It invades the province of the jury for the government to speculate, infer, and conclude for the jury, via testimony based on this video, that Bell, Randol, and Gaggo were involved in a drug and sex trafficking conspiracy at the Victory Inn; Gaggo has a conversation with Randol concerning issues with the conspiracy; Bell was in charge of the drug and sex trafficking conspiracies; and Gaggo communicated to members of the conspiracy for Bell to minimize his visibility and involvement in the conspiracy.

Without any foundation or authentication from the persons in the video under FRE 901(b)(1), or any showing that there is some other context to this conversation, the government cannot conclude and infer for the jury that the conversation was about issues with the alleged conspiracy. This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

15.  <u>CH01-Item 518  (P30)</u>

This video shows Gaggo telling Randol that Alicia, Charles, and Jose were at the Victory Inn the previous night. Randol denies that they were. Gaggo tells Randol that she was told that they were there, and that they are not supposed to be there. Randol hands her cash to pay for three rooms. Gaggo tells Randol that the cost for room 215 had already been paid. Randol exits the lobby with the keys.

The government's intention to speculate, infer, and conclude for the jury, via testimony, that members of the sex trafficking conspiracy purchased multiple rooms to facilitate more commercial sex acts based on this video invades the province of the jury. This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

Randol and Gaggo's statements about Alicia, Charles, and Jose are irrelevant under FRE 401.

16. <u>CH01-Item 531 (P31)</u>

The government concludes that in this video Gaggo tells Randol that the manager of the hotel ordered her to evict a rival drug dealer, and that Gaggo confides in Randol that she is getting concerned about how the criminal enterprise is being run. Randol suggests "we got to put everyone out, and let everybody work their way back in." The government concludes that Gaggo is concerned that law enforcement is going to raid the Victory Inn if things don't change. Gaggo states, "It's getting sloppy as fuck up here. It's come to a point where I don't want to come to work cause I'm scared. I'm just waiting on these people to raid me." Gaggo tells Randol that Tone (Bell) called "D" (Daugherty) and said, "listen man, you got this mother fucker hot (which the government concludes Gaggo means that the hotel is attracting the attention of law enforcement) and you don't . . . ain't even got my money n---, so what the fuck are these bitches in the room for!" Gaggo says that Tone, "really went off on [Daugherty]."

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Gaggo was concerned that law enforcement was going to raid the Victory Inn because of her criminal activity or because of the alleged conspiracy's criminal activity, invades the province of the jury. This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

Gaggo's statements about what Bell and her manager said are also hearsay within hearsay in violation of the rule against hearsay. FRE 802.

17. <u>CH01-Item 570  (P32)</u>

The same woman from videos 344 and 369 tells Yako that she needs a key to a room because she has a date with her, "can you please, please? I have a date

with me. Please, I have a date, I need a key." Yako makes a key for her, and no money is exchanged.

The government's intention to speculate, infer, and conclude for the jury that, via testimony based on this video, that commercial sex acts occur at the Victory Inn; the front desk clerks are either a part of or aware of the conspiracy to engage in sex trafficking at the Victory Inn; and the woman in the video is engaged in commercial sex acts on behalf of the sex trafficking conspiracy (because if she was not part of the conspiracy, she would have to pay for her room), invades the province of the jury.

Without any foundation or authentication from the woman in the video under FRE 901(b)(1), the government cannot conclude and infer for the jury that the woman was talking about a commercial sex act on behalf of a conspiracy. This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

The woman's statements are hearsay unless she testifies. FRE 802.

Introduction of the video violates Defendants' right to confront the witness against them.

18. CH01-Item 603  (P33)

In this video, Gaggo tells an unknown woman about a recent meeting where Avery chastised the girls for not working hard enough. Gaggo said, "these stupid bitches . . . you know what Q (Avery) told them the other day? He had a meeting with these hoes. He said before me and Ghost (Bell) came up here, every one of you bitches had your own fucking room. He said, but we fucked up by making an agreement with you dumb bitches that if yall just comp from us, yall aint gotta worry about rent. Cause that's how much shit they were buyin. He was like, but we crippled yall is what the fuck we did. Cause ever since we did that shit during the

summer where Ghost used to come pay Miss Janette (Gaggo) for the fucking rent, yall bitches just wanna smoke and sleep."

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Bell, Avery, and Gaggo were aware of and involved in the drug and sex trafficking conspiracies at the Victory Inn; that Bell, Avery, and Gaggo were managers and leaders of the conspiracy who exerted control over the victims; and members of the sex and drug conspiracies held meetings to facilitate the conspiracies, invades the province of the jury. This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

Gaggo's statements about what Avery said are hearsay within hearsay. FRE 802.

### Government Exhibit B – Camera Five

1.  <u>CH05-2016-11-30-013  (P35)</u>

This video involves multiple individuals who cannot be identified although the Government has suspicions of who one of them may be.  It is further claimed that one of the individuals, an unknown female, is under the influence.  That individual then walks into room 203, a room claimed by the Government to be operated by an alleged co-conspirator.  A room the Government suspects is used to sell narcotics.  Ultimately, these claims are speculative, lack an adequate foundational basis, have no relevance to the issues at hand, and are otherwise irrelevant.

2.  <u>CH05-2016-11-30-017  (P35)</u>

This video involves defendant Nero exiting a room allegedly controlled by Daugherty.  Per the Government, he is wearing a camouflage jacket with a white D attached to it.  The Government indicates that this is relevant to show an

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET
(248) 681-6255

association between Daugherty and Nero. The relevancy of this clip is marginal. Nothing on the clip shows any criminal activity, nor is it conceded that the room was controlled at that time by Daugherty. Further, there has been nothing presented by the Government in the proffer explaining whether Daugherty was in the room at the time. Thus this is irrelevant. Further, any attempts of the agents offering lay opinions on what is taking place is likewise irrelevant.

### 3. CH05-2016-12-01-019 (P36)

This clip alleges to show Gaggo collecting money from an unknown man from room 203. The Government claims this video will show numerous things, including that Gaggo would collect money for Bell, that she had associations with Daugherty, and Daugherty paid drug money to Bell. It is argued that even if it was the case that Gaggo was collecting money from an unknown man, there is no evidence that this money was for anything dealing with the conspiracy. As is common knowledge, Gaggo was an employee of the Victory Inn and collected money constantly from customers of the hotel during the entirety of the conspiracy. Her collecting money, without more evidence, is not relevant to the conspiracy. This evidence is irrelevant, lacks an adequate foundation, and no amount of lay opinion can allow this clip into evidence.

### 4. CH05-2016-12-11-099 (P36)

This clip shows Nero knocking on room 200 and then entering room 203. Other unidentified individuals are with him and they enter the room. This clip offers no evidence in furtherance of the existence of a conspiracy, nor that crimes are being committed. It is not illegal to enter a hotel room. Further, beyond Nero, none of the other individuals are identified. There is no relevance to the case, and any guessing by agents as to what is happening is speculative, lacks foundation, and is highly prejudicial.

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET
(248) 681-6255

16

5. <u>CH05-2016-12-11-103 (P37)</u>

This is another example of a video clip where the Government wishes to speculate what is taking place with an unknown individual.  An unknown individual enters room 203 and shortly thereafter exits the room with Avery.  The Government claims this is an example of a "short stay," which apparently is a term they have created for a short term drug deal.  Of course, coming to this conclusion is textbook speculation, is not relevant, and is otherwise inadmissible.  Further, it is questioned who would testify to the truth of what is happening on the video as this would be impermissible lay opinion testimony from the agents.

6. <u>CH05-2016-12-11-105 (P38)</u>

This is another clip of an unknown individual going in and out of room 203 engaging in what the government calls a "short stay."  As with the previous clip, this is not relevant, speculation, lacks foundation, prejudicial, and is otherwise inadmissible.

7. <u>CH05-2016-12-12-108 (P38)</u>

This clip purports to show Nero hand an unknown individual a white object in front of room 203.  As to what the white object is, that is anybody's guess.  To make the conclusion that it is illegal however, would be speculative, and as such, the clip is irrelevant, speculative, lacks a foundation, and is otherwise inadmissible.

8. <u>CH05-2016-12-13-117 (P39)</u>

This clip shows Daugherty exiting a hotel room with a baseball bat.  The Government claims that because it believes Daugherty is hurriedly putting on a hoodie and in pajama-like pants, that he is attending an urgent situation.  He then is seen returning with Nero and an unidentified person.  This clip alone, without more, is speculative, lacks foundation, irrelevant, and otherwise inadmissible.  The Government agents would simply be guessing what was happening on the video.

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

Not only would this result in the jury hearing irrelevant evidence, it would be extremely prejudicial.

9.  <u>CH05-2016-12-13-118 (P39)</u>

 Gaggo and Daugherty enter room 203.  That is the clip.  Given that Gaggo had constant contact with Daugherty as she was essentially his landlord, and ran the hotel, the fact that she went into his room does not evidence anything beyond that.  As such, attaching something more to this would be speculative, lacking foundation, irrelevant, and otherwise inadmissible.

10. <u>CH05-2016-12-16-19-00-400 (P39) to CH05-2016-12-16-19-00-40_2 (Pgs 39-40)</u>

 These three clips represent an alleged assault of an individual by numerous alleged co-conspirators.  The objection to these videos would be how they are relevant to the alleged conspiracies.  It is unknown why the alleged assault is taking place, and without more information, the admission of this evidence would be irrelevant.

11. <u>CH05-2016-12-18-156  (P41)</u>

 This clip involves Avery and Daugherty entering and leaving room 203 with an unknown woman.  This clip alone, without more, is speculative, lacks foundation, irrelevant, and otherwise inadmissible.  The Government agents would simply be guessing what was happening on the video.

12. <u>CH05-2016-12-19-167 (P41)</u>

 This clip involves Avery and an unknown woman entering and leaving room 203.  This clip alone, without more, is speculative, lacks foundation, irrelevant, and otherwise inadmissible.  The Government agents would simply be guessing what was happening on the video.

13. <u>CH05-2016-12-19-178 (P41)</u>

This clip involves Randol, Daugherty, and Avery, and two unidentified women. As with many of the Government's proffered clips, the action involve entering and exiting room 203. Of import to this clip, the Government intends on presenting evidence of these individuals "mouthing" specific words to each other. It is unknown how the Government could meet its foundational threshold to admit evidence of lip reading. Further, who could testify to it? Without more, this clip is speculative, lacks foundation, irrelevant, and otherwise inadmissible. The Government agents would simply be guessing what was happening on the video.

14. CH05-2016-12-22-226 (P42)

This clip shows Nero, Gaggo, and Daugherty apparently having some sort of unknown communication whilst Nero rolls a suitcase behind him. Beyond the notion that the presence of a suitcase is extremely common, without more, the clip is speculative, lacks foundation, irrelevant, and otherwise inadmissible. The Government agents would simply be guessing what was happening on the video.

15. CH05-2016-12-22-232 (P42)

This is another "short stay" clip of an unknown man entering and leaving room 203. The Government claims that this man was counting cash in his hand prior to entry of the room, and left without cash in his hand. The idea that the unknown man was definitively counting cash lacks any semblance of a foundation, and guessing what may or may not have happened in room 203 is speculative. As such, this clip is irrelevant.

16. CH05-2016-12-24-249 (P43)

This clip claims to show an unknown woman smoking crack in the hallway and then eventually entering room 203. This is entirely speculative and lacks any foundational basis. The Government does not know what the woman is doing, thus how could they definitively have a witness testify that the woman was smoking

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

crack?  What if she was smoking marijuana, then the clip is entirely irrelevant. Without more, this clip is speculative, lacks foundation, irrelevant, and otherwise inadmissible.  The Government agents would simply be guessing what was happening on the video.

17. CH05-2016-12-25-261 (P43)

This clip shows a man and a woman walking into room 203 followed by Nero.  It is not explained who these people are.  Could they be friends, celebrating Christmas with Nero as it was Christmas morning?  Without more, this clip is speculative, lacks foundation, irrelevant, and otherwise inadmissible.  The Government agents would simply be guessing what was happening on the video.

18. CH05-2016-12-25-270 (P43)

Per the Government, this clip shows Nero walking out of room 203.  This is not against the law, nor is it evidence of a crime.  Without more, this clip is speculative, lacks foundation, irrelevant, and otherwise inadmissible.  The Government agents would simply be guessing what was happening on the video.

19. CH05-2016-12-26-276 (P44)

This clip shows Avery and an unknown woman walk toward room 203, knock on the door, to which nobody answers.  They then walk away, they pass an unknown man and woman, of which the Government claims that woman had smoked crack in a previous clip.  The unknown couple then known on the door of room 203, and then walk away.  The Government claims this video shows an association between Daugherty and Avery and that room 203 is a source for drugs. The reality is that this clip shows nothing illegal, it adds nothing to whether or not a conspiracy existed, and any interpretation of the video would be speculative and irrelevant.  Without more, this clip is speculative, lacks foundation, irrelevant, and

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

otherwise inadmissible.  The Government agents would simply be guessing what was happening on the video.

20. CH05-2016-12-26-279 (P44)

 This clip involves three unknown individuals engaging in what it likes to refer to as a "short stay" in room 203.  Without more, this clip is speculative, lacks foundation, irrelevant, and otherwise inadmissible.  The Government agents would simply be guessing what was happening on the video.

21. CH05-2016-12-27-290 (P45)

 The Government claims in this clip that Nero has drugs wrapped in plastic wrap in his left hand in which he then partially unwraps and gives an unknown individual an unknown item and then puts the remaining drugs in his hand.  It remains to be seen how the Government knows what is or is not in Mr. Nero's hand and if this conclusion by the Government is based solely off the video clip, then they are simply speculating.  Without more, this clip is speculative, lacks foundation, irrelevant, and otherwise inadmissible.  The Government agents would simply be guessing what was happening on the video.

22. CH05-2016-12-27-292 (P45)

 This clip shows an interaction between Nero and AV-5, where Nero allegedly strikes AV-5 in the face.  The Government offers no context as to why this alleged assault takes place.  If it has nothing to do with the allegations involved in the conspiracy, it is improper character evidence and otherwise irrelevant.  Without more, this clip is speculative, lacks foundation, irrelevant, and otherwise inadmissible.  The Government agents would simply be guessing what was happening on the video.

23. CH05-2016-12-28-297 (P46)

This clips alleges to show Nero striking a woman with his hand.  The Government offers no context as to why this alleged assault takes place.  If it has nothing to do with the allegations involved in the conspiracy, it is improper character evidence and otherwise irrelevant.  Without more, this clip is speculative, lacks foundation, irrelevant, and otherwise inadmissible.  The Government agents would simply be guessing what was happening on the video.

24. CH05-2016-12-28-305 (P46)

This clip shows Avery and an unknown woman enter room 203.  The clip shows nothing illegal, it adds nothing to whether or not a conspiracy existed, and any interpretation of the video would be speculative and irrelevant.  Without more, this clip is speculative, lacks foundation, irrelevant, and otherwise inadmissible. The Government agents would simply be guessing what was happening on the video.

25. CH05-2016-12-31-19-51-36 (P47)

This clip alleges that Nero actions are consistent with somebody handing an unknown individual something.  That unknown individual then walks away and looks into his palm and something is in the palm.  Unless there is some other witness testimony with knowledge of what was actually occurring here, the video clip is irrelevant and speculative.  Without more, this clip is speculative, lacks foundation, irrelevant, and otherwise inadmissible.  The Government agents would simply be guessing what was happening on the video.

26. CH05-2017-01-02-384-2 (P47)

This clip shows Daugherty supposedly handing something to an unknown woman who then puts the item in her mouth.  Daugherty then enters room 203 and the unknown woman walks away.  There is no evidence of anything remotely relevant to the conspiracy outside of the Government speculating as to what was

given. Let's assume it was a pill of some sort, how does the Government know that Daugherty didn't give the individual an aspirin? As such, this clip is speculative, irrelevant, highly prejudicial, lacks foundation, and is otherwise inadmissible.

27. CH05-2017-01-02-384-3 (P48)

This clip purports to show Randol walking down the hallway with money in his hand. Even if true and the Government could somehow show this beyond the clip, the actions of walking down a hallway with money are not relevant to the case.

28. CH05-2017-01-02-384-4 (P48)

This clip shows Nero walk past an unknown woman who the Government claims is under the influence. The Government claims this is relevant because, according to them, multiple clips establish that people under the influence oftentimes remain in the proximity of rooms where they can purchase drugs. It is unknown first how the Government can establish that the unknown woman is intoxicated, what is causing the intoxication (alcohol, drugs, etc…), and whether that woman had any interaction with any conspirators. Keep in mind, there is a bar that shares the same parking lot as the Victory Inn. Who is to say that the unknown woman didn't get drunk at the bar and remain intoxicated at the Victory Inn? As such, the clip has a lack of evidential foundation, is speculative, irrelevant, and inadmissible.

29. CH05-2017-01-02-384 (P48)

This clip shows Avery entering room 203 with an unknown male and female. Nothing illegal is shown on this clip. The simple act of two people walking into a room with a conspirator is too attenuated a fact to link to the conspiracy. This clip

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

offers nothing to show their was a conspiracy.  Instead, it is irrelevant, lacks

foundation, and is speculative.

30. CH05-2017-01-03-394 (P49)

 In this clip Nero and five other individuals are let into room 203 by

Daugherty.  Later, a woman who the Government claims is under the influence, is

let into the room.  There is nothing in this clip that makes any fact or issue in

controversy any more or less probable.  As with many of the Government clips,

there is no context or foundational basis to what is claimed in the clip.  As such, it

is irrelevant, speculative, and inadmissible.

31. CH05-2017-01-03-394-3-4 (P49)

 This clip shows an unidentified man enter, and then four minutes later, exit

room 203.  The Government claims this man has an item in his hands.  They claim

that this is a "short stay" drug transaction.  These observations are without a

sufficient foundational basis, are not relevant, are speculative, and are

inadmissible.

32. CH05-2017-01-03-394-2-4 (P50)

 This clip shows Nero walking into room 203 with an unknown individual.  The

Government claims that the unknown individual is carrying cash.  The Government

argues that because the unknown man was carrying cash, it is more probable than

not that he was purchasing drugs.  This of course is speculative and without any

foundational basis.  It is irrelevant and highly prejudicial.  Thus this clip is

inadmissible.

33. CH05-2017-01-07-480 (P50)

 This clip shows Randol wearing a pair of ripped jeans.  This clip is not

relevant to the case unless the Government can explain why what Mr. Randol was

wearing is relevant.

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

34. <u>CH05-2017-01-11-568 (P50)</u>

This is a clip showing Avery and two unknown women walking into room 203.  There is no explanation as to what illegality is at hand, and any guessing at this would be speculative.  As such, the clip lacks foundation, is speculative, prejudicial, and not relevant.

### Government Exhibit C – Camera Six

1. <u>CH06-2016-12-16-17-10-29 (P51)</u>

This clip is a continuation of the assault video discussed throughout the Government's proffer.  As such, the objection to these videos would be how they are relevant to the alleged conspiracies.  It is unknown why the alleged assault is taking place, and without more information, the admission of this evidence would be irrelevant.

### Government Exhibit C – Camera Seven

1. <u>CH07-2016-12-16-19-32-09 (P54)</u>

This clip is a continuation of the assault video discussed throughout the Government's proffer.  As such, the objection to these videos would be how they are relevant to the alleged conspiracies.  It is unknown why the alleged assault is taking place, and without more information, the admission of this evidence would be irrelevant.

2. <u>CH07-2016-12-16-20-13-42 (P54)</u>

This clip is a continuation of the assault video discussed throughout the Government's proffer.  As such, the objection to these videos would be how they are relevant to the alleged conspiracies.  It is unknown why the alleged assault is taking place, and without more information, the admission of this evidence would be irrelevant.

### Government Exhibit C – Camera Eight

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET
(248) 681-6255

1.   CH08-Item 3 (P56)

This clip shows an unidentified woman walks up to room 214, allegedly counts cash in her hand, and enters.  The Government claims this room is lived in by Avery.  The Government's claims of relevancy rely on speculation and have a lack of evidential foundation sufficient for admittance.  There could be many different things going on in this clip.  It is unclear how the Government can even show what is in the hand of the unidentified female.  Thus the clip is not relevant.

2.   CH08-Item 4 (P56)

This clip shows two unidentified women walking up and gaining entry into room 214, along with an unidentified man.  The Government's claims of relevancy rely on speculation and have a lack of evidential foundation sufficient for admittance.  There could be many different things going on in this clip.  It is unclear how the Government can even show what is in the hand of the unidentified females or male.  Thus the clip is not relevant.

3.   CH08-Item 7 (P57)

This clip shows an unidentified female, who the Government claims is under the influence, attempt to enter room 214, a room allegedly controlled by Avery. The first issue is that of speculation, the Government cannot show whether the individual is intoxicated.  Even if this was possible, there is no evidence showing that the intoxication was due to anything involving the case at hand.  The Victory Inn was full of drug dealers that had nothing to do with this conspiracy and it shares a parking lot with a bar.  Simply put, this clip lacks a foundational factual basis for admissibility, it is speculative, irrelevant, prejudicial, and is otherwise inadmissible.

4.   CH08-Item 9 (P57)

The Government alleges that this clip shows Nero engage in a hand to hand transaction in room 214.  Nothing more is said.  This is speculative, lacks evidential foundation, a highly prejudicial assertion, and is inadmissible.

5.  <u>CH08-Item 14 (P58)</u>

This clip shows an unknown male entering room 214.  There is nothing beyond this to the video.  How is an unknown individual entering Avery's alleged room relevant?  Unless the Government is planning on having the unknown individual testify, there is no foundational evidential basis as to what the man was doing.  There are infinite non-criminal explanations for a person to go into a hotel room.  Is it the Government's intention to have the agents speculate as to what this individual was doing?  The clip is irrelevant, speculative, and otherwise inadmissible.

6.  <u>CH08-Item 23 (P59)</u>

Two unidentified women enter room 214, this is the essence of the proffered clip.  As with many of the clips, there is no rational argument for relevancy, any thoughts as to what may be happening are speculative, there is no evidential basis, and it is otherwise inadmissible.

7.  <u>CH08-Item 25 (P59)</u>

This clip alleges to show two women and one man attempt to enter room 214.  They leave and the women come back with a key and get in.  The Government claims one of the women is intoxicated.  As with many of the clips, there is no rational argument for relevancy, any thoughts as to what may be happening are speculative, there is no evidential basis, and it is otherwise inadmissible.  Further, the idea that the Government, by video alone, could establish relevant intoxication of one of the unknown women is not persuasive.

8.  <u>CH08-Item 36 (P59)</u>

This is another video involving unknown individuals allegedly intoxicated hanging out around room 214. As with many of the clips, there is no rational argument for relevancy, any thoughts as to what may be happening are speculative, there is no evidential basis, and it is otherwise inadmissible. Further, the idea that the Government, by video alone, could establish relevant intoxication of one of the unknown women is not persuasive.

9.   CH08-Item 43 (P60)

This video shows Avery opening room 214. It's relevancy should be limited to Avery having access to the room. However, any additional opinions such as what he is doing at the time are speculative and inadmissible.

10.   CH08-Item 47 (P60)

This clip purports to show Avery and Randol interacting with two unknown individuals outside of room 214. It is unknown how this interaction is relevant to the case at hand because a consensual conversation with unknown individuals is not evidence of a crime, nor do the unknown females have any connection to the alleged conspiracy. Thus the video is irrelevant, and any inference of any illegality would be speculative.

11.   CH08-Item 52 (P60)

An unknown man allegedly gives another unknown man what might be cash in the hotel hallway before entering room 213. The Government claims this shows that the men intended on entering into a cash transaction in room 213. How the Government has knowledge of this beyond speculation is anybody's guess, but regardless, the clip is irrelevant, lacks an evidential foundational basis, is speculative, and is otherwise inadmissible.

12.   CH08-Item 53 (P61)

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET
(248) 681-6255

This clip shows Avery using a key to entering room 214 with a woman. Outside of identification evidence, which appears to be plentiful, there is no relevancy to the conspiracy. No crime is occurring, the Government does not know who the unidentified female is and frequenting a hotel room is not against the law. Any further prediction as to what is happening in the video is speculation.

13.   CH08-Item 61 (P69)

The Government claims Avery engages in a hand-to-hand transaction in the hotel hallway. As with many of the clips, there is no rational argument for relevancy, any thoughts as to what may be happening are speculative, there is no evidential basis, and it is otherwise inadmissible.

14.   CH08-Item 62 (P61)

This clip shows Avery entering room 214 with a woman. Outside of identification evidence, which appears to be plentiful, there is no relevancy to the conspiracy. No crime is occurring, the Government does not know who the unidentified female is and frequenting a hotel room is not against the law. Any further prediction as to what is happening in the video is speculation.

15.   CH08-Item 70 (P61)

This clip shows an unidentified female enter and leave room 214 within a short period of time. The Government does not know who the unidentified female is and frequenting a hotel room is not against the law. Any further prediction as to what is happening in the video is speculation. Because of this, it is irrelevant.

16.   CH08-Item 71 (P62)

Five minutes after the previous clip, Avery, an unknown male, and three unknown females exit room 214. From this, the Government claims that women lived in the room. As with many of the Government's claims, this is nothing but speculation and as such the video is irrelevant. There is no evidence presented

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

that any of the unidentified individuals were committing crimes, sex-trafficking, or anything else.  As such, the clip is irrelevant, speculative, prejudicial, lacks a sufficient factual basis, and is otherwise inadmissible.

17.  <u>CH08-Item 73 (P62)</u>

The Government claims that this video shows another unidentified female entering room 214.  From this they speculate that a sex-trafficking situation is occurring.  Yet, these individuals are unidentified and there is no evidence presented as to what they were actually doing.  Instead, the Government speculates.  As such, the clip is irrelevant, speculative, prejudicial, lacks a sufficient factual basis, and is otherwise inadmissible.

18.  <u>CH08-Item 78 (P63)</u>

In this clip the Government perceives that Avery is standing outside of room 213 and room 214 with money in his hand.  He then greets and unknown male and enters room 214.  From this the Government speculates as to what may be occurring in the room.  As such, the clip is irrelevant, speculative, prejudicial, lacks a sufficient factual basis, and is otherwise inadmissible.

19.  <u>CH08-Item 87 (P63)</u>

An unidentified woman approaches room 214 allegedly under the influence. As with many previous objections, the Government is speculating on the intoxication.  Even if the person was intoxicated, it is unknown how that is in any way connected to the alleged conspiracy as the Government has put forward no evidence suggesting that drugs or alcohol that may have caused the intoxication specifically derived from the conspiracy.  Instead, this is highly prejudicial speculation, irrelevant to any issue at hand, and not admissible.

20.  <u>CH08-Item 101 (P64)</u>

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

The clip shows an unidentified man walk into room 214.  Nero exits the room with two unidentified women and walk down the hallway.  From this the Government speculates that a sex-trafficking situation is occurring.  Yet, these individuals are unidentified and there is no evidence presented as to what they were actually doing.  Instead, the Government speculates.  As such, the clip is irrelevant, speculative, prejudicial, lacks a sufficient factual basis, and is otherwise inadmissible.

21.   <u>CH08-Item 117 (P64)</u>

Two unidentified women and two unidentified men meet outside of room 214, where the Government then claims a drug deal takes place.  Afterwards, the women go into the room.  Unless the Government intends on calling a witness with personal knowledge of this interaction, there is no rational argument for relevancy, any thoughts as to what may be happening are speculative, there is no evidential basis, and it is otherwise inadmissible.

22.   <u>CH08-Item 118 (P65)</u>

This clip shows Avery entering room 214 with multiple unknown individuals twelve minutes after the alleged drug transaction of the previous clip.  Unless the Government intends on calling a witness with personal knowledge of this interaction, there is no rational argument for relevancy, any thoughts as to what may be happening are speculative, there is no evidential basis, and it is otherwise inadmissible.

23.   <u>CH08-Item 137 (P65)</u>

The Government alleges in this clip that an "intoxicated" man walks up and down the hallway, eventually entering room 214 with a second individual.  Unless the Government intends on calling a witness with personal knowledge of this interaction, there is no rational argument for relevancy, any thoughts as to what

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

may be happening are speculative, there is no evidential basis, and it is otherwise inadmissible.  Additionally, the Government is speculating as to any individual's intoxication.

24.    CH08-Item 149 (P65)

This clip shows an unknown male knocking on the doors of rooms 213 and 214, eventually entering room 213.  Then, two unidentified women enter room 213.  Unless the Government intends on calling a witness with personal knowledge of this interaction, there is no rational argument for relevancy, any thoughts as to what may be happening are speculative, there is no evidential basis, and it is otherwise inadmissible.

25.    CH08-Item 155 (P66)

This clip shows an unidentified woman leaving room 213 and entering 214. The Government claims that this is evidence that the conspiracy controlled multiple rooms.  Unless the Government intends on calling a witness with personal knowledge of this interaction, there is no rational argument for relevancy, any thoughts as to what may be happening are speculative, there is no evidential basis, and it is otherwise inadmissible.

26.    CH08-Item 166 (P66)

This clip shows three unknown women walk out of room 214.  There is no evidence presented who these people are or what they were doing.  Thus, there is no rational argument for relevancy, any thoughts as to what may be happening are speculative, there is no evidential basis, and it is otherwise inadmissible.

27.    CH08-Item 167 (P66)

This clip shows a fourth unidentified female walking into room 214 a few minutes after the women in the previous clip entered.  There is no evidence presented who these people are or what they were doing.  Thus, there is no

rational argument for relevancy, any thoughts as to what may be happening are speculative, there is no evidential basis, and it is otherwise inadmissible.

28.   CH08-Item (169) (P67)

This clip shows two additional unidentified women come and go from room 214 within a three hour period.  It is not clear whether the woman are the same women from the previous two clips.  There is no evidence presented who these people are or what they were doing.  Thus, there is no rational argument for relevancy, any thoughts as to what may be happening are speculative, there is no evidential basis, and it is otherwise inadmissible.

29.   CH08-Item 191 (P67)

This clip shows an unknown woman leading an unknown man into room 213, whereby the woman leaves two minutes later.  There is no evidence presented who these people are or what they were doing.  Thus, there is no rational argument for relevancy, any thoughts as to what may be happening are speculative, there is no evidential basis, and it is otherwise inadmissible.

30.   CH08-Item 193 (P68)

This clip shows that thirty minutes after the previous clip, another unknown woman entered room 213, while a second unknown woman enters room 214. There is no evidence presented who these people are or what they were doing. Thus, there is no rational argument for relevancy, any thoughts as to what may be happening are speculative, there is no evidential basis, and it is otherwise inadmissible.

31.   CH08-Item 193 (P68)

This clip shows that a different woman enters room 213 within two hours of the previous clip.  There is no evidence presented who this person is or what they were doing.  Thus, there is no rational argument for relevancy, any thoughts as to

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET
(248) 681-6255

what may be happening are speculative, there is no evidential basis, and it is otherwise inadmissible.

32.  CH08-Item 194 (P69)

This clip relates back to the previous two clips and reflects that two additional unknown females enter room 213, while around the same time an unknown male enters room 213.  Additionally, during this time, an unknown male enters room 214.  There is no evidence presented who these people are or what they were doing.  Thus, there is no rational argument for relevancy, any thoughts as to what may be happening are speculative, there is no evidential basis, and it is otherwise inadmissible.

33.  CH08-Item 195 (P69)

This clip is a continuation of the previous three clips and shows some of the unknown men and women exiting from the rooms.  There is no evidence presented who these people are or what they were doing.  Thus, there is no rational argument for relevancy, any thoughts as to what may be happening are speculative, there is no evidential basis, and it is otherwise inadmissible.

34.  CH08–Item 196 (P70)

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Randol and Avery are associated; Randol exited and entered rooms associated with drug and sex trafficking; members of the conspiracy controlled multiple rooms which were used to facilitate their drug and sex trafficking activities (that rooms 213 and 214 were communal rooms, under Avery's control, used for both drug and sex trafficking), invades the province of the jury.

Avery is not even in the video. There are two unknown women in the video with Randol, and without any foundation or authentication from the women in the

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

video or Randol under FRE 901(b)(1), the government cannot conclude and infer for the jury that their movements from one room to another are evidence of sex trafficking.

The video is irrelevant under FRE 401. Further, It is more prejudicial than probative.

35.  CH08–Item 211 (P70)

This video shows the movement of Avery and unknown people in the Victory Inn.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that women lived in room 214 of the inn; the existence of a large-scale sex trafficking scheme in rooms controlled by Avery and used for narcotics and sex trafficking; and Avery lived in and controlled room 214, a room used for illegal narcotics and sex trafficking, invades the province of the jury. The video does not support the government's conclusions but simply shows the jury the Defendants in a bad light. This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

Without any foundation or authentication from the people in the video under FRE 901(b)(1), the government cannot conclude and infer for the jury that the activity outside of the rooms is related to sex trafficking and narcotics. Without foundation, video is irrelevant. FRE 401.

Showing video of an unknown person's conduct as assertions to establish the government's conclusions, without any evidence that he is linked to Defendants other than Avery, violates Defendants' right to confrontation.

36.  CH08–Item 217 (P71)

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

In this video, an unknown man stands outside of room 214 at the Victory Inn. Prior to knocking on the door, he counts cash in his hands, and then enters room 214.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that the man intended to enter into a cash transaction with individual(s) in room 214; room 214 was a room used for illegal narcotics and sex trafficking; and Avery's use of the rooms under his control is incongruous with the customary use of a hotel room and more comparable to a store open for business, invades the province of the jury. The video does not support the government's conclusions but simply associates an unknown man with the Defendants so that the jury will see them in a bad light.

Without any foundation or authentication from the unknown man in the video under FRE 901(b)(1), the government cannot conclude and infer for the jury that the activity inside room 214 is related to sex trafficking and narcotics and Avery. Without foundation, video is irrelevant. FRE 401.

37.   CH08–Item 218 (P71)

This video shows an unknown woman, who the government concludes is under the influence, walking up the stairs. She walks directly to room 213 and then goes inside.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, for the jury, via testimony based on this video, that individuals under the influence remain in the proximity of, or attempt access to room 214, because room 214 is a source for drugs, invades the province of the jury. But the video shows the woman walk into room 213, not 214. The video does not support the government's conclusions but simply associates an unknown woman with the Defendants so that the jury will see them in a bad light.

Without any foundation or authentication from the unknown woman in the video under FRE 901(b)(1), the government cannot conclude and infer for the jury that the activity inside room 213 is related to sex trafficking and narcotics and the Defendants. Without foundation, video is irrelevant. FRE 401.

38.   <u>CH08–Item 222A (P71)</u>

This video shows an unknown woman talking to a man who the government concludes looks like Gabrail, a hotel clerk at the Victory Inn. The government believes the woman's personal belongings are next to her in the hallway. At the end of their conversation, the woman and unidentified male move the belongings into room 213, which the government concludes is a room controlled by Avery.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, invades the province of the jury.

Allowing the government to speculate, infer, and conclude about the video's alleged meaning would create unfair prejudice and mislead the jury under FRE 403. The video does not support the government's conclusions but simply associates an unknown woman and man with the Defendants so that the jury will see them in a bad light.

Without any foundation or authentication from the unknown woman and man in the video, under FRE 901(b)(1), the government cannot conclude and infer for the jury that the unknown man is Gabrail, the items in the hallway belonged to the woman, or that Avery controls room 213. Without foundation, the video is irrelevant. FRE 401.

39.   <u>CH08–Item 224 (P72)</u>

This video simply shows an unknown woman walk up to room 214 and enter.

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that women lived in Avery's rooms; Avery used the rooms for narcotics and sex trafficking; and the video shows the existence of a large-scale sex trafficking scheme, invades the province of the jury.

Without any foundation or authentication from the unknown woman in the video, under FRE 901(b)(1), the government cannot conclude and infer for the jury that the unknown woman entered room 214 for the purposes of illegal narcotics or sex trafficking activity. Without foundation, video is irrelevant. FRE 401.

40.   CH08–Item 234 (P 72)

In this video, Avery enters room 214 with two unknown women. The government concludes that one of the women is "clearly under the influence." The woman under the influence was previously seen under the influence outside of room 214 (see Item numbers 7, 25, and 36).

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that individuals under the influence remain in the proximity of, or attempt access to rooms 213 and 214, because those rooms are a source for drugs, and that the woman under the influence in this video, and in Item numbers 7, 25, and 36, is associated with Avery, invades the province of the jury.

Without any foundation or authentication from the unknown woman in the video, under FRE 901(b)(1), the government cannot conclude and infer for the jury that the unknown woman was intoxicated. This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

41.   CH08–Item 236 (P72)

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

In this four-minute video, an unknown Male 1, holding a baseball bat, enters room 214; an unknown Female 1 knocks and enters room 214; an unknown Man 2 and unknown Woman 2 exit room 214; and unknown Man 3 enters.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Avery's use of his rooms is incongruous with the customary use of a hotel room and more comparable to a store open for business; and that given the amount of foot traffic within a short period of time, room 214 was used for illegal narcotics and sex trafficking, invades the province of the jury.

42.   CH08–Item 238 (P73)

In this video, the government concludes that an unknown individual "exhibits the characteristics of being under the influence, with a constant irregular motion," while waiting outside of room 214. After standing outside the door for several seconds, the unknown individual enters.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that individuals under the influence remain in the proximity of, or attempt access to room 214, because room 214 is a source for drugs, invades the province of the jury. This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

43.   CH08–Item 242 (P73)

In this video, an unknown woman stands outside of room 214, and a second unknown woman approaches. As the two women enter, Tawfik and Daugherty exit. Daugherty reenters the room while Tawfik smokes outside. Tawfik has a handgun in her right hand and places it in her right coat pocket. This is the second of two weapons that are connected to room 214 within a six-hour period (see Item 236, baseball bat). Tawfik reenters room 214 then exits again with Daugherty.

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

39

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Avery's use of his rooms is incongruous with the customary use of a hotel room and more comparable to a store open for business; that a large-scale sex trafficking scheme exists because a significant number and frequency of women had access to rooms 213 and 214, which were controlled by Avery and used for illegal narcotics and sex trafficking; and that there is an association between Tawfik, Daugherty, and Avery, invades the province of the jury. This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

44.   CH08–Item 244 (P74)

This video shows two unknown women and one unknown man enter room 214, and around the same time, a third woman exits room 214.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Avery's use of his rooms is incongruous with the customary use of a hotel room and more comparable to a store open for business; and that a large-scale sex trafficking scheme exists because a significant number and frequency of women had access to rooms 213 and 214, which were controlled by Avery and used for illegal narcotics and sex trafficking, invades the province of the jury.

This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

45.   CH08–Item 245 (74)

This video shows the same unknown man from Item 244, who entered room 214 at timestamp 3:49:38, and leaves room 214 less than two minutes later at timestamp 3:51:22. The man entered with nothing in his possession and left with two plastic bags. The government concludes and speculates that the unknown

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

male engaged in a "short stay." A "short stay" is a term which is used when a person spends a short time in a location to purchase drugs. Locations where individuals frequently engage in "short stays" are a common indicator of drug trafficking in that location.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that rooms under Avery's control were, in part, used for drug trafficking, invades the province of the jury. This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

46.  <u>CH08–Item 246A (P75)</u>

This video shows an unknown woman enter room 214.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that women lived in Avery's rooms; and that a large-scale sex trafficking scheme existed because a significant number and frequency of women had access to rooms 213 and 214, which were controlled and used by Avery for illegal narcotics and sex trafficking, invades the province of the jury. This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

47.  <u>CH08–Item 247 (P75)</u>

The same objections to Item 246A, above, applies to this item.

48.  <u>CH08–Item 248 (P75)</u>

The same objections to Item 245, above, applies to this item.

49.  <u>CH08–Item 249 (P75)</u>

This video shows two unknown women leave room 214. From on or about midnight through 11:37 a.m. (Items 238 through 249), 12 women, two men, and one person (gender unknown) either entered or exited room 214.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Avery's use of his rooms is incongruous with the customary use of a hotel room and more comparable to a store open for business; Avery used room 214 to distribute narcotics; and that a large-scale sex trafficking scheme exists because a significant number and frequency of women had access to rooms 213 and 214, which were controlled by Avery and used for illegal narcotics and sex trafficking, invades the province of the jury. This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

50.   <u>CH08–Item 251 (P76)</u>

In this video, Avery, meets an unknown man, carrying a bag, in front of room 214. They enter room 214 together.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Avery lived in and controlled room 214, using it for illegal narcotics and sex trafficking, invades the province of the jury. This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

51.   <u>CH08–Item 252A (P77)</u>

In this video, an unknown woman walks up to room 214. At the same time, two unknown men are coming down the hall. One of the men stops at room 213 and knocks. The two men enter room 213, and the woman follows.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that members of the conspiracy controlled multiple rooms under Avery's control, which were used to facilitate their drug and sex trafficking activities, invades the province of the jury.

52.   <u>CH08–Item 253 (P77)</u>

An unknown woman in pajamas knocks and enters room 214. This is the fifth person in one hour and forty-five minutes to enter room 214.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Avery's use of his room is incongruous with the customary use of a hotel room and more comparable to a store open for business; and that a large-scale sex trafficking scheme existed because a significant number and frequency of women had access to rooms 213 and 214, controlled by Avery and used for illegal narcotics and sex trafficking, invades the province of the jury.

But the video does not support those conclusions, when no other Defendant is in the video.

Without any foundation or authentication from the unknown persons in the video, under FRE 901(b)(1), the government cannot conclude for the jury the meaning of the activity in this video, or association with Defendants. Without foundation, it is irrelevant. FRE 401.

53.   CH08–Item 254 (P78)

An unknown man walks up to room 214 with a weed wacker. Two unknown women exit room 214, and the unknown man enters. These are the sixth, seventh, and eighth individuals to either enter or exit rooms 213 and 214 since 1:00 p.m.

The same objections to Item 253, above, applies to this item.

54.   CH08–Item 255 (P78)

Avery walks up the stairs with an unknown woman, and they enter room 214.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Avery lived in and controlled room 214, using it for illegal narcotics and sex trafficking, invades the province of the jury. This is

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

55.   CH08–Item 256 (P78)

Avery, and three unidentified women, walk down the hallway and enter room 214.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that women lived in Avery lived in and controlled room 214, a room used for illegal narcotics and sex trafficking; that women lived in Avery's rooms; and that a large-scale sex trafficking scheme existed because a significant number and frequency of women had access to rooms 213 and 214, controlled by Avery and for illegal narcotics and sex trafficking, invades the province of the jury. This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

56.   CH08–Item 257 (P79)

Four unknown people walk out of room 214, and one person walks out of room 213. Moments later, Avery walks out of room 214.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Avery's use of his room is incongruous with the customary use of a hotel room and more comparable to a store open for business, and that Avery lived in and controlled room 214, a room used for illegal narcotics and sex trafficking, invades the province of the jury.

This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

57.   CH08–Item 262 (P79)

Three women exit room 214. One woman enters room 213.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that women lived in rooms under Avery's control; and that a large-scale sex trafficking scheme existed because a significant number and frequency of women had access to rooms 213 and 214, controlled by Avery and used for illegal narcotics and sex trafficking, invades the province of the jury. This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

58.   CH08–Item 265 (P80)

Approximately seven unknown men and women exit rooms 214 and 213 around the same time. One of the men, coconspirator Daugherty (identified by his plaid pajama pants, see Items 298 and CH05-2016-12-13-117) is talking to Avery. They are standing in the hallway as the people walk away.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Avery's use of his room is incongruous with the customary use of a hotel room and more comparable to a store open for business; that Avery lived in and controlled room 214, for illegal narcotics and sex trafficking; and that a large-scale sex trafficking scheme existed because a significant number and frequency of women had access to rooms 213 and 214, controlled by Avery and used for illegal narcotics and sex trafficking, invades the province of the jury.

This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

59.   CH08–Item 268 (P80)

An unknown male knocks on the door of room 214, enters the room, and stays for 52 seconds. The government concludes that the unknown male engaged in a "short stay." A defines a short stay as a term which is used when a person

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

spends a short time in a location to purchase drugs. Locations where individuals frequently engage in "short stays" are a common indicator of drug trafficking in that location.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that rooms under Avery's control were, in part, used for drug trafficking, invades the province of the jury.

This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

60.   CH08–Item 270 (P81)

Two women exit room 214 right before another woman enters 214. The government concludes that "Avery is visibly angry at a woman standing at the top of the stairs."

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Avery is visibly angry, that Avery lived in and controlled room 214, a room used for illegal narcotics and sex trafficking; and that a large-scale sex trafficking scheme existed because a significant number and frequency of women had access to rooms 213 and 214, controlled by Avery and used for illegal narcotics and sex trafficking, invades the province of the jury.

This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

61.   CH08–Item 273A (P81)

The government concludes that "at a time when most people are sleeping," a fully dressed woman, with her purse, runs to room 214 and knocks on the door. She then enters the room. She is the fourth woman recorded by Camera Eight between 1:45 a.m. and 4:15 a.m.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that women live in the rooms under Avery's control; and that a large-scale sex trafficking scheme existed because a significant number and frequency of women had access to rooms 213 and 214, controlled by Avery and used for illegal narcotics and sex trafficking, invades the province of the jury. This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

62.   CH08–Item 281 (P82)

Two or three women stand outside of room 213, and enter room 213 together, followed by an unknown individual.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that women lived in Avery's rooms; and that a large-scale sex trafficking scheme existed because a significant number and frequency of women had access to rooms 213 and 214, controlled by Avery and used for illegal narcotics and sex trafficking serves, invades the province of the jury.

This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

63.   CH08–Item 285 (P82)

Avery, Randol, and an unknown woman enter room 214.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Randol and Avery are associated; that Randol was in a room associated with drug and sex trafficking: and that Avery lived in and controlled room 214, invade the province of the jury.

Further, this is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

64.  CH08–Item 290 (P82)

Two unknown women and an unknown man carry full large plastic garbage bags and smaller bags into room 213. A third unknown woman enters room 213 a few moments later.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that women lived in Avery's rooms, invades the province of the jury.

And there is no foundation to show how long those unknown women were in the room or if they were actually living there or visiting. Additionally, these assertions and allegations are pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

65.  CH08–Item 291 (P83)

An unknown man and a woman (who the government concludes is "under the influence") stand in the hallway. A different woman and Avery walk up the stairs and approach room 214. Everyone but the woman under the influence enters room 214. The government concludes that "multiple video clips have established that people under the influence of a controlled substance" frequently remain in the proximity of rooms where they can purchase drugs.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that the unknown woman was under the influence; that there are multiple videos of people under the influence near the rooms; that Avery lived in and controlled room 214; that Avery's use of his room is incongruous with the customary use of a hotel room and more comparable to a store open for business; that the people in the hallway were waiting for Avery; and that room 214 is controlled by Avery as a source for drugs, invades the province of the jury. Additionally, these assertions and allegations are pure speculation and

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

48

conjecture and therefore this clip is not relevant and is more prejudicial than probative.

66.   CH08–Item 293 (P83)

For six minutes, three unknown men and three unknown women enter or exit room 214. A man and a woman, who entered together, stay inside room 214 for approximately five minutes. The government concludes that the man and woman engaged in a "short stay." The government defines a short stay as a term used when a person spends a short time in a location to purchase drugs. The government also concludes that locations where individuals frequently engage in "short stays" are a common indicator of drug trafficking in that location.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Avery's use of room 214 is incongruous with the customary use of a hotel room and more comparable to a store open for business; that drugs are sold out of room 214; that the unknown men and women were engaged in a "short stay"; and that a large-scale sex trafficking scheme existed because a significant number and frequency of women had access to rooms 213 and 214, controlled by Avery and used for illegal narcotics and sex trafficking, invades the province of the jury.

Additionally, these assertions and allegations are pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

67.   CH08–Item 298 (P84)

Daugherty, wearing his plaid pajama pants, walks quickly down the hall toward room 213. He knocks on the door, reaches into his left coat/pants pocket, and draws a firearm. He knocks on the door a second time, returns the firearm to his right jacket pocket, and enters room 213. Daugherty then throws an unknown

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

man out of room 213 and down the stairs. He next chases away a second man, who also came from room 213. Avery comes out of his room and watches the second man run away.

These assaultive acts by Daugherty establish that he had a beef with the person(s) in 213 and that Avery heard some commotion and came to see what was occurring. For the Government to infer that Daugherty was acting at the behest of Avery is speculation and conjecture, resulting in this clip not being relevant and more prejudicial than probative. Also this was other acts evidence that is not permitted.

68.   CH08–Item 299 (P84)

Twenty minutes after Daugherty physically removed the men out of room 213, three unknown women exited the same room. The government concludes that "someone from rooms 213 or 214 must have called for Daugherty, in his role as an enforcer for the drug and sex trafficking conspiracies, who arrived armed with a firearm."

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Daugherty acted in the capacity as an enforcer on behalf of the conspiracy; and that in the eyes of at least one member of the conspiracy, the two men must have, in some way, interfered with the objective(s) of the drug trafficking conspiracy, human trafficking conspiracy, or both, to necessitate Daugherty's involvement, invades the province of the jury.

The government cannot plausibly make those inferences without any foundation or testimony from the persons in the video. Additionally, these assertions and allegations are pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

69.   CH08–Item 307 (P85)

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

An unknown woman enters room 214.

70.   CH08–Item 308 (P85)

Two unknown women walk into room 214.

71.   CH08–Item 309 (P85)

A woman walks into room 214.

72.   CH08–Item 310 (P85)

Three unknown men meet in the hallway and walk to room 214.

These four videos (Items 307–310) start at 12:24 p.m. and end at 3:00

p.m. During the two and a half hours, four different unknown women and three

different unknown men enter room 214.

The government's intention to speculate, infer, and conclude for the jury, via

testimony based on this video, that Avery's use of room 214 is incongruous with

the customary use of a hotel room and more comparable to a store open for

business; that people with access to room 214 engage in drug trafficking; and that

a large-scale sex trafficking scheme existed because a significant number and

frequency of women had access to rooms 213 and 214, controlled by Avery and

used for illegal narcotics and sex trafficking, invades the province of the jury.

Additionally, these assertions and allegations are pure speculation and

conjecture and therefore this clip is not relevant and is more prejudicial than

probative.

73.   CH08–Item 313 (P86)

An unknown woman enters room 214.

74.   CH08–Item 314 (P86)

Two unknown women and one unknown man exit room 214.

75.   CH08–Item 315 (P86)

An unknown man and woman enter room 214 followed by Avery. See foundational explanation in Item 312 above.

76.   CH08–Item 316 (P86)

An unknown woman walks into room 214.

77.   CH08–Item 317 (P87)

An unknown woman exits room 214. An unknown man exits 214 and starts to descend the stairs. A second unknown woman exits room 214 and speaks to the man. The man comes back up the stairs to follow the second woman down the hallway.

78.   CH08–Item 318 (P87)

An unknown woman exits room 214.

These six videos (Items 313–318) start at 8:52 p.m. and end at 1:31 a.m. During the five hours, eight women and four men enter and exit room 214.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Avery's use of room 214 is incongruous with the customary use of a hotel room and more comparable to a store open for business; that people with access to room 214 engage in drug trafficking; that Avery lives in and/or controls room 214 (Item 315); and that a large-scale sex trafficking scheme existed because a significant number and frequency of women had access to rooms 213 and 214, controlled by Avery and used for illegal narcotics and sex trafficking, invades the province of the jury.

Additionally, these assertions and allegations are pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

79.   CH08–Item 326 (P87)

Two unknown women exit room 214.

80.   <u>CH08–Item 327 (P87)</u>

An unknown woman, who the government concludes is "possibly under the influence," waits then enters room 214.

81.   <u>CH08–Item 328 (P88)</u>

Two unknown women exit room 214. Moments later, Avery, exits room 214.

82.   <u>CH08–Item 329 (P88)</u>

An unknown woman walks into room 214.

83.   <u>CH08–Item 330 (P88)</u>

One unknown woman enters, and three unknown women exit room 214. Avery leaves with the three women.

These five videos (Items 326–330) start at 3:39 p.m. and end at approximately 6:20 p.m. During the three hours, 7 women enter and exit room 214 while no other men, other than Avery, exits room 214.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Avery's use of room 214 is incongruous with the customary use of a hotel room and more comparable to a store open for business; that people with access to room 214 engage in drug trafficking; and that a large-scale sex trafficking scheme existed because a significant number and frequency of women had access to rooms 213 and 214, controlled by Avery and used for illegal narcotics and sex trafficking, invades the province of the jury.

Additionally, these series of assertions and allegations are pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

84.   <u>CH08–Item 332 (P88)</u>

Two unknown women and Avery enter room 214.

85.   <u>CH08–Item 333 (P89)</u>

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

An unknown woman enters room 214, followed by an unknown man and a second unknown woman. Approximately 5 minutes and 46 seconds later, the man and woman exit room 214.

The government concludes that "this video is evidence of a 'short stay'." A short stay is a term which is used when a person spends a short time in a location to purchase drugs. Locations where individuals frequently engage in "short stays" are a common indicator of drug trafficking in that location.

86.   <u>CH08–Item 334 (P89)</u>

Two unknown women enter room 214. One of the women is the same woman from Item 333.

87.   <u>CH08–Item 335 (P89)</u>

An unknown woman and Avery enter room 214.

88.   <u>CH08–Item 338 (P89)</u>

Two unknown women, one of which the government concludes "appears under the influence," enter room 214.

These five videos (Items 332–335, 338) show seven women that enter room 214 within approximately three hours.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Avery's use of room 214 is incongruous with the customary use of a hotel room and more comparable to a store open for business; that people with access to room 214 engage in drug trafficking; that the unknown people were engaged in a "short stay" (Item 333); and that a large-scale sex trafficking scheme existed because a significant number and frequency of women had access to rooms 213 and 214, controlled by Avery and used for illegal narcotics and sex trafficking, invades the province of the jury.

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

Additionally, these assertions and allegations are pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

89. <u>CH08–Item 345 (P89)</u>

Three unknown women and two unknown men enter room 214.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Avery's use of the rooms under his control is incongruous with the customary use of a hotel room and more comparable to a store open for business, invades the province of the jury.

90. <u>CH08–Item 348 (P90)</u>

An unknown woman walks out of room 214.

91. <u>CH08–Item 349 (P90)</u>

One unknown woman enters room 214, while another unknown woman exits.

92. <u>CH08–Item 350 (P90)</u>

An unknown man walks into room 214, and quickly exits with an unknown woman.

93. <u>CH08–Item 351 (P90)</u>

Three unknown women and Avery exit room 214.

94. <u>CH08–Item 353 (P91)</u>

One unknown woman walks into room 214, while two unknown women exit.

95. <u>CH08–Item 355 (P91)</u>

Two unknown women walk out of room 214.

These six videos (Items 348–351, 353, 355) start at 5:27 p.m. and end at approximately 7:25 a.m. In the videos, 10 women enter and exit room 214 while only one man and Avery appear on the videos.

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Avery's use of room 214 is incongruous with the customary use of a hotel room and more comparable to a store open for business; that people with access to room 214 engage in drug trafficking; and that a large-scale sex trafficking scheme existed because a significant number and frequency of women had access to rooms 213 and 214, controlled by Avery and used for illegal narcotics and sex trafficking, invades the province of the jury.

Additionally, these assertions and allegations are pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

**Government Exhibit F – Camera Nine**

1.   CH09 – Item 2016–12–16–18–33–15–1 (Assault Video 3 of 14) (P93)

An unknown man, wearing a jacket with the Detroit Tigers English D engraved on the front and the name "Detroit" engraved in cursive on the back, is walking down the second-floor hallway of the northern side of the Victory Inn. He is followed by Unknown Man One. As the man with the Detroit Tigers jacket walks past Avery, he turns and looks behind. He walks further down the hallway and then turns to look back again, which the government concludes is "as if anticipating something will happen."

A second or so later, Unknown Man One, who was walking behind the man with the Tiger's jacket, assaults Avery at the threshold of the hallway. Avery drops to the ground and the unknown man grabs several items off the floor, which the government speculates is "possibly narcotics and/or money."

Unknown Man One continues to walk down the hallway. He can be seen with a firearm in his hand. Avery gets up and retreats into a room. Avery quickly comes back out with a firearm and fires several shots, which are visible on camera. Avery

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET
(248) 681-6255

then appears to hand the firearm to Randol, who can be seen holding and pointing Avery's firearm.

The Government is speculating that about what this assault is all about; it assumes that it involves conspiracies to distribute narcotics and to engage in sex trafficking. There is no evidence of that in this video, it's only in the imagination of the Government to fit the narrative of the Indictment. What the video does show is that Avery has enemies and that someone had a beef that he wanted to settle with Avery. There is nothing further. These assertions and allegations are pure speculation and conjecture and therefore this clip is not relevant, and it is more prejudicial than probative. Further this is other acts evidence that is being introduced which is improper.

2. <u>CH09 – Item 2016–12–16–18–33–15 (Assault Video 13 of 14) (P93)</u>

Nero continues to walk the man with the Tiger's jacket down the hallway then down the stairs. The Government is seeking to infer that Nero's involvement was to seek to protect Avery's business. That is a gap of logic that cannot be bridged for the reason there is no evidence to support it and Nero had his own beef with Jose because Nero was nearby in the crossfire and his life was placed in danger. These assertions, inferences and allegations are pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

**Government Exhibit G – Camera Ten**

1. <u>CH10–Item 11 (P95)</u>

An unknown man is standing in the outdoor hallway. Nero walks into the outdoor hallway. Nero is wearing a distinctive coat that appears white, except for dark coloring on and between the shoulders, and a hood. Immediately, with his right hand, he places an object on the ledge of a window. Right away, the unknown

57

man walks to the window ledge and retrieves the object placed by Nero. The

unknown man and Nero engage in a conversation. The government speculates that

"Nero may have money in his left hand which he places in his rear pants pocket."

Nero walks away.

Later in the video, Nero returns to the hallway and walks through a stairwell

door with several other individuals. Nero's face is captured, for the first time on

this video, as he walks through the door.

The government's intention to speculate, infer, and conclude for the jury, via

testimony based on this video, that Nero was engaged in a drug transaction; that

Nero surreptitiously placed drugs on the window's ledge to avoid the outward

appearance of engaging in a hand-to-hand transaction; that the unknown man

immediately retrieves the drugs; and that if the transaction was lawful, Nero would

have simply handed the item to the unknown man, invades the province of the

jury.

Additionally, these assertions and allegations are pure speculation and

conjecture and therefore this clip is not relevant and is more prejudicial than

probative.

 2. <u>CH10–Item 2016–12–16–18–33–40 (Assault Video 2 of 14) (P95)</u>

Unknown Man One is now on the second floor, waiting for someone. He

continually looks down the hallway at something.

A man with the name "Detroit," engraved in cursive, on the back of the coat

(part of the Detroit Tigers logo) walks through the door quickly followed by

Unknown Man One. This is part of the series of assault videos that have been

objected throughout since these videos do not establish facts to support the

charges in the Indictment but only serve to show some Defendants engaging in

other bad acts that have nothing to do with the charges offenses.

As a result, these assertions and allegations are pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative. These are other acts evidence that must be disallowed.

3.   <u>CH10–Item 12 (Assault Video 8 of 14) (P96)</u>

One of the individuals on the video is wearing a jacket with the Detroit Tigers English D engraved on the front and the name "Detroit," engraved in cursive, on the back. He is observed walking through the service door back onto the outdoor hallway.

As he walks away from the camera, someone grabs him and bangs his head against the wall of the hotel. A violent assault ensues. The man with the Tiger's coat falls to the ground where Nero and Avery, punch him, kick him, and stomp on his head. The beating draws the attention of other individuals, who exit their rooms, including a white man with a cigarette in his mouth (just underneath the camera), to assist in the assault such as opening the door when Jose is being led away, and blocking the hallway when the assault is occurring.

After the attack, the man with the Tiger's jacket is unconscious on the ground. At first, Avery drags him down the outdoor hallway for a short distance. Then Nero, wearing the same distinctive coat he wore during the drug transaction in Item 11, continues dragging him through the service door. Randol walks behind Nero out the door. Taken together this is a group of people, some of them the Defendants in this case as well as others, who "took justice into their own hands" when faced with an attack from an unknown individual. The Government's assertions and allegations are pure speculation and conjecture in linking this to the charged conspiracies, and therefore this clip is not relevant and is more prejudicial than probative. It also constitutes other acts evidence and should be excluded on that basis as well.

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

4.   CH05–Item 2016–12–16–19–40–49 (Assault Video 12 of 14) (P96)

Nero walks the man with the Tiger's Jacket down the exterior upstairs hallway. The objections are incorporated from the preceding assault videos.

5.   CH10–Item 51 (P97)

Nero walks down the outdoor hallway. An unknown man walks into the outdoor hallway and stops to interact with Nero. They move up the hallway together and talk. Nero pulls an item from his pocket and exchanges something with the unknown man. A small object drops to the ground during the exchange. After picking up the dropped item, Nero walks away from the unknown man toward the camera.

At trial, numerous witnesses will testify that Nero sold drugs at the Victory Inn. The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Nero sold drugs as part of the drug trafficking conspiracy, invades the province of the jury.

Additionally, these assertions and allegations are pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

6.   CH10–Item 56 (P97)

Two unknown women walk up to Nero, who is standing in the doorway of a room. Nero hands something to one of the women. A second item is exchanged. When the transaction is over, the women walk away. The entire transaction lasts less than a minute.

At trial, numerous witnesses will testify that Nero sold drugs at the Victory Inn. The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Nero sold drugs as part of the drug trafficking conspiracy, invades the province of the jury.

Additionally, these assertions and allegations are pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

7.   CH10–Item 59 (P98)

Nero walks out of the stairwell alongside an unknown male. Nero has something in his left hand. One at a time, he gives eight small white objects to the unknown male. All eight fit into Nero's hand and into the hand of the unknown man. The unknown man puts the objects in his pocket.

At trial, numerous witnesses will testify that Nero sold drugs at the Victory Inn. The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Nero sold drugs as part of the drug trafficking conspiracy, invades the province of the jury.

Additionally, these assertions and allegations are pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

8.   CH10–Item 72 (P98)

A room receipt shows that room 217 is registered to Nero from 12/28 to 12/29. Three unknown men stand outside room 217 on 12/29 at 2:43 a.m. One of the men walks up to room 217 and appears to count out cash. He hands the cash (or other object) to someone inside room 217, then enters the room. The second man enters with the first, while the third man waits outside. The government concludes that "[g]iven that the third man waits outside while the other men in his group go inside, it is unlikely that their interaction was social. The video strongly suggests they engaged in a drug transaction."

At trial, numerous witnesses will testify that Nero sold drugs at the Victory Inn. The government's intention to speculate, infer, and conclude for the jury, via

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET
(248) 681-6255

testimony based on this video, that Nero sold drugs as part of the drug trafficking conspiracy, invades the province of the jury.

Additionally, these assertions and allegations are pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative. Without proper foundation, the room receipt is hearsay.

### Government Exhibit H – Pole Camera

1.   Buy – 2016–116–16.4 (P100)

The government speculates that two unknown individuals engage in a suspected hand-to-hand transaction outside of a first-floor room at the Victory Inn, and that their behavior is consistent with drug trafficking.

The government claims that this video provides context and corroborates law enforcement testimony about their observations during surveillance, which led to the execution of a search at the Victory Inn.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that people purchased controlled substance(s) at the Victory Inn, invades the province of the jury. This clip is not relevant and is more prejudicial than probative.

2.   Nero–201–91004–15 (P100)

A vehicle pulls into a parking spot. Nero, wearing his distinctive camouflage jacket, immediately goes into an internal hallway. After a short time, he comes out and gives something to the driver of the vehicle just before the vehicle leaves.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Nero sold controlled substances at the Victory Inn, invades the province of the jury. Additionally, these assertions and allegations are pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

3.   Victim 3–201910–09–15.29 (P100)

This video depicts an identified victim of the human trafficking conspiracy. She is on the second floor of the Victory Inn during the relevant time period. Her eyes are closed, and she appears disoriented.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that human trafficking victims, controlled with controlled substances, were trafficked at the Victory Inn; and that a large-scale sex trafficking scheme existed because a significant number of women were present at the Victory Inn, invades the province of the jury. In addition, use of the term "victim" presupposes that the jury found her to be a "victim" instead of willing participant in a drug culture that included engaging in the sex business. Defendants object to the terminology "victim."

4.   Clip 3 – 201910–21–09.33 (P101)

This video clearly depicts Nero with an identified victim of the human trafficking conspiracy and an unknown woman. Nero is wearing his distinctive camouflage jacket and appears to be standing outside of Room 118, a co-defendant's room where significant drug and human trafficking activity took place. The women enter the room, and Nero walks down the hallway.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Nero interacted with and knew the identified human trafficking victim; and that a large-scale sex trafficking scheme existed because a significant number of women had access to rooms at the Victory Inn, invades the province of the jury. This is pure speculation and conjecture and further, use of the term "victim" presupposes that the jury found her to be a "victim" instead of willing participant in a drug culture that included engaging in the sex business. Defendants object to the terminology "victim."

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

5.   Nero & Randol –20191127–14.29.54 (P101)

Randol stands on the second-floor balcony of the Victory Inn. Nero comes out of a room on the second floor wearing his distinctive camouflage jacket. Randol then goes into the room that Nero left.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Nero and Randol are members of the drug and sex trafficking conspiracies and are connected to each other and to some of the same rooms at the Victory Inn, invades the province of the jury. This clip is not relevant and is more prejudicial than probative.

6.   Nero getting backpack from truck into Randol's room (P102)

Nero comes out of what appears to be Room 218, Randol's room, wearing his distinctive camouflage jacket. Nero walks down the hallway, goes downstairs, and walks directly to a parked white truck. He appears to retrieve something from the backseat. He then quickly returns upstairs and walks into the same room he came from, this time carrying a dark backpack.

The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Nero and Randol are members of the drug and sex trafficking conspiracies and are connected to each other and to some of the same rooms at the Victory Inn, invades the province of the jury. This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

7.   Bell & Randol – 20191231–11.51.24 (P102)

Bell walks out of a room on the second floor of the Victory Inn. A few seconds later, Randol walks out of the same or a nearby room with an unknown woman. Randol then walks into another room two doors down. The woman waits for Randol and talks with another man. Randol then comes out of the room, and the unknown

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

man and woman follow him. Randol then walks into another room.                    The government's intention to speculate, infer, and conclude for the jury, via testimony based on this video, that Bell and Randol are members of the drug and sex trafficking conspiracies and are connected to each other and to various rooms at the Victory Inn, invades the province of the jury. This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative.

### Government Exhibit J – Assault Videos in Chronological Order

Defendants object to the assault videos being shown for the purpose of establishing sex trafficking and drug distribution conspiracies. The Government conjectures drugs or drug proceeds were taken from Avery, yet there is no evidence of the same. The only facts established by the video are that, first a man aided by another man in a Tiger coat, assaulted Avery and then later the man who assaulted Avery was seen leaving with a gun in his hand. This is followed by Avery obtaining a weapon and exchanging gun fire with someone, presumably the man with a gun, but the camera does not tell us that. Later, several people assault the man in the Tiger jacket who must have thought his aiding and abetting the person who assaulted Avery would have gone unnoticed. The assault video shows multiple assaults; the first assault was perpetrated upon Avery, the second assault is Avery firing his weapon over the railing (although it is not clear that he was shooting at anybody) and the third assault is on Jose, the man in the Tiger Jacket.

The Government contends this is an example of a conspiracy because Nero joined in the assault of Jose. However, there were other people involved in the assault who are not named defendants, including w white man smoking a cigarette who was holding the door when Jose was removed, and this man and others were in the hallway preventing anyone from entering while the Jose assault

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

was occurring. Moreover, Nero had his own "beef" with Jose because Nero was caught in the crossfire between Avery and the unknown man.  Since there is no foundation establishing a common purpose and objective, this cannot be used to establish the charged offenses. This is pure speculation and conjecture and therefore this clip is not relevant and is more prejudicial than probative. In addition, in amounts to other acts evidence and should be excluded for that reason.

### General Argument Against the Use of Proffered Transcripts

The Court has previously stated the law concerning the use of agent transcripts in the context of surveillance videos as follows:

*          *          *

Whether a jury may use a transcript of a recording follows no bright-line rule. *United States v Norwood*, No. 12-20287, 2014 WL 1818174, at *1 (ED Mich May 7, 2014)  Courts have discretion to allow a jury to use a transcript if the related recording is "authentic, accurate and trustworthy." *United States v Robinson*, 707 F2d 872, 876 (6th Cir 1983)  In determining whether to allow juror use of a transcript, courts look to a variety of factors, including whether the audio recording "is clear enough for a juror to detect that the [recording] is at variance with the transcript," *id* at 878, and whether the transcripts will create juror confusion, *United States v Davis*, No. 02-20049-BC, 2003 WL 21919471, at *2 (ED Mich Aug 8, 2003)  The Sixth Circuit has set forth the following procedures for ensuring that transcripts are accurate:

> The ideal procedure for testing accuracy is to have the prosecution and defense attorneys stipulate to a transcript. If there is a dispute concerning the contents of the tape, the second best method is for the trial court to make a pretrial determination of accuracy by reading the transcript against the tapes. The third and least preferred method is to present two transcripts to the jury, one of which contains the government's version and the other the defense's version. Hence, the jury becomes the final arbiter of which

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET
(248) 681-6255

version is most accurate.  *Robinson*, 707 F2d at 876 (punctuation modified, citation omitted); see also *United States v Segines*, 17 F3d 847, 854 (6th Cir 1994)

See Opinion and Order Denying Without Prejudice Avery's and Nero's Motions in Limine and Granting in Part and Denying without Prejudice in part Tawfik's Motion in Limine (ECF 383)

*          *          *

Per this Court's Order, the Government has proffered to the Defendants transcripts of portions of Camera One's audio in which it seeks to give to the Jury as an aid to understanding the transcripts.  Mr. Nero and Mr. Bell object to the use of the transcripts as a whole as well as the specific transcripts as presented by the Government.  It is their position that the transcripts should not be included at all, as there is a great fear that the Jury may simply view the transcript as the evidence itself rather than the video clips.  The issue with the transcripts are that much of the audio is not intelligible, yet the agent transcript makes attempts to place words where defense counsel cannot discern or even disagrees with the proffered transcript.

An excellent example of this is the first proffered clip from Camera One, 201 CH 1-2016-12-07-20-42-33.avi.  The Government provides a transcript of this encounter between Nero and Gaggo.  (See Government Sealed Response, Pgs 104-107)  The agent transcript claims that the first thing said in the video is Nero stating "Hi Boss" to Gaggo.  This statement would be important to a conspiracy charge as the term "boss" connotes structure, an import consideration in a conspiracy charge.  Counsel has watched and rewatched this portion and is convinced that Nero instead simply says "Hello."  The problem is "[w]hen the tapes are unintelligible ... a transcript intended as an aid to the jury inevitably becomes, in the minds of the jurors, the evidence itself." *Segines*, supra at 854

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET
(248) 681-6255

Issues such as this are replete within this clip, such as the agent saying that Gaggo states "Because you know exactly where I'm goin with honey," when counsel clearly hears Gaggo say "where I'm going with this."  (See Government Sealed Response, Pgs 105)  This distinction is extremely serious within the context of this conversation, as "Honey" is an alleged sex worker involved with the defendants, and it appears that the Government may argue the entirety of the conversation pertains to Honey's actions.  If the Jury reads along, this misinterpretation of this section will effectively reinforce this idea, even though in this instance, it is not true.

There are other issues within this transcript that apply to many of the other proffered transcripts.  For example, there are times when the agents offer their opinions within the transcript, such as when Nero allegedly says the word "Sholl."  (See Government Sealed Response, Pgs 104)  The agent transcript then offers an opinion of what this allegedly means, by indicating that "sholl" mean "sure do."  *Id* This is inadmissible hearsay and impermissible opinion testimony mixed into the transcript.  To the juror, here is how this will appear:

> doin right now. Cause you in my eyesight. I said, but you know something, for you no to be somebody or know nobody or know what the fuck goin on, you sholl (sholl means: sure do) know a awful lot.

The transcripts contain a plethora of examples of this, as illustrated as some of the many, as follows:

- "The gordito (fat in Spanish), he came to me" (Pg 105)
- "I had Moh (name) beat his ass" (Pg 112)
- "I love my mors (term given to friends or someone close) to death bro" (P117)
- "Allah ma'ak (God be with you/good bye) (P118)
- "where did you O.D. (overdose) (P119)

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET
(248) 681-6255

- "just went off on em (him). I told em (him) (P136)

In particular, the agents repeatedly over and over throughout all of the transcripts offer opinions on when they believe a name is being said.  Essentially, whenever the transcript contains parentheses, anything within those parentheses is an agent opinion.  As such, any agent opinion within the transcript must be struck as inadmissible hearsay and opinion testimony.

A pretrial determination of the accuracy of the transcript seems to be the proper solution to the issues in the accuracy of the transcripts.  Additionally, instructions should be given to the Jury as to the limitations of the transcripts if they are allowed.  Ultimately however, the defense position is that the transcripts are unnecessary and will not aid the Jury in any meaningful way, as they can simply just watch the video clip and judge for themselves what is being said.

Respectfully submitted,

/s/*James W. Amberg*
AMBERG & AMBERG, PLLC
James W. Amberg P68564
Attorneys for Mr. Bell
32121 Woodward Ave. Suite PH
Royal Oak, MI 48073
248.681.6255
248.681.0115 (fax)

Dated:  December 3, 2021

/s/*Mark Magidson*
Mark H. Magidson P25581
Attorney for Mr. Nero
The Whitney Building
One Park Avenue, Suite 1207
Detroit, MI 48226

### *Certificate of Service*

I, James W. Amberg, attorney at law, certify that on December 3, 2021, I caused a copy of this Motion to be served upon the Government and the Court via efile.

/s/  *James W. Amberg*
James W. Amberg (P68564)