UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                                                     Criminal Action No. 17-20183

vs.

                                                                HON. MARK A. GOLDSMITH

D-1 DARRICK DERNARD BELL,
D-5 HAROLD LASHAWN NERO,

        Defendants.
_____/

**OPINION & ORDER**
**GRANTING THE GOVERNMENT'S MOTION IN LIMINE TO ADMIT**
**COCONSPIRATOR STATEMENTS (Dkt. 730)**

Defendants Darrick Dernard Bell and Harold Lashawn Nero are charged with participating in sex and drug trafficking conspiracies and related crimes at the Victory Inn in Detroit, Michigan. Previously, Bell moved for the disclosure and pretrial determination of the admissibility of any coconspirator statements at trial (Dkt. 416). In this motion, Bell specifically requested an Enright hearing to determine the admissibility of coconspirator statements. Id. at 3. The Court granted Bell's motion in part, ordering the Government to file and serve a written proffer identifying any alleged coconspirator statements that it contemplates introducing at trial under Federal Rule of Evidence 801(d)(2)(E). 12/1/20 Op. at 6, 8 (Dkt. 539). The Court deferred ruling on Bell's request for an Enright hearing, stating that once the Government's proffer is made, the Court would determine "which of the three methods for determining admissibility is appropriate, i.e., hold an Enright hearing, have the Government submit non-hearsay evidence of a conspiracy at trial prior to making an Enright finding, or conditionally admit the co-conspirator statements at trial." Id. at 6.

The Government has now filed a coconspirator statements offer of proof and motion in limine to admit the statements (Dkt. 730). Defendants filed a response (Dkt. 749), and the Government filed a reply (Dkt. 758). For the reasons that follow, the Court grants the Government's motion, declining to hold an Enright hearing and, instead, conditionally admitting the proffered coconspirator statements.

## I. ANALYSIS

The Government seeks to introduce out-of-court statements from the following categories of evidence: (i) testimony of victims and cooperators, largely relaying statements made to the victims and cooperators by alleged conspiracy members, Gov't Mot. at 42–53;[1] (ii) video (with audio) from camera one, a surveillance camera that recorded the lobby of the Victory Inn from November 27, 2016 to January 12, 2017, largely containing conversations between alleged conspiracy members (or between alleged conspiracy members and victims), id. at 53–100;[2] and (iii) cellphone messages between Defendants, victims, and other alleged conspiracy members, id. at 100–228.

The Government's proffer of these out-of-court statements prompts the Court to consider whether the statements are inadmissible hearsay. Hearsay is any statement that (i) a declarant "does not make while testifying at the current trial" and (ii) is offered into evidence "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Certain statements are excluded from the definition of hearsay, such as statements offered against an opposing party that were "made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R.

---

[1] During a status conference held on March 29, 2022, the Government informed the Court that it intends to have these victims and cooperators testify at trial. In other words, the Government does not intend to admit the reports or interviews containing these victims' and cooperators' statements. Nor does the Government intend to introduce their statements through agent testimony.

[2] The parties identified by number the different cameras that recorded video at the Victory Inn.

Evid. 801(d)(2)(E). If a statement meets the definition of hearsay, it is inadmissible, see Fed. R. Evid. 802, unless it satisfies one or more of the hearsay exceptions, see Fed. R. Evid. 803, 804, 807. "The proponent of a hearsay statement bears the burden of proving each element of a given hearsay exception or exclusion." United States v. Day, 789 F.2d 1217, 1221 (6th Cir. 1986).

The Government seeks to admit the subject statements pursuant to Rule 801(d)(2)(E)—the hearsay exemption for coconspirator statements. Separately, the Government contends that admission of the proffered coconspirator statements does not trigger the Confrontation Clause or the rule of completeness. Gov't Mot. at 8. The Court addresses each argument in turn.[3]

### A. Coconspirator Statements

For an out-of-court statement of a coconspirator to be admissible under Rule 801(d)(2)(E), the Government must establish the following three foundational prerequisites by a preponderance of the evidence: (i) the conspiracy existed, (ii) the defendant against whom the statement is offered was a member of the conspiracy, and (iii) the coconspirator made the statement during the course of and in furtherance of the conspiracy. Bourjaily v. United States, 483 U.S. 171, 175 (1987); United States v. Vinson, 606 F.2d 149, 152 (6th Cir. 1979) (discussing United States v. Enright, 579 F.2d 980 (6th Cir. 1978)).

The Court's finding as to whether the Government has met its burden of showing that the proffered statements are coconspirator statements is commonly referred to as an Enright finding. See United States v. Young, 847 F.3d 328, 352 (6th Cir. 2017). In making its finding, the Court must consider the proffered statements; however, a statement does not "by itself establish . . . the existence of the conspiracy or participation in it." Fed. R. Evid. 801(d)(2)(E); Bourjaily, 483 U.S.

---

[3] In assessing whether the camera one videos are barred by the general prohibition against hearsay, the Court considers not only the parties' coconspirator statement briefing, but also Defendants' hearsay objections to the proffered video evidence. See Defs. Video Objs. (Dkt. 709).

at 181. Thus, there must be some independent corroborating evidence of the defendant's knowledge and participation in the conspiracy for these statements to be admissible. United States v. Benson, 591 F.3d 491, 502 (6th Cir. 2010). There are three possible methods for the district court to employ when making its admissibility determination:

> The first method is the so-called "mini-hearing," during which the district court "hears the government's proof of conspiracy and makes the preliminary Enright finding." [Vinson, 606 F.2d at 152]. This pretrial hearing is also referred to as an Enright hearing, see United States v. Norwood, No. 12-CR-20287, 2014 WL 1795560, at *1 (E.D. Mich. May 6, 2014), and it is what Bell has requested in this case. This sort of hearing is often criticized as being "burdensome, timeconsuming and uneconomic." Vinson, 606 F.2d at 152 & n.4 (citing United States v. James, 590 F.2d 757 (5th Cir. 1979)); Norwood, 2014 WL 1795560, at *2.
>
> Under the second method, a court may require the Government to produce independent evidence establishing a conspiracy at trial before the court makes an Enright finding concerning the admissibility of any co-conspirators' hearsay statements. Vinson, 606 F.2d at 152–153; see also United States v. Stone, No. 10-20123, 2011 WL 17613, at *2 (E.D. Mich. Jan. 4, 2011) ("[T]he Court can require the Government to produce the independent evidence of conspiracy at trial, before it attempts to introduce the hearsay, and the Court can make the Enright findings then."). If, after considering the non-hearsay evidence, a district court finds that the co-conspirator statements are admissible, the court will allow the Government to introduce the challenged statements. Vinson, 606 F.2d at 152.
>
> Finally, under the third method, the court may conditionally "admit the hearsay statements subject to a later demonstration of their admissibility by a preponderance of the evidence." Id. at 153. This method of conditionally admitting co-conspirator statements is "firmly entrenched in this circuit's practice," United States v. Holloway, 740 F.2d 1373, 1375 n.2 (6th Cir. 1984), and it is the general and preferred practice within this circuit, see Norwood, 2014 WL 1795560, at *2 (collecting cases). Notably, if a district court conditionally admits co-conspirator statements but the Government fails to carry its burden at trial by a preponderance of evidence, the court "should grant a mistrial unless convinced that a cautionary instruction would shield the defendant from prejudice." United States v. Kelsor, 665 F.3d 684, 693 (6th Cir. 2011) (citing Vinson, 606 F.2d at 153).

12/1/20 Op. at 4–5.

The Court concludes that an Enright hearing would be unduly burdensome and an inefficient use of the Court's and the parties' limited time and resources. Vinson, 606 F.2d at 152; see also United States v. Marshall, No. 09–20536, 2011 WL 1598955, at *3 (E.D. Mich. Apr.27,

4

2011) (refusing to hold an Enright hearing because, in part, conditionally admitting the statements "seems to be less burdensome and more efficient than holding a separate evidentiary hearing"); United States v. Williams, No. 06-20411, 2010 WL 272142, at *2 (E.D. Mich. Jan. 15, 2010) ("[L]itigating these issues [at a pre-trial hearing] would waste judicial resources and lead to a 'trial within a trial.'").  The second method would also prove unduly burdensome, given that the proof will likely "involve[] an intricate, interwoven web of contacts."  Stone, 2011 WL 17613, at *2 (E.D. Mich. Jan. 4, 2011).  In short, given that the parties estimate that the trial will take six weeks, the Court finds that "having a pre-trial hearing essentially duplicating the evidence to be submitted at trial is overly burdensome compared with the benefit received from such an undertaking." Norwood, 2014 WL 1795560, at *4.  The third method—i.e., the "general and preferred practice within this circuit," 12/1/20 Op. at 4—would best serve the interests of fairness and judicial economy.  The Court, therefore, will conditionally admit the proffered coconspirator statements, subject to the Government proving the foundational predicates for admission by a preponderance of the evidence at trial.

Significantly, although the Court selects the third method, it is not "blindly" allowing the statements' introduction at trial; rather, the Court has already obtained and reviewed the Government's written offer of proof regarding its evidence of conspiracy, "so as to ensure some level of review before the statements were put before the jury." Norwood, 2014 WL 1795560, at *3.  The written proffer reveals that the Government will establish the existence of conspiracies not only through the statements themselves, but also through evidence discovered by law enforcement during the execution of a search warrant at the Victory Inn, such as "14 lethargic female sex-trafficking victims who were suffering from drug withdrawal in disheveled rooms"; "35 grams of crack cocaine" thrown by a Co-Defendant "from a room window"; "one loaded

firearm, narcotics, paraphernalia, and dozens of cell phones"; and "extensive evidence of recent drug use (used needles, used baggies, etc.)" in the hotel rooms. Gov't Mot. at 17.

In addition, the Government's evidence of the conspiracy includes surveillance video footage (in addition to the footage of camera one, the only surveillance video containing audio) showing "a massive volume of apparent hand-to-hand drug and commercial sex transactions from almost every Victory Inn room across a period of two months" as well as "violence" and "drug use." Id. at 17–18; see also, e.g., CH05-2016-12-12-108 (showing Nero handing a white substance to a woman at the Victory Inn); CH08 Item 73 (showing the fifth female to enter Co-Defendant Shelvie Lewis Avery's room at the Victory Inn within a one hour and ten minute span); CH05-2016-12-28-297 (showing Nero striking a woman in a hallway at the Victory Inn); CH05-2016-12-24-249 (showing a woman smoking a pipe before entering Co-Defendant Bryant Daugherty's room at the Victory Inn).[4] The videos also depict Nero "participating in drug-related activities" and show alleged conspiracy members interacting with one another. Gov't Mot. at 18; see also, e.g., CH05-2016-12-27-290 (showing Nero with drugs wrapped in plastic wrap in his hand at the Victory Inn); CH05-2016-12-22-226 (showing Daugherty taking a suitcase from Nero and bringing it into a Victory Inn room while Co-Defendant Janette Gaggo Tawfik waits outside the room).

Further, the Government intends to have victims of the alleged sex and drug trafficking conspiracy—as well as alleged cooperating witnesses—testify about not just coconspirator statements, but other information that likewise establishes the existence of the conspiracies and Defendants' roles in the conspiracies:

> (1) the names of the conspirators (including Bell and Nero, as well as other defendants); (2) their respective roles (for example, Bell as leader and supplier, Nero as an enforcer and distributor); (3) threats and actual violence from and

---

[4] The titles of the videos cited in this opinion (i.e., CH05-2016-12-12-108) are the ones utilized by the parties.

>between coconspirators and victims; (4) commands from and between coconspirators and victims; (5) orders for specific types of drugs (for example, "boy" or "boi," and "girl," for cocaine and heroin); (6) discussions of police activity; (7) conspirator oversight and surveillance of their operation; (8) meetings to coordinate their activities; (9) coordinating the conspiracy through the use of cellphones; (10) distribution of drugs and collection of proceeds; (11) controlling access to the hotel and specific rooms; (12) the use of internet services like backpage.com to promote the sex trafficking conspiracy; and (13) oversight and control of sex "dates."

Gov't Mot. at 34–35.[5]

This proffer is adequate such that utilizing the option "firmly entrenched in this circuit's practice"—i.e., conditionally admitting the statements without a pre-trial "mini-hearing"—is appropriate here. Holloway, 740 F.2d at 1375 n.2. Accordingly, the Court will conditionally admit proffered statements as coconspirator statements, subject to the Government proving the foundational factors for admission by a preponderance of the evidence at trial.[6]

### B. Confrontation Clause

The Government contends that admission of the proffered statements does not violate the Confrontation Clause of the Sixth Amendment of the United States Constitution. Gov't Mot. at 8–9. Pursuant to the Confrontation Clause, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The

---

[5] In Norwood, this Court, in opting to utilize the third method for determining the admissibility of the coconspirator statements, highlighted that "the Government note[d] that the vast majority of these statements may be admissible against Defendants, independent of the coconspirator exclusion." 2014 WL 1795560, at *3. Likewise, here, the Government contends that "[m]any coconspirator statements are non-hearsay for additional reason." Gov't Mot. at 6. For instance, the Government may introduce some of the statements as statements not made for the truth of the matter asserted, verbal acts, opposing party statements, present sense impressions, excited utterances, or statements of the declarant's then-existing condition. Id. at 40–41.

[6] Defendants argue that CH01-Item 531 (in which Tawfik repeats Bell's statements) and CH01-Item 603 (in which Tawfik repeats Avery's statements) are "hearsay within hearsay." Defs. Video Objs. at 13, 15. Pursuant to Rule 805, "[h]earsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." Because the Government contends that both levels of statements are coconspirator statements, Rule 805 is no barrier to the Court conditionally admitting the statements.

Confrontation Clause is triggered only by "testimonial" statements—i.e., statements that "a reasonable person in the declarant's position would anticipate . . . being used against the accused in investigating and prosecuting the crime." United States v. Martinez, 430 F.3d 317, 329 (6th Cir. 2005) (punctuation modified, citation omitted). Statements that are admitted into evidence under the theory that they are statements made by a coconspirator in furtherance of the conspiracy are, "[b]y definition, . . . not by their nature testimonial; the one making them has no awareness or expectation that his or her statements may later be used at a trial." United States v. Mooneyham, 473 F.3d 280, 286 (6th Cir. 2007) (punctuation modified). Because the Court is conditionally admitting the proffered statements as coconspirator statements, the Court agrees with the Government that admission of these statements does not violate the Confrontation Clause.

### C. The Rule of Completeness

The Government represents that it will "seek to introduce parts—but not all—of certain Defendants' statements." Gov't Mot. at 10. It argues that the rule of completeness does not enable Defendants to "elicit the remaining portion of [their respective] . . . statements through another witness because they are inadmissible hearsay." Id.[7] Defendants disagree. Defs. Resp. at 51. They broadly argue that they should be permitted to introduce the remainder of their statements, without identifying the specific portions of their statements that they seek to admit.

"The rule of completeness allows a party to correct a misleading impression created by the introduction of part of a writing or conversation by introducing additional parts of it necessary to put the admitted portions in proper context." United States v. Adams, 722 F.3d 788, 826 (6th Cir.

---

[7] Pursuant to Rule 801, an opposing party statement is considered non-hearsay only if it is "offered against an opposing party." Fed. R. Evid. 801(d)(2).

8

2013) (punctuation modified). "The common-law doctrine of completeness is partially codified in Rule 106: 'If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time.'" Id. (quoting Fed. R. Evid. 106).

As the Government points out, see Gov't Mot. at 11–12, the United States Court of Appeals for the Sixth Circuit has held that Rule 106 "'covers an order of proof problem; it is not designed to make something admissible that should be excluded.'" Adams, 722 F.3d at 826 (quoting United States v. Costner, 684 F.2d 370, 373 (6th Cir. 1982)). "Right or wrong, this court has acknowledged that under Costner '[e]xculpatory hearsay may not come in solely on the basis of completeness.'" Id. (quoting United States v. Shaver, 89 F. App'x 529, 533 (6th Cir. 2004)) (emphasis added). Under this Sixth Circuit precedent, it is clear that Defendants cannot solely rely on the rule of completeness to admit other hearsay portions of their statements. Rather, Defendants must rely on something in addition, like hearsay exclusions and exceptions—such as the residual hearsay exception, Fed. R. Evid. 807—to admit such statements.

The Court briefly addresses several counterpoints raised by Defendants. First, Defendants argue these Sixth Circuit decisions were "wrongfully decided." Defs. Resp. at 50. However, this Court is bound to follow Sixth Circuit precedent. Accordingly, the Court rejects Defendants' implicit invitation to disregard such precedent.

Second, Defendants argue that the Sixth Circuit "has actually upheld the introduction of otherwise inadmissible hearsay under the Rule of Completeness." Id. at 51 (citing United States v. Harvey, 653 F.3d 388 (6th Cir. 2011)). Harvey, however, is distinguishable. Harvey holds that if a party uses evidence that the court had previously excluded, then the party has opened the door to the other side using it for its own purposes. 653 F.3d at 394–395. Harvey's holding is also

9

rather fact-specific; there, the trial court's prior exclusion of the subject recording was a "compromise," and it "warned that if any part of the recording was introduced by either party, the entire recording would be admitted." Id. at 392. Here, Defendants are not seeking to admit evidence that was previously excluded, and the Court has not ruled that any part of the proffered statements are being admitted as part of a "compromise."

Third, Defendants contend that the Court "still has the full authority to rectify abuses of the adversary system caused by incomplete or misleading renditions of statements with the use of FRE 611." Defs. Resp. at 51. Rule 611 gives the Court "reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . make those procedures effective for determining the truth." Fed. R. Evid. 611(a)(1). Rule 611 merely gives the Court control over the mode and order of the presentation of evidence; it does not give the Court permission to circumvent hearsay rules. The Court, therefore, will not allow Defendants to introduce the remainder of their statements under the guise that doing so is a permissible use of the Court's power to control the "mode and order" of the presentation of evidence.

In sum, Sixth Circuit precedent makes clear that Defendants cannot rely solely on the rule of completeness to admit Defendants' exculpatory hearsay statements. Adams, 722 F.3d at 826. Defendants have not attempted to explain how the remainder of their statements may be admissible under some hearsay exclusion or exception. Nor can the Court ascertain whether any of Defendants' statements may be admissible, as Defendants have not identified the specific portions of their statements that they seek to admit.

Accordingly, the Court presently declines to admit the remainder of Defendants' statements. Defendants, however, are free to identify at trial any additional exculpatory statements they seek to admit and argue why the admission of such statements would not violate the hearsay rules. For instance, Defendants may rely on the residual hearsay exception, under which a hearsay

statement is admissible if it is "supported by sufficient guarantees of trustworthiness" and "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a).[8]

## II. CONCLUSION

For the foregoing reasons, the Court grants the Court grants the Government's motion (Dkt. 730). Specifically, the Court conditionally admits the proffered coconspirator statements, subject to the Government meeting its burden of proof for full admissibility at trial.

SO ORDERED.

Dated: April 1, 2022　　　　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[8] If Defendants rely on the residual hearsay exception, they must comply with the notice requirement of Rule 807(b), which mandates written notice to the opposing party before trial.