UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                                        Criminal Action No. 17-20183

vs.

                                                        HON. MARK A. GOLDSMITH

D-1 DARRICK DERNARD BELL,
D-5 HAROLD LASHAWN NERO,

      Defendants.
_____/

**OPINION & ORDER
DENYING DEFENDANTS' MOTION TO EXCLUDE SEX TRAFFICKING
EXPERTS (Dkt. 766)**

    Defendants Darrick Dernard Bell and Harold Lashawn Nero are charged with participating in sex and drug trafficking conspiracies and related crimes at the Victory Inn in Detroit, Michigan. Before the Court is Defendants' motion to exclude the Government's sex trafficking experts (Dkt. 766). The Government filed a response (Dkt. 773). For the reasons that follow, the Court denies the motion.

**I. BACKGROUND**

    The Government intends to elicit testimony from several experts regarding the alleged sex trafficking conspiracy at the Victory Inn. The first expert is Amy Allen, a forensic interview specialist for the Department of Homeland Security. Mot. at 4–5; Resp. at 8–9. Allen "will testify about her forensic interviews of the potential trafficking victims rescued when Homeland Security executed a search warrant at the Victory Inn." Resp. at 8. She will "explain the purpose of a forensic interview, reasons why victims of sex trafficking would or would not disclose ongoing sex trafficking during a forensic interview, the prevalence of delayed outcry/disclosures in sex

trafficking investigations, trauma-bonding in cases of sex trafficking, as well as her experience with sex trafficking victims." Id. at 8–9.

The second expert is Danielle Bastien, a registered nurse. Mot. at 5; Resp. at 15. Bastien has "treated hundreds of individuals afflicted with chemical dependency and undergoing the agonies of withdrawal." Resp. at 15. She will testify about her "expertise in identifying and treating human trafficking victims as well as recognizing the symptoms of drug dependency and substance withdrawal." Id.; Mot. at 5.

The third expert is James Hardie, a supervisory special agent for the Federal Bureau of Investigations. Mot. at 5. Hardie is "trained in the investigation of human trafficking of children and adults and has conducted human trafficking investigations for over thirteen years." Id. He will testify regarding "the relationship between pimps and prostitutes, jargon used in prostitution rings, the typical human trafficking experiences of victims, and the common behaviors of and different methods of control used by traffickers." Resp. at 8.

## II. ANALYSIS

Under Federal Rule of Evidence 702, "a person with 'specialized knowledge' qualified by his or her 'knowledge, skill, experience, training, or education' may give opinion testimony if it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" United States v. Johnson, 488 F.3d 690, 698 (6th Cir. 2007) (quoting Fed. R. Evid. 702). Further, an expert witness's testimony must be reliable. United States v. Rios, 830 F.3d 403, 413 (6th Cir. 2016). District courts have broad discretion in determining whether to admit or exclude expert testimony. Id.

Defendants challenge Allen's and Hardie's qualifications to testify as experts regarding adult sex trafficking victims. Mot. at 8–9. Defendants argue that the testimony of all three experts

2

should be excluded as unreliable and unhelpful to the jury. Id. at 7. If the Court does not outright exclude the experts' testimony, Defendants seek alternative relief. Id. at 10–11. The Court addresses these issues in turn.

### A. Allen's and Hardie's Qualifications

Defendants contend that despite her "lengthy list of training" on human trafficking, Allen is unqualified to testify as an expert because she lacks "real-life experience investigating adult sex trafficking crimes and victims, such as the victims in this case" and, rather, has experience only with child victims. Id. at 8 (emphasis in original). Defendants add, in a vague and conclusory manner, that because "Hardie has also testified in a number of sex trafficking cases involving minors," the "reliability of his testimony is also suspect for the same reasons that Allen's is suspect." Id.

Defendants' arguments regarding Allen are not well taken. An expert can be qualified by experience "or" training. Fed. R. Evid. 702. As Defendants concede, Allen has attended numerous conferences or trainings as either an attendee or presenter. Mot. at 8; Resp. at 10–11 (listing conferences and trainings). But Allen does not just rely on her training; she also has extensive experience interviewing human trafficking victims. And as the Government points out, while Allen has interviewed many child victims, she has also "conducted approximately 500 forensic interviews of human trafficking victims"—presumably referring to adult victims. Resp. at 9; see also id. at 12 (noting that Allen has conducted "over 5,000 interviews from thousands of investigations of minors and adults who were victims of an array of sexual and physical abuse crimes"). Even focusing solely on Allen's 500 interviews of adult victims, this is sufficient experience to qualify Allen as an expert. See, e.g., United States v. Bennett, 258 F. App'x 671, 678 (5th Cir. 2007) (affirming district court's decision that FBI forensic interviewer was qualified

3

to give expert testimony regarding victimization because she had conducted "about 500 interviews" of victims). Allen's extensive work with child victims does not somehow negate her extensive experience with adult victims.

Defendants' argument regarding Hardie is also not well taken. They point to one case in which Hardie was qualified as an expert in child sex trafficking, see United States v. Jackson, 299 F.R.D. 543, 547 (W.D. Mich. 2014), seemingly to suggest that this somehow precludes Hardie from being considered an expert in adult sex trafficking, see Mot. at 9–10. It does not. Moreover, the United States Court of Appeals for the Sixth Circuit has affirmed that Hardie has specialized knowledge about sex trafficking and is qualified to testify as a sex trafficking expert witness. United States v. Bryant, 654 F. App'x 807, 813 (6th Cir. 2016) (discussing Hardie's experience—including his work for the National Center for Missing and Exploited Children and the Northwest Ohio Violent Crimes Against Children Task Force—and concluding that the district court did not abuse its discretion in determining that Hardie was qualified to testify as an expert in sex trafficking).

Defendants' attacks on Allen's and Hardie's qualifications fail. Thus, their testimony will not be excluded based on a lack of qualification.

### B. Reliability

Defendants object "in general" to the three experts' testimony because the experts "never examined the alleged victims in this case, which affects the reliability of their opinion testimony about victims of sex trafficking or addiction." Mot. at 7.

District courts have "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable," provided that the gatekeeping mandate of Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993) is followed "to ensure the

4

reliability and relevancy of expert testimony." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). In line with this dictate, the Sixth Circuit has affirmed that an expert need not personally examine the victims in a case in order for the expert's testimony about, for instance, drug dependency and withdrawal, to be deemed reliable. United States v. Bixler, No. 21-5194, 2022 WL 247740, at *4–5 (6th Cir. Jan. 27, 2022) (rejecting defendant's argument that district court erred in admitting expert to testify in a sex and drug trafficking trial about the physical and psychological impacts of drug dependency and withdrawal on the basis that the expert's testimony was unreliable as she "never examined the victims" in that case). This is because certain expert testimony "does not require review of case-specific facts." Id. at *5 (citing Fed. R. Evid. 702 advisory committee's note ("[I]t might . . . be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case.")). For example, the Bixler expert's testimony was reliable even though the expert did not personally examine the addict victims in that case because the testimony "helped the jury contextualize the women's vulnerabilities and understand the power [the defendant] held over them—subjects that likely are beyond an ordinary juror's knowledge or experience." Id. (citing Patrick Eoghan Murray, In Need of a Fix: Reforming Criminal Law in Light of a Contemporary Understanding of Drug Addiction, 60 UCLA L. Rev. 1006, 1025 (2013) ("For a judge or jury to get inside the mind of a drug addict requires understanding the mysterious and self-destructive compulsion to consume drugs that has no analog for nonaddicts.") (punctuation modified)).

Bastien's expected testimony is like the Bixler expert's testimony. The Government represents that Bastien will "explain to the jury the symptoms associated with withdrawal including the physical manifestations" and "testify about the timeline for withdrawal and

5

appropriate treatments." Resp. at 17. This testimony "will be of general nature and will not purport to represent the view or experience of any particular victim in the present case." Id. Under Bixler, the fact that Bastien has not personally examined the victims in this case is no bar to finding that her anticipated testimony satisfies the reliability requirement of Rule 702.

Based on the Government's representations, Hardie will likewise give generalized testimony that helps contextualize the alleged sex trafficking victims and those who controlled them. See id. at 8 ("Hardie's . . . testimony will include . . . the relationship between pimps and prostitutes, jargon used in prostitution rings, the typical human trafficking experiences of victims, and the common behaviors of and different methods of control used by traffickers."). Under Bixler, the reliability of this type of testimony is not dependent on Hardie having personally examined the victims in this case.

Defendants' concerns about the lack of examination affecting an expert's reliability do not appear to apply with equal force to Allen, who conducted "forensic interviews of the potential trafficking victims rescued when Homeland Security executed a search warrant at the Victory Inn." Id. In any case, the Government represents that as an expert, "Allen will explain the purpose of a forensic interview, reasons why victims of sex trafficking would or would not disclose ongoing sex trafficking during a forensic interview, the prevalence of delayed outcry/disclosures in sex trafficking investigations, trauma-bonding in cases of sex trafficking, as well as her experience with sex trafficking victims." Id. at 8–9.[1] Such generalized testimony will help contextualize the

---

[1] Defendants argue that "Allen's proffered testimony about reasons why victims of sex trafficking would or would not disclose ongoing sex trafficking during a forensic interview, and the prevalence of delayed outcry/disclosures in sex trafficking investigations, is also immaterial since the defense is not attacking the credibility of any alleged victim who denies that she was sex trafficked." Mot. at 9. But the credibility of the alleged victims is not the only reason that such testimony could be relevant or helpful to the jury. See United States v. Warren, 774 F. App'x. 778, 782 (4th Cir. 2019) (finding no abuse of discretion in the district court's allowing Hardie to

sex trafficking victims in this case, and its reliability is not dependent on Allen's having interviewed the victims.

The Court declines to exclude the experts' testimony as unreliable.

**C. Assisting the Jury**

Defendants assert that the experts "will not testify about any matters that are beyond the knowledge of the average juror," and, therefore, the experts' testimony will not assist the jury in understanding evidence or determining a fact at issue. Mot. at 7.

Expert testimony must assist the jury in understanding "an area which is not within the experience of the average juror." United States v. Meadows, 822 F. App'x 434, 437 (6th Cir. 2020) (punctuation modified). The court thus examines whether the "'untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.'" Rios, 830 F.3d at 413 (quoting Fed. R. Evid. 702 advisory committee's note).

The Court is satisfied that sex trafficking is a "subject matter . . . beyond the ken of the average juror." Id. (punctuation modified). "By and large, the relationship between prostitutes and pimps is not the subject of common knowledge." United States v. Brooks, 610 F.3d 1186, 1195–1196 (9th Cir. 2010) (punctuation modified); see also Warren, 774 F. App'x at 782 (finding that Hardie's testimony "about the typical human trafficking experiences of its victims and the common behaviors of traffickers . . . aided the jury in better understanding some of the concepts

---

testify broadly about the typical human trafficking experiences of its victims and the common behaviors of traffickers because Hardie's testimony both (i) "related directly to aspects of the victim's testimony and aided the jury in better understanding some of the concepts and events described by the victim and in assessing the victim's credibility" by helping the jury determine "whether the victim's experiences were common, unique, or implausible" and (ii) "explained why others might have chosen to not testify against [defendant]").

7

and events described by the [human trafficking] victim"; "[w]ithout Hardie's testimony, the jury would have had no way of determining whether the victim's experiences were common, unique, or implausible"); United States v. Brinson, 772 F.3d 1314, 1319 (10th Cir. 2014) (finding that detective's testimony about "the meaning of certain terms commonly used in the prostitution trade," "the relationship between pimps and their prostitutes," "how pimps and prostitutes use cellphones," "how pimps and prostitutes use the internet," "how pimps recruit prostitutes," and "how pimps control prostitutes" "helped the jury"). Likewise, drug dependency, addiction, and withdrawal are outside the knowledge of the average juror. See Bixler, 2022 WL 247740, at *5 (explaining that expert's testimony about "physical and psychological impacts of drug dependency, addiction, and withdrawal . . . helped the jury contextualize the women's vulnerabilities and understand the power [defendant] held over them—subjects that likely are beyond an ordinary juror's knowledge or experience").

For these reasons, the Court will not exclude the experts' testimony as unhelpful to the jury.

**D. Alternative Relief**

Having decided to not outright exclude the experts' testimony on any of the bases raised by Defendants, the Court considers Defendants' alternative requests for relief. First, Defendants ask "for a pretrial hearing or a hearing outside the presence of the jury to screen the expert testimony before the jury hears it." Mot. at 10. Second, Defendants ask that the experts' testimony be presented "only after all of the victim's testimony, and that it is confined to the issues of recruitment and control." Id.

In support of their first argument, Defendants rely on United States v. Jackson, 299 F.R.D. 543 (W.D. Mich. 2014), in which "[t]he defense . . . was provided an opportunity to examine Agent

8

Hardie at a pretrial conference." Id. at 9 n.1. While Jackson does reflect that "SA Hardie was examined by counsel for the government and the defense at the final pretrial conference," Jackson, 299 F.R.D. at 546, the opinion provides no analysis of why—or whether—the court found it necessary to permit counsel an opportunity to examine Hardie outside of trial. Defendants suggest that such an opportunity is necessary "to ensure that only reliable testimony and evidence goes to the jury." Mot. at 1–2. However, as Defendants concede, they have been provided with a summary of the experts' proffered testimony and their curriculum vitae. Id. at 4. Typically, this is sufficient information to assess and question an expert's reliability. Having reviewed this information, Defendants raised certain reliability concerns, which this opinion has addressed. Thus, holding another hearing to address reliability concerns would be redundant and a waste of judicial resources. The Court has addressed Defendants' concerns regarding the admissibility of the experts' testimony, and concerns regarding the weight of the testimony can be adequately explored during cross-examination.

Defendants' argument that the experts' testimony should be "confined to the issues of recruitment and control" is not only undeveloped but also directly undermined by the conclusions reached in this opinion. As detailed above, the experts are expected to testify on subjects beyond recruitment and control, such as drug withdrawal, jargon used in sex trafficking, and why sex trafficking victims might not disclose ongoing sex trafficking. This testimony will be based on the experts' experience and training, reliable, and assist the jury. There is, thus, no apparent reason to confine the experts' testimony as Defendants request.

Finally, Defendants' request regarding the order of testimony implicates Federal Rule of Evidence 611. Pursuant to Rule 611(a), the district court is required to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence" so as to (i) "make those

9

procedures effective for determining the truth," (ii) "avoid wasting time," and (iii) protect witnesses from harassment or undue embarrassment. Defendants again rely on Jackson, where the district court expressed "concerns that [Hardie's] testimony, taken in a vacuum, has the potential for being prejudicial if it takes center stage and displaces the testimony of the [victims]." 299 F.R.D. at 547. The Jackson court noted its belief that "any prejudice to Defendant would be lessened considerably if the expert's testimony is given following victims' testimony rather than preceding the victims' testimony and is confined to the issues of recruitment and control." Id.

The prejudice concerns articulated in Jackson, however, must be weighed against the mandate that "good reason should exist before the court [utilizes its discretion under Rule 611(a) and] intervenes in what is essentially a matter of trial strategy," United States v. Machor, 879 F.2d 945, 953–954 (1st Cir. 1989), such as the order in which the Government calls its witnesses, see Davie v. Mitchell, 291 F. Supp.2d 573, 617 (N.D. Ohio 2003) ("The order in which to call witnesses is a fundamental aspect of trial strategy . . . ."). While there is some risk that the experts' testimony could take "center stage" if they testify before the alleged victims, there is also a risk that requiring the victims to testify first could leave the jury without adequate information to properly contextualize the victims' testimony upon hearing it. As there are pros and cons to either order of testimony, the Court will defer to the Government's order of choice.

### III. CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to exclude sex trafficking experts (Dkt. 766).

Dated: April 5, 2022                           s/Mark A. Goldsmith  
Detroit, Michigan                             MARK A. GOLDSMITH  
                                                     United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 5, 2022.

s/Jennifer McCoy<br>
Case Manager