UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                                                    Criminal Action No. 17-20183

vs.

                                                            HON. MARK A. GOLDSMITH

D-1 DARRICK DERNARD BELL,
D-5 HAROLD LASHAWN NERO,

       Defendants.
_____/

**OPINION & ORDER**
**GRANTING IN PART AND DENYING IN PART THE GOVERNMENT'S MOTION IN LIMINE TO ADMIT EVIDENCE PURSUANT TO RULE 404(b) (Dkt. 724)**

Defendants Darrick Dernard Bell and Harold Lashawn Nero are currently awaiting trial on charges regarding their involvement in alleged sex and drug trafficking conspiracies and related crimes at the Victory Inn in Detroit, Michigan. Previously, Bell filed a motion for the Government to disclose, sixty days before trial, all of the evidence that it intends to offer pursuant to Federal Rule of Evidence 404(b) (Dkt. 417). The Court granted Bell's motion in part, holding that "while Bell is entitled to notice containing descriptions of the specific bad acts the Government's evidence would tend to prove, as well as the purpose for their admission, he is not entitled to disclosure of witness identities or evidence regarding the underlying bad acts." 8/14/20 Op. at 7 (Dkt. 501).[1]

Over 60 days before trial, the Government filed a motion in limine to admit evidence pursuant to Rule 404(b) (Dkt. 724). Defendants filed a joint response (Dkt. 767), and the

---

[1] Because Defendants are not entitled to disclosure of witness identities, the Court refers to certain individuals by the names assigned to them by the Government, such as "AW-1."

Government filed a reply (Dkt. 772). For the following reasons, the Court grants in part and denies in part the Government's motion.

## I. BACKGROUND

The Government contends that, before running the large sex trafficking operation at the Victory Inn, Bell coerced women to engage in commercial sex acts on a smaller scale at a different location. Specifically, Bell ran a drug and sex trafficking business out of the basement of a woman's ("AW-1's") home in Pontiac, Michigan, beginning around February 2014. Mot. at 1, 3–4. Bell trafficked several women, including "AW-2," and he used AW-1 to supervise the women in his employ. Id. at 6, 21. In exchange for their performance of commercial sex acts (for which Bell kept the money earned), Bell let several women live in the basement, and he gave drugs to other women. Id. at 4–5. Bell used and threatened violence toward the women who disobeyed him. Id. at 7. Law enforcement eventually shut down this operation. Id. at 1–2. When officers from the Oakland County Sheriff's Office executed a search warrant of AW-1's Pontiac home, they found AW-1 and two alleged sex trafficking victims in the basement. Id. at 7. They also seized evidence of drug trafficking, such as a distributable amount of narcotics and a digital scale. Id.

Bell was not arrested or charged; however, AW-1 was. Bell bonded AW-1 out of jail and then trafficked her out of his sister's basement in Southfield, Michigan. Id. at 1–2, 10. Bell forced AW-1 to engage in approximately ten sex dates, and he physically hurt her when she refused to participate in sex dates. Id. at 10. Bell took all the money from AW-1's sex dates and gave her drugs in return. Id.

The Governments also alleges that Bell trafficked a female victim ("AV-2"), whom Bell later trafficked at the Victory Inn. Id. at 2; see also 2d Superseding Indictment at 4 (Dkt. 681).

Prior to trafficking AV-2 at the Victory Inn, a witness (AW-3) allegedly observed Bell choke AV-2 on two occasions. Mot. at 2, 12. AW-3 saw Bell choke AV-2 on the first occasion after seeing her in the parking lot of a dope house, and on the second occasion after seeing her at a different dope house. Id. at 12. AW-3 believes that Bell choked AV-2 because she was purchasing drugs from another dealer, and Bell strictly forbade his sex workers from purchasing drugs from anyone other than himself. Id. On a third occasion, AW-3 purportedly observed AV-2 in a state of hysteria with a bleeding groin. Id. at 2, 12. AV-2 allegedly told AW-3 that Bell had "accused her of hiding his money," and so he "inserted a hanger in her vagina to see if that was where she hid his money." Id. All three incidents preceded the conduct charged in count three of the second superseding indictment "by a year or less." Id. at 28. AV-2 is now deceased. Id. at 11.

## II. ANALYSIS

The Government seeks to admit evidence of "Bell's trafficking operation in Pontiac and his trafficking of AW-1" under Rule 404(b). Id. at 13. The Government also seeks to admit "Incidents One through Three involving AV-2 as res gestae evidence or, alternatively, as other acts evidence under Rule 404(b)." Id.

Pursuant to Rule 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, such evidence "may be admissible for another purpose," such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Trial courts employ a three-part test to determine the admissibility of Rule 404(b)(2) evidence. See United States v. Mack, 729 F.3d 594, 601 (6th Cir. 2013). First, a court determines whether there is sufficient evidence that the crime, wrong, or other act took place. Id. Second, it decides whether evidence of that

3

conduct is offered for a proper purpose, i.e., "whether the evidence is probative of a material issue other than character." Id. Third, the court considers whether any risk of unfair prejudice substantially outweighs the evidence's probative value. Id.

Further, this circuit "recognizes an exception to Rule 404(b)[(1)] for res gestae evidence where the evidence consist[s] of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." United States v. Brown, 888 F.3d 829, 836 (6th Cir. 2018) (punctuation modified). "Proper background evidence has a causal, temporal or spatial connection with the charged offense." Id. (punctuation modified, citation omitted). "Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." Id. (punctuation modified, citation omitted).

The Court first employs the three-part test to determine whether the prior acts evidence is admissible under Rule 404(b)(2). The Court then addresses whether the three incidents involving AV-2 constitute res gestae evidence. Finally, the Court considers arguments raised solely by Nero regarding the admissibility of the prior acts evidence.

### A. Rule 404(b)(2)

#### i. Sufficiency of the Evidence

The Court first considers whether there is sufficient evidence of the alleged other bad acts. Defendants argue that there is insufficient evidence to tie Bell to the Pontiac operation and the incidents involving AW-1, because, namely: (i) criminal charges were brought against AW-1, not Bell; (ii) one member of the Oakland County Sheriff's Office who may testify, Charles Janczarek, is not credible, given that he was once found (by a state court in an unrelated criminal matter) to

have given non-credible testimony regarding his obtainment of a search warrant for a tracking device; and (iii) another member of the Oakland County Sheriff's Office who may testify, Douglas Stewart, is unreliable because he allegedly engaged in a sexual relationship with a defendant in an unrelated criminal matter. Resp. at 3–4.

Defendants also argue that there is insufficient evidence to prove the three incidents involving AV-2, because "there are serious concerns as to the credibility of AW-3," the witness who will testify as to the incidents due to AV-2's passing. Id. at 4–5. Specifically, Defendants contend that AW-3 (i) has a "prior lengthy criminal history that includes at least one crime involving dishonesty"; (ii) "appears to have resided with an individual . . . who was a rival drug dealer of . . . Bell"; (iii) "apparently had a boyfriend who also sold drugs and possibly aided women with prostitution"; and (iv) "may have a serious motivation to lie in order to not be charged criminally, given that she confessed to having a hand in the overdose death of an individual at the Victory Inn." Id. at 5.

Defendants misconstrue the Government's burden to be higher than it is. The Government need not prove that the other acts occurred by a preponderance of the evidence. Huddleston v. United States, 485 U.S. 681, 689 (1988). Rather, evidence is sufficient if "the jury can reasonably conclude that the act occurred and that the defendant was the actor." Id. This is a low bar to satisfy. For instance, "the testimony of a single witness is sufficient for a reasonable jury to conclude that the defendant committed the prior acts, even where the witness is less than completely reliable." United States v. Johnson, 458 F. App'x 464, 470 (6th Cir. 2012); see also United States v. Matthews, 440 F.3d 818, 828–829 (6th Cir. 2006) (affirming district court allowing witness testimony about prior drug purchase from the defendant where witness could not remember exactly when or how many times he had purchased drugs from the defendant and

5

whether he had done so in person or through an intermediary), abrogated on other grounds by General Electric Co. v. Joiner, 522 U.S. 136, 141 (1997).

The Government intends to use the testimony of "AW-1, AW-2, members of the Oakland County Sheriff's Office, and other potential witnesses" to establish that Bell ran the Pontiac sex trafficking operation and trafficked AW-1. Mot. at 15. The Government represents that it will establish the incidents involving AV-2 through AW-3, who "will testify that Bell assaulted AV-2 twice and what AV-2 said about the third assault with the hanger." Id. at 15–16. Credibility or reliability concerns do not preclude finding that these witnesses' testimony will be sufficient for a reasonable jury to conclude that Bell committed the prior acts. Johnson, 458 F. App'x at 470; Matthews, 440 F.3d at 828–829. The fact that the prior acts will be established, at least in part, through "the testimony of . . . sworn witness[es] who claimed to be involved in the prior bad act" also bolsters the conclusion that there is sufficient evidence of the alleged prior bad acts. United States v. Sandoval, 460 F. App'x 552, 562 (6th Cir. 2012).

Assuming that these witnesses testify as expected at trial, the first prong of the three-part test will be satisfied.

### ii. Proper Purpose

The Court next considers whether evidence of the prior acts is offered for a proper purpose, i.e., "whether the evidence is probative of a material issue other than character." Mack, 729 F.3d at 601. "Evidence of other acts is probative of a material issue other than character if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." United States v. Bell, 516 F.3d 432, 441–442 (6th Cir. 2008).

### a. Admissible Purpose

The Government seeks to admit the evidence of the prior bad acts for the purposes of establishing Bell's (i) "identity as a human trafficker at the Victory Inn," including Bell's identity as the human trafficker of AV-2, as charged in count three of the second superseding indictment; (ii) "same modus operandi related to his human trafficking in Pontiac, with AW-1, and the Victory Inn"; (iii) "intent to engage in human trafficking at the Victory Inn"; (iv) "knowledge that human trafficking occurred at the Victory Inn"; and (v) "absence of mistake." Mot. at 13, 16. Identity, modus operandi, intent, knowledge, and absence of mistake are all proper purposes to admit evidence of prior bad acts. See Fed. R. Evid. 404(b)(2) (stating that evidence of other bad acts is "admissible" for the purpose of proving "identity," "intent," "knowledge," and "absence of mistake"); United States v. Dongarra, No. 1:15 cr 79, 2015 WL 4191073, at *3 (N.D. Ohio July 10, 2015) (stating that "modus operandi or 'signature' evidence" "falls within permitted uses under Rule 404(b)(2)").

### b. Material or In Issue

Identity (and the related concept of modus operandi) as well as intent and knowledge are material because they go to the elements of the charged crimes, none of which Bell has admitted. Absence of mistake, however, is not in issue. "[F]or other acts evidence to be admissible for the purpose of showing absence of mistake or accident, the defendant must assert a defense based on some type of mistake or accident." Bell, 516 F.3d at 442. The Government argues that the other acts evidence will prove that "human trafficking at the Victory Inn was not a mistake or a coincidence." Mot. at 18. But the Government does not contend that Bell will raise a defense based on mistake or accident. Moreover, Defendants contend that "absence of mistake is not an

7

issue in this case." Resp. at 8. Unless Bell raises a defense of mistake or accident at trial, the Rule 404(b) evidence will not be admissible to prove absence of a mistake.

### c. Probative

"[C]ommission of similar crimes in the past can be used to show identity, i.e., that the defendant is the culprit rather than someone else, if the earlier crimes have <u>particularly identifying characteristics</u> also observed in the later crime." <u>United States v. Whitt</u>, 752 F. App'x 300, 305 (6th Cir. 2018) (emphasis added). Similarly, other acts evidence is probative of modus operandi when all of the similarities between the other acts and the current crime "in combination, present an <u>unusual and distinctive pattern</u> constituting a 'signature.'" <u>United States v. Mack</u>, 258 F.3d 548, 554 (6th Cir. 2001) (emphasis added). Relatedly, prior sex trafficking offenses are probative of a present intent to commit (or knowledge of) sex trafficking when the prior bad acts "were part of the same scheme or involved a similar modus operandi as the present offense." <u>Bell</u>, 516 F.3d at 443. While the prior acts and the charged crime need not be "identical in every detail," the two crimes must have "sufficient distinctive similarity [that] can create a pattern" in order for the prior acts evidence to be probative. <u>United States v. Perry</u>, 438 F.3d 642, 648 (6th Cir. 2006).

The Court considers the similarities between the alleged Victory Inn sex trafficking operation and (i) the Pontiac operation, (ii) Bell's trafficking of AW-1, and (iii) the incidents involving AV-2.

### 1. The Pontiac Operation

Facially, there are a number of similarities between the Pontiac operation and the Victory Inn operation. According to the Government, Bell used AW-1, a woman, to run the Pontiac operation, just as he used a woman, Co-Defendant Janette Gaggo Tawfik, to oversee his operation at the Victory Inn. Mot. at 21. Bell was able to control both AW-1 and Tawfik because, in part,

8

they were both "emotionally vulnerable"; each developed romantic feelings for Bell. Id. at 21–22. In addition to Tawfik, Bell employed other coconspirators to run the operation at the Victory Inn so that he could "physically distance[] himself from the operation for long periods of time, shielding himself from law enforcement." Id. at 16. Further, both operations occurred in the Detroit area in places that Bell used, in part, to provide the women with shelter. Id. at 19, 23. In both operations, Bell used crack cocaine and heroin to "coerce the victims to engage in commercial sex acts"; specifically, Bell required the women to perform sex dates in order to receive drugs, thereby exploiting the addicted women's fears of withdrawal and "dope sickness." Id. at 18–20. Bell prohibited the women in both operations from buying drugs from other drug dealers, in order to maintain his control over the women. Id. at 23. In addition to the narcotics, Bell used violence to control the women in both operations. Id. at 20. In the Pontiac operation, the women were required to give the money from their sex dates to Bell; likewise, in the Victory Inn operation, the women were required to give their sex date money to Bell or one of his coconspirators. Id. at 23. Additionally, in both operations, Bell used the sex trafficking victims to move his narcotics and facilitate drug distribution to the men who paid for the victims' sex services. Id. at 24.

Although there are similarities between the two sex trafficking operations, the Court cannot say that these similarities share "particularly identifying characteristics," Whitt, 752 F. App'x at 305, or that all of the similarities "in combination, present an unusual and distinctive pattern constituting a 'signature,'" Mack, 258 F.3d at 554. The fact that a pimp used narcotics and violence to control the women in his employ is hardly distinctive. Nor is the fact that a pimp did not let the women in his employ keep the money from their sex dates or buy drugs from other dealers. The only arguably unusual, shared characteristic of the two operations is likely Bell's use of female love interests (as well as others, at the Victory Inn) to supervise the operations, so that

9

Bell could physically distance himself from the operations to more easily avoid detection by law enforcement. But this single trait is insufficient to establish a distinctive pattern.

The evidence of the Pontiac operation would be probative if the jury were permitted to infer that because Bell has trafficked women before, he must have done so again in this case. But this is the "kind of propensity reasoning which Rule 404(b) prohibits the jury from using in assessing the probative value of [the defendant's] prior [bad acts] . . . and prevents the judge from considering when engaging in the Rule 403 balancing process." Bell, 516 F.3d at 445–446.

Evidence of the Pontiac operation, therefore, is not probative. Even if it were, it would be excluded based on the prejudice analysis, as discussed below.

### 2. AW-1

The Government contends that Bell trafficked AW-1 in Southfield by employing "many of the same methods" that he employed in Pontiac and at the Victory Inn. Mot. at 24. For instance, the trafficking of AW-1 occurred in the Detroit area; Bell used drugs to coerce AW-1 to engage in sex dates, and AW-1, an addict, complied out of her fear of withdrawal; Bell prohibited AW-1 from buying drugs from other dealers, to maintain his control over her; Bell used violence and threats of violence to force AW-1 to engage in sex dates; and AW-1 had to give her money from the sex dates to Bell. Id. at 24–25.

Bell's trafficking of AW-1 shares even fewer similarities with the Victory Inn sex trafficking operation than the Pontiac operation. Accordingly, evidence of Bell's trafficking of AW-1 is not probative. Even if it were, it would be excluded based on the prejudice analysis, as detailed below.

### 3. AV-2

As noted above, the Government asserts that Bell trafficked AV-2 before also trafficking her at the Victory Inn. As a result, Bell's prior interactions with AV-2 explain how AV-2 ended up being trafficked at the Victory Inn. Rule 404(b) is not implicated by such evidence. United States v. Barnes, 49 F.3d 1144, 1149 (6th Cir. 1995) ("Rule 404(b) is not implicated when the other crimes or wrongs evidence is part of a continuing pattern of illegal activity."); see also United States v. Pratt, 704 F. App'x 420, 423 (6th Cir. 2017) ("[E]vidence of prior bad acts may fall outside Rule 404(b)'s ambit if it forms part of the background of the charged conduct."). Rather, such background evidence, sometimes called "res gestae," is admissible if it is "inextricably intertwined with the charged offense." United States v. Churn, 800 F.3d 768, 779 (6th Cir. 2015). Accordingly, rather than assessing the admissibility of the prior acts involving AV-2 in the Rule 404(b) analysis, the Court analyzes it in the res gestae analysis.

### iii. Balancing Unfair Prejudice and Probative Value

The final prong of the 404(b)(2) analysis requires the Court to determine whether the risk of unfair prejudice substantially outweighs the evidence's probative value. Unfair evidence "refers to evidence which tends to suggest decision on an improper basis." United States v. Schrock, 855 F.2d 327, 335 (6th Cir. 1988) (punctuation modified). The quintessential example of an improper basis in the Rule 404 context is "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the latter bad act now charged (or, worse, as calling for preventive conviction even if he should happen to be innocent momentarily)." Bell, 516 F.3d at 445 (punctuation modified). When weighing the probative value of other acts, a district court should consider the government's alternative sources of proof. Id. Ultimately, the district court is afforded great discretion in conducting the balancing process. Id.

For the reasons discussed above, the evidence of the Pontiac operation and Bell's trafficking of AW-1 lacks probative value. As for the availability of other proof, it appears that the Government will rely on, among other things, (i) surveillance video footage from the Victory Inn and (ii) testimony of victims of the alleged sex trafficking conspiracy as well as cooperating witnesses. See 4/1/21 Op. at 5–7 (Dkt. 781) (describing the evidence that the Government intends to use at trial to establish the existence of the drug and sex trafficking conspiracies at the Victory Inn). The availability of such other means of proof negates the Government's need for the prior acts evidence. See Bell, 516 F.3d at 446 (explaining that the Government has "little, if any, need" for prior acts evidence where it has "a number of means available to it to prove" the defendant's specific intent "without showing that he was involved in previous . . . crimes") (punctuation modified).

Most importantly, there is a substantial risk that the evidence of Bell's prior sex trafficking activities will paint Bell as a "repeat" sex trafficker, thereby "greatly increasing the chance that the jury would punish him not for his involvement in the offense at issue, but rather because he appeared to be a 'bad' guy." Id. As the Sixth Circuit has explained:

> When jurors hear that a defendant has on earlier occasions committed essentially the same crime as that for which he is on trial, the information unquestionably has a powerful and prejudicial impact. That, of course, is why the prosecution uses such evidence whenever it can. When prior acts evidence is introduced, regardless of the stated purpose, the likelihood is very great that the jurors will use the evidence precisely for the purpose it may not be considered; to suggest that the defendant is a bad person, a convicted criminal, and that if he "did it before he probably did it again."

United States v. Johnson, 27 F.3d 1186, 1193 (6th Cir.1994). "Once a pimp, always a pimp" is obviously an improper reason to convict Bell on the current sex trafficking charges. The potential prejudicial impact of the evidence significantly outweighs its probative value.

The Government contends that any unfair prejudice can be cured with a limiting instruction to the jury. Mot. at 34. But in cases like this where "regardless of the stated purpose, the likelihood is very great that the jurors will use the evidence precisely for the purpose it may not be considered," Johnson, 27 F.3d at 1193, the risk of the jury's improper use of the evidence "cannot be quashed by a judge's instructions," United States v. Asher, 910 F.3d 854, 862 (6th Cir. 2018).

The Government's motion, therefore, is denied as to the evidence of the Pontiac operation and Bell's trafficking of AW-1.

### B. Res Gestae[2]

Res gestae is admissible "when the evidence includes conduct that is inextricably intertwined with the charged offense." Churn, 800 F.3d at 779. Res gestae "may include evidence that is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of the witness's testimony, or completes the story of the charged offense." Id.

The prior acts involving AV-2 are res gestae. Count three alleges that Bell used force and coercion to compel AV-2 to engage in commercial sex acts at the Victory Inn starting in 2016. 2d Superseding Indictment at 4. The Government represents that AW-3's testimony will establish that Bell trafficked AV-2 in 2015, shortly before he began running the sex trafficking operation at the Victory Inn in 2016. Mot. at 29. In other words, Bell was able to traffic AV-2 at the Victory

---

[2] In its motion, the Government argues only that the prior incidents involving AV-2 were a prelude to the sex trafficking conspiracy at the Victory Inn. In its reply, the Government adds that "Bell's Oakland County acts with AW-1 and AW-2 are also intrinsic to his Victory Inn conspiracy because they were a prelude to the charged offense." Reply at 4 (punctuation modified). A reply is not an appropriate vehicle to raise an argument for the first time. Sanborn v. Parker, 629 F.3d 554, 579 (6th Cir. 2010). In any case, the prior incidents involving AW-1 and AW-2 were not preludes to the sex trafficking conspiracy at the Victory Inn because the Government has not alleged that either AW-1 or AW-2 were trafficked at the Victory Inn.

Inn (and control her there) because of his prior trafficking and control of AV-2. AW-3's expected testimony will, therefore, show that Bell's prior trafficking of AV-2—and use of violence to control her—was a prelude to his trafficking of AV-2 at the Victory Inn through use of force and coercion.

Defendants' arguments against the admissibility of this background evidence are unpersuasive. First, Defendants appear to argue that the two choking incidents were unrelated to Bell's alleged sex trafficking of AV-2 because Bell and AV-2 "may have been in a romantic relationship," and, therefore, the choking incidents were "domestic violence situation[s]." Resp. at 9. But a romantic relationship between a pimp and sex worker in no way precludes the pimp's trafficking of the sex worker. In fact, the Government alleges that Bell has had romantic relationships with other women whom he has trafficked, such as AW-1. Second, Defendants argue that there is an insufficient foundation to find that the choking incidents were a prelude to Bell's trafficking of AV-2 at the Victory Inn. Id. However, the Government represents that it will lay a foundation through AW-3's testimony at trial. Therefore, excluding this evidence on foundation grounds would be premature.

Even if evidence is res gestae, the court "must also find that . . . the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice pursuant to Federal Rule of Evidence 403," before admitting the evidence. Churn, 800 F.3d at 779. The evidence of Bell's three prior assaults of AV-2 is probative of Bell's identity as the individual who trafficked AV-2 at the Victory Inn as charged in count three of the second superseding indictment. Moreover, the Government represents that, because AV-2 is now deceased, there are "limited evidentiary alternatives available to the government to prove [Bell's] identity [as the individual who trafficked AV-2]." Mot. at 34 (punctuation modified).

The high probative value of the evidence of Bell's three prior assaults of AV-2 is not substantially outweighed by the potential prejudicial impact of the evidence. Defendants argue that the assault involving the coat hanger is particularly "shocking," Resp. at 11, and, therefore, it has "inflammatory potential"—i.e., it increases the likelihood that the jury would convict Bell based on their emotional response to his past wrongs rather than the evidence proving the charged offenses, see Asher, 910 F.3d at 861–862. However, the fact that evidence is graphic, alone, does not make it unfairly prejudicial. See, e.g., United States v. Noe, 411 F.3d 878, 887 (8th Cir. 2005) (holding that evidence that defendant assaulted an individual who took drugs without paying for them, breaking two of the individual's teeth and removing another tooth with pliers, was not unfairly prejudicial); United States v. Stone, No. 5:19-CR-10-TBR, 2020 WL 1877801, at *6 (W.D. Ky. Apr. 15, 2020) (finding that defendant's text messages requesting that minors perform sexual acts with others or recount their prior sexual encounters to him was not unfairly prejudicial).

Rather, "when the charged crime has 'inflammatory potential' similar to or greater than the prior act, the risk of the jury being inflamed by presentation of the prior-act evidence may be diminished." Asher, 910 F.3d at 862. While the alleged coat hanger incident is undoubtedly graphic, it is not any more inflammatory than Bell's alleged physical assaults of AV-2 during the charged offense. For instance, Government witnesses are expected to testify that at the Victory Inn, Bell's assaults of AV-2 left her with bruising, a bloody eye, and a bloody mouth; Bell also once shaved AV-2's head as punishment for stealing his money and told her that the next time she did that she would lose an ear. Gov't Mot. to Admit Coconspirator Statements at 35, 38, 45–46, 49 (Dkt. 730). Such assaults have comparable inflammatory potential to that of the coat hanger incident.

Having conducted the requisite Rule 403 balancing, the Court concludes that the risk of unfair prejudice of the three prior assaults of AV-2 does not substantially outweigh the evidence's probative value. Accordingly, the Court grants the Government's motion as to the three incidents involving AV-2.

### C. Nero's Arguments

Nero argues that before the Court admits evidence of Bell's prior bad acts, it should consider possible "spillover" prejudice that may result to Nero. Resp. at 12 (citing United States v. Davis, 838 F.2d 909, 916 (7th Cir. 1988) ("[B]efore admitting 'other acts' evidence in a joint trial, a trial judge must not only weigh the probative value of the evidence against the danger of unfair prejudice to the defendant against whom the evidence is introduced, but must also consider any possible 'spillover' prejudice that may unfairly prejudice other defendants."). Nero concedes that, "'[g]enerally, a cautionary instruction will be sufficient to cure any unfair prejudice.'" Id. (quoting Davis, 838 F.2d at 916). However, Nero contends that because "Nero is at risk of being found guilty by association because of the spillover of Bell's other acts that would not be admissible against Nero in a separate trial," a limiting instruction is insufficient. Id. at 13. Rather, Nero suggests, the Court should either exclude the evidence or sever the trials. See id. at 12-14.

"Merely because inflammatory evidence is admitted against one defendant, not directly involving another codefendant (and with which the other is not charged), does not, in and of itself, show substantial prejudice in the latter's trial." United States v. Gallo, 763 F.2d 1504, 1526 (6th Cir. 1985). While the evidence of Bell's prior wrongs may have some prejudicial impact on Nero (who did not participate in the prior wrongs), the cure is not severance. The Court has already rejected Nero's motion to sever trials. See 7/31/19 Op. (Dkt. 308). In doing so, the Court addressed Nero's spillover concerns, explaining that "any potential confusion from spillover

16

evidence will be prevented by carefully and adequately instructing the jury to consider the evidence against each Defendant separately, particularly regarding the conspiracy charges." Id. at 12. In addition to a carefully-crafted jury instruction to consider the evidence against each Defendant, Nero may request at trial that a limiting instruction be given before the introduction of the prior acts evidence.

Accordingly, the Court declines to exclude the prior acts evidence based on Nero's fears of spillover prejudice, and the Court rejects Nero's implicit invitation to reconsider its decision for Defendants to be tried jointly rather than severally.

### III. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Government's motion in limine to admit evidence pursuant to Rule 404(b) (Dkt. 724). Specifically, the Court (i) excludes the evidence of the Pontiac operation and Bell's trafficking of AW-1 and (ii) permits the evidence of the three assaults of AV-2.

SO ORDERED.

Dated: April 8, 2022  s/Mark A. Goldsmith
      Detroit, Michigan  MARK A. GOLDSMITH
                                     United States District Judge