UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

D-1 DARRICK DERNARD BELL,

    Defendants.
_____/

Criminal Action No. 17-20183

HON. MARK A. GOLDSMITH

**OPINION & ORDER**
**GRANTING DEFENDANT DARRICK BELL'S MOTION IN LIMINE TO ALLOW EVIDENCE OF GOVERNMENT WITNESSES' PARTICIPATION IN COMMERCIAL SEX WORK WITH INDIVIDUALS NOT NAMED IN THE FIRST SUPERSEDING INDICTMENT (Dkt. 825)**

Defendants Darrick Dernard Bell and Harold Lashawn Nero are currently on trial for crimes relating to their alleged roles in sex and drug trafficking conspiracies at the Victory Inn in Detroit, Michigan. This matter is before the Court on Bell's motion in limine to allow evidence of the Government's witnesses' participation in commercial sex work with individuals who are not named in the first superseding indictment (Dkt. 825).[1] The Government filed a response (Dkt. 838), and Bell filed a reply (Dkt. 839). As explained below, Bell's motion calls only for relief that is derivative of the Court's earlier opinion addressing the same subject. It is granted as set forth below.

---

[1] The first superseding indictment charges Bell, Nero, and their Co-Defendants—Janette Gaggo Tawfik, Shelvie Lewis Avery, Terry Pruitt, Michael Anthony Randol, Charles Thomas Ford, Jack Hana Yako, and Kemal Gabrail—with crimes relating to the alleged sex and drug trafficking operations at the Victory Inn. Superseding Indictment (Dkt. 98). The second superseding indictment is brought against only Bell, Nero, and Ford. 2d Superseding Indictment (Dkt. 681). Ford pleaded guilty and has now been sentenced. Ford Judgment (Dkt. 780).

## I. BACKGROUND

For criminal proceedings involving "alleged sexual misconduct," like prosecutions of sex trafficking, Federal Rule of Evidence 412 establishes a general prohibition against the admission of evidence offered to prove (i) "that a victim engaged in other sexual behavior" or (ii) "a victim's sexual predisposition." Fed. R. Evid. 412(a). There are limited exceptions to this prohibition. See Fed. R. Evid. 412(b)(1)(A)–(C).

In accordance with Rule 412(c)(1), Bell previously moved the Court to cross-examine the alleged sex trafficking victims about their participation in other commercial sex work activities. 3/24/20 Mot. (Dkt. 419). In his March 2020 motion, Bell stated that, based on his own team's investigation as well as the discovery that the Government had provided at that point, "[t]here is a strong likelihood that evidence exists that at least some of these witnesses were employed with other potential sex traffickers prior to, during the conspiracy, and after the conspiracy." Id. at 5. As for cross-examination of witnesses regarding their commercial sex activities during the conspiracy, Bell represented that "the gist of this cross examination will revolve around issues pertaining to the witnesses engaging in prostitution activities with souteneurs who are not . . . Bell during the time of the alleged conspiracy." Id. at 3. According to Bell, "[t]his evidence would directly counter claims that these witnesses had worked with or for . . . Bell during the conspiracy." Id. This evidence would also give the alleged victims a motive to "make[] a claim against . . . Bell with the purpose to protect their actual souteneur." 5/18/20 Reply at 3 (Dkt. 468). The Government opposed Bell's motion (Dkt. 458).

The Court determined that "while evidence regarding the victims' pre- and post-indictment prostitution is inadmissible, Bell is permitted to question the victims regarding the extent of their involvement in the prostitution that is the subject of the indictment." 5/26/21 Op. at 9 (Dkt. 630)

2

(citing United States v. Haines, 918 F.3d 694, 698 (9th Cir. 2019)). "Additionally, Bell may impeach the victims through other permissible means, such as by questioning the victims about 'their prior drug use, their possible bias against [Bell], whether they consented to prostitute for [Bell] during the timeframe alleged in the indictment, and whether they were coerced into prostitution or motivated by money.'" Id. (quoting United States v. Lockhart, 844 F.3d 501, 510 (5th Cir. 2016)). Regarding impeachment, the Court rejected Bell's theory that "a victim's prior association with another pimp will demonstrate that she is shielding that pimp from prosecution by falsely accusing Bell" as an "untenable stretch of logic." Id. at 9 (referencing United States v. Jackson, 627 F. App'x 460, 464 (6th Cir. 2015)).

In his present motion, Bell asks the Court to "allow the defense to cross-examine the Government's witnesses on the issues of whether the complaining witnesses were actively involved in commercial sex work with other individuals," i.e., individuals other than Bell and his Co-Defendants (namely, the alleged victims' boyfriends), "during the time periods involved in the alleged sex trafficking conspiracy." Mot. at 1 (emphasis added). Bell also appears to ask the Court to permit defense counsel to question one alleged victim, S.F., about her purported motives to blame Bell: (i) to protect D.M., her true trafficker, and (ii) because D.M. was S.F.'s alleged boyfriend and father of her child, and he "had issues with Bell" (the two "did not like each other"). Id. at 4.[2]

## II. ANALYSIS

As a threshold matter, the Government puts forth the following two theories as to why Bell's motion should be denied as untimely. First, Bell's motion is really a motion for

---

[2] Bell refers to D.M. as S.F.'s "boyfriend." Mot. at 4. The Court does not know whether D.M. is S.F.'s former or current boyfriend.

3

reconsideration of the Court's May 26, 2021 opinion.  Resp. at 2.  Motions for reconsideration of an opinion must be filed within 14 days of the opinion.  E.D. Mich. LR 7.1(h).  Because Bell filed the motion nearly 11 months after the May 26, 2021 opinion, it is an untimely motion for reconsideration.  Resp. at 2.  Second, even if the motion is not treated as one for reconsideration, Defendants' motions deadline has long passed, and Bell has not made the requisite "good cause" showing to consider untimely motions.  Id.; see also Fed. R. Crim. P. 12(c)(3) (explaining that a court may consider an untimely motion only if the movant establishes "good cause" for the untimeliness).

Bell appears to argue that his delay is justified because he was unaware of evidence suggesting that the alleged victims of the Victory Inn operation were trafficked by their own boyfriends during the conspiracy—rather than Bell or his Co-Defendants—until law enforcement agents testified at trial, and "it became clear that these drug dealer boyfriends were well known to the agents investigating the case."  Mot. at 2.  But this argument is belied by Bell's own admission that he had in his possession before trial discovery reflecting that a boyfriend of one of the alleged victims "was running some sort of commercial sex worker operation at the Victory Inn" during the conspiracy.  Id. at 2–3; see also Reply at 1–2 (arguing that Bell did not have all Jencks Act material when he filed his March 2020 motion, but acknowledging that he received this material before trial).  Bell's argument is also undercut by his statement in his March 2020 motion that, based on his team's investigation and discovery produced by the Government, he believed there was a "strong likelihood that evidence exists that at least some of these witnesses were employed with other potential sex traffickers . . . during the conspiracy . . . ."  3/24/20 Mot. at 5.

However, the Government's timeliness argument is misplaced, given that Bell is seeking permission to ask questions that the Court has already deemed permissible.  Specifically, Bell is

seeking a subset of the relief that he previously sought in March 2020—permission to "introduce evidence of sex work activities that took place during the conspiracy." Mot. at 5 (emphasis added).³ The Court previously held that "Bell is permitted to question the victims regarding the extent of their involvement in the prostitution that is the subject of the indictment." 5/26/21 Op. at 9 (citing Haines, 918 F.3d at 698). Such questions clearly include questions about whether someone other than Bell committed the charged sex trafficking crime—i.e., whether someone like D.M. trafficked the alleged victims at the Victory Inn during the conspiracy.

Just as the Court's May 26, 2021 opinion did, the case law draws a line between (i) pre- and post-indictment commercial sex activities and (ii) sex trafficking that is the subject of the prosecution. See, e.g., Haines, 918 F.3d at 698 (excluding evidence of pre- and post-indictment prostitution but allowing defendant "to explore whether the Victims engaged in the prostitution activities at issue in this case . . . with[out] his assistance") (punctuation modified); Lockhart, 844 F.3d at 510 (holding that "evidence of the victims' pre- and post-indictment prostitution [was] not relevant to prove an element necessary to convict [defendants]" but permitting cross-examination regarding the alleged sex trafficking that was the subject of the prosecution). This distinction derives from the language of Rule 412, which prohibits evidence offered to prove that a victim engaged in "other sexual behavior" or has a sexual "predisposition," meaning a tendency to act in a certain way. Fed. R. Evid. 412(a) (emphasis added); see also Haines, 918 F.3d at 697 (holding that "[c]onsistent with this construction of the Rule, courts have routinely barred evidence of a sex trafficking victim's other prostitution activities," and citing as support cases in which courts excluded evidence of pre- and post-indictment prostitution) (emphasis added).

---

³ Bell is not seeking permission to cross-examine alleged victims about their pre- or post-indictment commercial sex activities. Mot. at 5. Thus, Bell is not effectively asking the Court to reconsider relief that the Court previously denied him.

Evidence of victims' other sexual behavior or sexual predisposition, i.e., "the victims' pre- and post-indictment acts of prostitution" would "be irrelevant to this case as it does not make more or less probable the fact that [Defendants] caused their victims to engage in a commercial sex act during the time period alleged in the indictment." Lockhart, 844 F.3d at 510 (punctuation modified); see also United States v. Cephus, 684 F.3d 703, 708 (7th Cir. 2012) (finding that prior prostitution evidence is irrelevant, as "the fact that [the victim had] been a prostitute before does not suggest that [the defendant] didn't beat and threaten her"); United States v. Elbert, 561 F.3d 771, 777 (8th Cir. 2009) (finding evidence of the victims' prior prostitution "would only prove other people may be guilty of similar offenses of . . . causing the[] victims to engage in a commercial sex act").[4] By contrast, evidence that someone other than Bell caused the alleged victims to engage in commercial sex acts at the Victory Inn during the time period alleged in the second superseding indictment would make it less probable that Bell committed the charged sex trafficking acts. Such evidence is not evidence of "other" behavior or a "predisposition." Fed. R. Evid. 412(a). Rather, it is evidence of the exact behavior that is the subject of the sex trafficking prosecution.[5]

The Court's May 26, 2021 opinion and the cases cited therein also provide an answer to Bell's present request for permission to expose through cross-examination of S.F. her alleged

---

[4] Bell attempts to circumvent Rule 412 by arguing that S.F.'s prior history with D.M. is "res gestae evidence," i.e., evidence that is "a prelude to the charged offense, is directly probative of the charged offense, [and] arises from the same events as the charged offense." Reply at 4 (referencing United States v. Hardy, 228 F.3d 745, 748 (6th Cir. 2000)). Rule 412 instructs that S.F.'s prior history of prostitution—for D.M. or anyone else—is simply not probative of whether Bell trafficked S.F. in this case. See Lockhart, 844 F.3d at 510.

[5] To be clear, the Court has not previously held—and it does not hold now—that any and all evidence of commercial sex acts performed by the alleged victims during the time period alleged in the indictment is admissible. Commercial sex acts performed by the alleged victims unrelated to the alleged sex trafficking operation at the Victory Inn would constitute proof of "other sexual behavior" or "sexual predisposition" that is subject to Rule 412. Fed. R. Evid. 412(a).

motives to inculpate Bell: (i) to protect D.M., as her true trafficker, or (ii) because D.M., her purported boyfriend and the father of her child, did not like Bell. Mot. at 4. While Bell cannot question a victim about her "prior association with another pimp" to "demonstrate that she is shielding that pimp from prosecution by falsely accusing Bell," 5/26/21 Op. at 9 (referencing Jackson, 627 F. App'x at 464), Bell "may impeach the victims through other permissible means, such as by questioning the victims about 'their possible bias against [Bell] . . .,'" id. (quoting Lockhart, 844 F.3d at 510). The bias theories Bell seeks to advance are within the scope of cross-examination that the Court previously authorized.

Jackson does not counsel a different result. Jackson addressed the propriety of barring evidence that victims had prostituted themselves to pimps other than the defendant. The defendant asserted that this line of inquiry was justified because, during the investigation, the victims had initially denied that the defendant was their pimp, but then did an "about-face" and accused the defendant of being their pimp. Jackson, 627 F. App'x at 463. The court of appeals rejected the defense justification that the evidence tended to show that the victims were trying to protect their real pimp by falsely accusing the defendant. The court of appeals reasoned that the "prototypical loyalty" of sex workers to their pimps would explain the "about-face," but that protection of another pimp would not be the "natural inference" from an initial denial that the defendant was the actual pimp. Id.

Here, there is no victim denial that Bell engaged in the charged conduct followed by an "about-face" that would be inconsistent with protecting another pimp. Moreover, there is some basis to believe that alleged victim S.F. had reason to protect D.M., further distinguishing this case from Jackson: "S.F. wanting to protect the father of her child/boyfriend/roommate from getting in trouble . . . is run-of-the-mill bias and motive evidence." Reply at 4. The Court agrees that D.M.'s

7

alleged status as S.F.'s boyfriend or the father of her child and the alleged bad blood between D.M. and Bell come within the rubric of the "usual form of bias." See Jackson, 627 F. App'x at 463. Bell may cross-examine along these lines.[6]

### III.  CONCLUSION

For the foregoing reasons, the Court grants Bell's motion in limine (Dkt. 825) as set forth above.

SO ORDERED.

Dated: April 25, 2022  
Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

---

[6] Further, there is no reason for the Court to "revisit its decision to exclude the evidence of Bell's prelude sex trafficking in Pontiac with multiple women from this case," as the Government requests. Resp. at 15 (citing 4/8/22 Op. (Dkt. 802)). The Government contends that reconsideration is warranted because Bell is putting his identity at issue by insisting that D.M. or others committed the charged sex trafficking offenses, and the evidence of Bell's prior sex trafficking operation in Pontiac, Michigan is "highly relevant to his identity as the real sex trafficker in this case." Id. But Bell's identity was already at issue. See 4/8/22 Op. at 7. Further, as the Court explained in its April 8, 2022 opinion, evidence of the Pontiac operation is not probative of Bell's identity because the Pontiac operation and the Victory Inn operation do not share "particularly identifying characteristics," and any similarities between the two operations did not "present an unusual and distinctive pattern constituting a signature." Id. at 9 (punctuation modified). Additionally, the evidence of the Pontiac operation is inadmissible because there is a substantial risk that this evidence "will paint Bell as a repeat sex trafficker, thereby greatly increasing the chance that the jury would punish him not for his involvement in the offense at issue, but rather because he appeared to be a bad guy." Id. at 12 (punctuation modified).

8