UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

D-1 DARRICK DERNARD BELL,
D-5 HAROLD LASHAWN NERO,

      Defendants.
_____/

Criminal Action No. 17-20183

HON. MARK A. GOLDSMITH

**OPINION & ORDER**
**(1) DENYING DEFENDANTS' MOTION IN LIMINE TO PERMIT THE ATTACKING OF THE QUALITY OF THE GOVERNMENT'S INVESTIGATION (Dkt. 834) AND (2) DENYING THE GOVERNMENT'S CROSS-MOTION (Dkt. 835)**

Defendants Darrick Dernard Bell and Harold Lashawn Nero are currently on trial for crimes related to their alleged roles in sex and drug trafficking conspiracies at the Victory Inn in Detroit, Michigan. This matter is before the Court on Defendants' motion in limine to permit the attacking of the quality of the Government's investigation (Dkt. 834). The Government filed a response, which contains a cross-motion (Dkt. 835). For the following reasons, Defendants' motion is denied, and the Government's cross-motion is denied.

**I. BACKGROUND**

The investigation in this case was initiated after one of the alleged victims of the sex trafficking conspiracy, S.F., was taken to Detroit Receiving Hospital. There, physical injuries were observed on S.F.'s body. She told agents that Bell had inflicted these injuries and that she was being human trafficked by Bell.

At trial, United States Department of Homeland Security Agent Stephen Webber, one of the lead investigators in this case, testified that he uses a "victim-centered" approach to sex trafficking investigations. Agent Webber stated that, under this approach, the victims' safety, health, and well-being takes priority. On cross examination, Bell's counsel, James Amberg, asked Agent Webber about the efficacy of using a victim-centered approach, given that some victims may not be trustworthy. Agent Webber stated that his approach is to "err on the side of caution" in the beginning of an investigation, i.e., to make sure the victims are safe. Amberg then asked Agent Webber whether he had anyone investigate D.M., who, according to Agent Webber, had a child and, at one point, a relationship with S.F. Agent Webber answered: "Not that I recall."

Later, the Government called Detroit Police Department Officer Lenin Amarante, who was a member of the assisting unit when the DHS agents raided the Victory Inn. Amarante was not otherwise involved in the investigation of this case. Officer Amarante testified that drug addicts and prostitutes were known to be present at the Victory Inn and the surrounding area, and that he had seen Nero at the Victory Inn and in the surrounding area. On cross-examination, Amberg asked Officer Amarante whether he had ever heard of D.M. Officer Amarante said that he had not. Amberg also asked Officer Amarante whether he has experience dealing with "assaultive-based crimes" like "domestic violence." Officer Amarante said that he does. Amberg then asked Officer Amarante whether, when dealing with a potential domestic violence situation, the first question in the investigation is whether the victim's boyfriend or husband committed the assault. The Government objected to the question as irrelevant. The Court requested briefing on this issue, and Defendants' motion followed.

In their motion, Defendants contend that "the victim-centered approach to policing appears to have placed a priority on giving aid to S.F. at the expense of conducting any sort of investigation

2

to determine whether she may have been less than honest about the true source of her injuries." Mot. at 3. "It appears from the evidence provided to counsel as well as what has been testified to that the agents simply believed S.F. and made no real efforts to determine whether . . . Bell was the source of her injuries, or if it could have been somebody else who caused them," namely, D.M. Id. It appears that Defendants want to ask Amarante, and perhaps Webber and other law enforcement witnesses, whether the investigation should have looked into whether S.F.'s boyfriend was the source of injury, on the theory that the typical investigation into a complaint of assault is to probe whether a domestic partner might be to blame. In essence, Defendants seek permission to ask questions to attack the quality of the Government's investigation that led to the sex trafficking charges against Defendants.

## II. ANALYSIS

The Court addresses the untimeliness of Defendants' motion before turning to its merits. The Court then considers the Government's cross-motion.

### A. Untimeliness of Defendants' Motion

The Government objects to the motion as untimely, contending that it was filed long after the motion cut-off in this case and long after hundreds of investigative reports were furnished to Defendants. Resp. at 3. The objection, however, is misplaced. The motion was filed after the Court told defense counsel, in response to the Government's objection to defense questioning about the investigation, that briefing would be required. Defendants had no obligation to pre-clear an attack on the Government's investigation by way of a pretrial motion.

### B. Merits of Defendants' Motion

Generally, courts have viewed warily defense efforts to re-shift the focus of a trial from the guilt or innocence of the defendant to the quality of the government's investigation. As the Tenth Circuit put it in United States v. McVeigh, 153 F.3d 1166 (10th Cir. 1998):

> Under our system of criminal justice, the issue submitted to the jury is whether the accused is guilty or not guilty. The jury is not asked to render judgment about non-parties, nor is it normally asked to render a verdict on the government's investigation. The district court did not abuse its discretion, but rather is to be commended, in keeping the focus of the trial upon the issues properly before the jury.

Id. at 1992; see also United States v. Saldarriaga, 204 F.3d 50, 52–53 (2d Cir. 2000) ("The [district court] properly charged the jury to base its decision on the evidence or lack of evidence that had been presented at trial, and to focus solely on whether, in light of that evidence or lack of evidence, the jury was convinced beyond a reasonable doubt that the defendant was guilty of the crimes with which he was charged. The jury correctly was instructed that the government has no duty to employ in the course of a single investigation all of the many weapons at its disposal, and that the failure to utilize some particular technique or techniques does not tend to show that a defendant is not guilty of the crime with which he has been charged.").

The Sixth Circuit has followed that same approach. In United States v. Veal, 23 F.3d 985 (6th Cir. 1994), a prosecution of a pharmacist for illegal drug prescriptions, the court upheld a district court's decision to exclude evidence that the Government's investigation had been "sloppy" in its miscalculation of the number of bogus prescriptions. Id. at 989. It found no abuse of discretion in the district court ruling, based on relevance grounds, that "the jury would not be called upon to determine whether the government's investigation had been good or bad." Id.

To be sure, there may be context-specific challenges to the way the Government has conducted itself that may justify examination before a jury. As McVeigh recognized,

4

"[a]dmittedly, the quality or bias of a criminal investigation occasionally may affect the reliability of particular evidence in a trial, and hence, the facts surrounding the government's investigation may become relevant." 153 F.3d at 1192 (citing Lowenfield v. Phelps, 817 F.2d 285, 291–292 (5th Cir. 1987) (holding that it was a reasonable trial strategy to attempt to argue that "sloppy police work" tainted the chain of custody for certain guns seized by police and "set the stage for an argument that others were implicated in the murders"), aff'd on other grounds, 484 U.S. 231 (1988)). The Supreme Court has also recognized the appropriateness of attacking a government investigation, at least where there is a reasonable possibility of fabrication of evidence. Kyles v. Whitley, 514 U.S. 419, 446 n.15 (1995).

Here, Defendants do not claim that certain evidence is of questionable value as a result of the Government's investigation. There is no contention that the chain of custody is tainted or that evidence is the product of the Government's fraudulent connivance. Rather, Defendants want to probe whether a more robust investigation might have shown that D.M. was the real trafficker. That is problematic on a number of levels.

First, a flawed investigation says nothing about the evidence that the Government may be able to amass against the Defendants. If that evidence meets the standard of proof beyond a reasonable doubt, it makes no difference that the investigation was less than fully robust. The defense effort, therefore, founders on relevance grounds. See McVeigh, 153 F.3d at 1192 (holding that the quality of the Government's investigation was irrelevant because "the issue submitted to the jury is whether the accused is guilty or not guilty"); Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

Second, there is unavoidable speculation in allowing this defense inquiry. A less than fully robust investigation may reveal a flaw, but there is no way to establish that an unflawed

5

investigation would have revealed anything of value to the jury. Speculative evidence is plainly unacceptable. See, e.g., United States v. Catching, 786 F. App'x 535, 539 (6th Cir. 2019) ("[M]ere speculative inferences are never allowable, and cannot be regarded as evidence.") (punctuation modified).

Third, an inquiry into the reasonableness of the Government's investigation would present the very real possibility of jury confusion. How would jurors evaluate the evidence of a flawed investigation against the other evidence in the case that is directly applicable (for and against) Defendants? Would they believe that a severely bungled investigation warrants ignoring compelling evidence of guilt? Potential juror confusion is a legitimate basis for excluding evidence with marginal value, at best. See Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues [or] . . . misleading the jury . . . .").

Fourth, in this case, the jury has already heard, without objection, that S.F.'s boyfriend D.M. was not investigated. Based on defense counsel's statements at trial, the jury will also hear that D.M. assaulted S.F. and was the individual who trafficked her at the Victory Inn. Having other law enforcement witnesses state that the Government investigators should have probed D.M.'s involvement will not add any significant additional probative force to the claim that Bell and/or Nero were not the real traffickers.

Finally, the defense's proposed inquiry would undoubtedly be met with a detailed rebuttal from the Government, in an effort to show how reasonable the investigation was. What investigators reviewed and considered may not otherwise be admissible, such as hearsay statements, but if the defense probe into the reasonableness of the investigation were allowed, the jury would likely have to be presented with evidence they might not otherwise hear. Avoiding

excessive presentation of proofs, especially of evidence not otherwise admissible, counsels against allowing the defense line of inquiry. See Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . undue delay, wasting time, or needlessly presenting cumulative evidence.").

For all these reasons, the Court denies the motion.[1]

### C. The Government's Cross-Motion

The Government's response contains a cross-motion for the Court to "order defendants to refrain from questioning lay witness in violation of the rules of evidence—whether Amarante or 'every single other state police officer'—about their 'opinions' on the efficacy of events for which they have no personal perception." Resp. at 10. The Court declines to give an order to that effect. However, all counsel are expected to comply with the rules of evidence and not ask any question unless they have a reasonable belief that it is appropriate under the rules.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion in limine to permit the attacking of the quality of the Government's investigation (Dkt. 834) is denied. Further, the Government's cross-motion (Dkt. 835) is denied.

SO ORDERED.

Dated: April 25, 2022                              s/Mark A. Goldsmith
Detroit, Michigan                                  MARK A. GOLDSMITH
                                                   United States District Judge

---

[1] Defendants rely on United States v. Poulsen, 543 F. Supp. 2d 809 (S.D. Ohio 2008), where the defendants, before trial, disclosed their intent to offer a witness as "an expert about the Government's investigatory practices and techniques in connection with [healthcare fraud] . . . cases." Id. at 810. The district court declined to exclude the expert's testimony as irrelevant. Id. at 811. However, the court simply declaimed, without analysis, the importance of allowing a challenge to an allegedly flawed government investigation. See id. This Court does not find the opinion persuasive.