UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

D-1, DARRICK DERNARD BELL,

    Defendant.

_____/

Case No. 17-CR-20183

HON. MARK A. GOLDSMITH

**OPINION & ORDER
DENYING DEFENDANT DARRICK BELL'S MOTION FOR JUDGMENT OF
ACQUITTAL OR FOR A NEW TRIAL (Dkt. 934)**

This matter is before the Court on Darrick Bell's motion for judgment of acquittal or, in the alternative, for a new trial (Dkt. 934).[1] For the reasons set forth below, the Court denies the motion in its entirety.

## I. BACKGROUND

Bell was charged with various offenses related to an alleged sex trafficking and drug trafficking conspiracy based at the Victory Inn Hotel in Detroit. After trial, the jury was unable to reach a unanimous verdict as to some of the sex trafficking offenses (Counts One, Three, Four and Five). See 2d Superseding Indictment (Dkt. 681). On the Government's motion, these counts have been dismissed (Dkt. 959). The jury found Bell not guilty of one sex trafficking charge (Count Two) but found him guilty of all drug-related charges (Counts Six, Seven, and Eight).

---

[1] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. L.R. 7.1(f)(2). In addition to Bell's motion, the briefing includes the Government's response (Dkt. 937), amended responses (Dkt. 963, 983), and supplemental memorandum (Dkt. 984).

## II. ANALYSIS

Bell requests that the Court acquit him of all charges pursuant to Federal Rule of Criminal Procedure 29, or, in the alternative, grant him a new trial as to Counts Six, Seven, and Eight pursuant to Federal Rule of Criminal Procedure 33. Mot. at PageID.9883. To the extent Bell seeks acquittal as to Counts One, Three, Four, and Five, his motion is moot. For the reasons stated below, this Court denies Bell's motion for acquittal or a new trial as to Counts Six, Seven, and Eight. The Court will first lay out the standard of review for motions of acquittal pursuant to Rule 29 and motions for a new trial pursuant to Rule 33. The Court will then discuss each remaining count in turn.

### A. Standards of Review

#### i. Federal Rule of Criminal Procedure 29

Rule 29 enables a court to enter an acquittal where a jury has either returned a guilty verdict or failed to return a verdict and where the evidence is insufficient to support a conviction. Fed. R. Crim. Pro. 29(c)(2), (a). "Claims of insufficient evidence are determined by inquiring whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier could have found the essential elements of the crime beyond a reasonable doubt." United States v. Coleman, 458 F.3d 453, 456 (6th Cir. 2006) (punctuation modified). "In examining claims of insufficient evidence, this court does not weigh the evidence presented, consider the credibility of witnesses, or substitute its judgment for that of the jury." United States v. Driver, 535 F.3d 424, 429 (6th Cir. 2008) (punctuation modified). Defendants asserting insufficiency of the evidence arguments have a heavy burden, and circumstantial evidence alone can sustain a conviction. United States v. Wettstain, 618 F.3d 577, 583 (6th Cir. 2010).

**ii. Federal Rule of Criminal Procedure 33**

Rule 33(a) enables "the court [to] vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. Pro. 33(a). "A motion for a new trial under Rule 33 . . . may be premised upon the argument that the jury's verdict was against the manifest weight of the evidence." United States v. Hughes, 505 F.3d 578, 592 (6th Cir. 2007). "A reversal based on the verdict being against the manifest weight of the evidence is proper when the government has presented sufficient evidence to convict, but the judge disagrees with the jury's resolution of conflicting evidence." United States v. Lutz, 154 F.3d 581, 589 (6th Cir. 1998). "When considering a motion for new trial based upon the weight of the evidence, district judges can act in the role of a thirteenth juror and consider the credibility of the witnesses and the weight of the evidence to [e]nsure that there is not a miscarriage of justice." Id. (punctuation modified). A district court should exercise its discretion to overturn a jury's verdict "only in the extraordinary circumstances where the evidence preponderates heavily against the verdict." United States v. Pierce, 62 F.3d 818, 825 (6th Cir. 1995) (punctuation modified).

**B. Narcotics-Related Charges**

**i. Count Six: Narcotics Conspiracy**

Count Six charges conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2. 2d Superseding Indictment at PageID.3863. The elements of this charge are: (i) two or more persons conspired, or agreed, to distribute a controlled substance; and (ii) the defendant knowingly and voluntarily joined the conspiracy. Sixth Circuit Pattern Jury Instructions, 2021 Edition § 14.05. The second superseding indictment charged Bell with responsibility for "280 grams or more of a mixture or substance containing a detectable amount of cocaine base, a Schedule II controlled substance," and "100 grams or more of a mixture

or substance containing a detectable amount of heroin, a Schedule I controlled substance." 2d Superseding Indictment at PageID.3863.

Bell appears to challenge both the sufficiency of the evidence supporting a conspiracy, and the sufficiency of the evidence supporting the jury's finding regarding the amount of drugs attributable to the conspiracy. Mot. at PageID.9888. Bell argues that "[t]he amounts of narcotics allegedly distributed seem to have heavily revolved around the testimony of [J.G. and B.D.]," but "neither of these witnesses was credible[.]" Id.[2] Bell asserts that J.G. "repeatedly fought with counsel during cross-examination," and that B.D. "did not recall an event that another witness testified to . . ., namely his involvement in the overdose death and body disposal of an unidentified individual." Id.

With respect to a motion for acquittal under Rule 29, this Court does not consider the credibility of witnesses. See Driver, 535 F.3d at 429. With respect to a motion for a new trial under Rule 33, the Court can "consider the credibility of the witnesses . . . to [e]nsure that there is not a miscarriage of justice." Lutz, 154 F.3d at 589. To the extent the jury relied on testimony from J.G. and B.D., there is no possibility of a miscarriage of justice—their testimony as to Bell's involvement in the conspiracy and as to the amount of drugs at issue aligns with testimony from multiple other witnesses in this case.

In addition to contesting the credibility of J.G. and B.D., Bell argues that he was not present in any of the relevant surveillance videos. Mot. at PageID.9888. However, multiple witnesses—in addition to J.G. and B.D.—testified as to Bell's involvement in the drug trafficking conspiracy. See 2d Am. Resp. at PageID.10714–10723. For example, there was testimony that Bell rented and

---

[2] The Government asserts that, out of an abundance of caution, witnesses should be identified by initials rather than by their full names to safeguard their safety and privacy. Suppl. Mem. at PageID.10744. The Court follows that practice.

controlled numerous rooms at the Victory Inn for the purpose of drug trafficking. See, e.g., Trial Transcript Vol. 10 at PageID.7555 (Dkt. 914) (AV-1[3] testifying that nearly every room in the Victory Inn was "being used for either the girls or people that were selling drugs for [Bell]"). There was also testimony that Bell was personally involved in drug sales at the Victory Inn. See, e.g., id. at PageID.7547 (AV-1 describing meeting Bell at the Victory Inn, asking him for drugs, Bell directing her "to the room where his drugs were being sold," and AV-1 purchasing some); Trial Transcript Vol. 16 at PageID.8553 (Dkt. 920) (AV-4 testifying that "[w]e would get our drugs from [Bell]"). And there was testimony that Bell provided drugs to his coconspirators for them to sell at the Victory Inn. See, e.g., Trial Transcript Vol. 12 at PageID.7832 (Dkt. 916) (A.P. testifying that coconspirator Avery received the drugs he sold at the Victory Inn from Bell); Trial Transcript Vol. 16 at PageID.8514 (AV-4 testifying that Avery received the drugs he sold at the Victory Inn from Bell).

Moreover, sufficient evidence existed for the jury to reach the conclusion that at least 280 grams of cocaine base and 100 grams of heroin were attributable to Bell, despite Bell's argument that a rival drug distributor, Nathan Bork, was responsible for an unknown quantity of narcotics. See Mot. at PageID.9888 (citing Trial Transcript Vol. 15 at PageID.8324–8325) (Dkt. 919)).

Regarding crack cocaine, B.D. testified that he sold drugs for Bell for four or five months before the Victory Inn was raided by police, and that he was provided with three to six grams of crack cocaine to sell every three or four days. Trial Transcript Vol. 18 at PageID.8814 (Dkt. 922). This equates to B.D. selling at least 90 grams, and up to 300 grams, of crack cocaine himself over the course of just four or five months.[4]

---

[3] "AV" here and elsewhere in the opinion is an abbreviation for "Adult Victim."

[4] Three grams multiplied by 30 days (once every four days for four months) is 90 grams. Six grams multiplied by 50 days (once every three days for five months) is 300 grams.

B.D. also testified that Bell was supplying multiple other individuals at the Victory Inn, and that Avery was "the biggest dealer." Id. at PageID.8812, 8816. J.G. referred to Avery as Bell's "right-hand man." Trial Transcript Vol. 14 at PageID.8235 (Dkt. 918). Avery was selling two- to four-ounce quantities of crack cocaine multiple times per day. See Trial Transcript Vol. 18 at PageID.8815 (B.D. testifying that Avery sold cocaine in these quantities). A.P. testified that Bell supplied Avery with $4,000 worth of crack cocaine "at least three times a day." Trial Transcript Vol. 12 at PageID.7835–7836. B.D. testified that one ounce of crack cocaine cost $1,000–$1,200 to purchase from Bell and could be sold to buyers for $2,200–$2,500. Trial Transcript Vol. 18 at PageID.8819–8820. If A.P.'s testimony is taken to mean that the wholesale cost of each resupply was $4,000, each resupply would have been three to four ounces.[5] If A.P.'s testimony is taken to mean that the retail value of each resupply was $4,000, each resupply would have been 1.6–1.8 ounces.[6]

Assuming B.D. sold only 90 grams of cocaine, the 280-gram threshold is met if other conspirators sold at least 190 grams, which is the equivalent of just under seven ounces.[7] Assuming Avery was supplied with only 1.6 ounces of cocaine at a time, he would have reached more than seven ounces after only five resupplies from Bell.[8] Based on A.P.'s testimony that Avery was resupplied at least three times a day, it would have taken a maximum of two days of sales from Avery to meet the 280-gram threshold. Given that Avery himself was involved in drug

---

[5] $4,000 divided by a wholesale price of $1,000 per ounce is four ounces. $4,000 divided by a wholesale price of $1,200 per ounce is 3.3 ounces.

[6] $4,000 divided by a retail price of $2,200 per ounce is 1.8 ounces. $4,000 divided by a retail price of $2,500 per ounce is 1.6 ounces.

[7] One ounce is equivalent to 28 grams. 190 grams divided by 28 is 6.8 ounces.

[8] Five resupplies multiplied by 1.6 ounces is eight ounces.

6

activity at the Victory Inn from at least September of 2015 through November or December 2016, see Trial Transcript Vol. 12 at PageID.7824–7874, the jury had ample evidence to support the 280-gram finding, even without considering any crack cocaine sold by any coconspirator other than B.D. and Avery. See Trial Transcript Vol. 18 at PageID.8817 (B.D. testifying that Randol was also selling crack cocaine).

Finally, sufficient evidence existed for the jury to conclude that at least 100 grams of heroin were attributable to Bell. B.D. testified that 0.04 grams of heroin were sold for $10, and that one woman at the Victory Inn could individually spend "[$]100 to maybe a couple hundred dollars" on a given day. Id. at PageID.8823–8824.[9] This would be the equivalent of one woman purchasing 0.4–0.8 grams of heroin in one day.[10]

There was testimony that "probably about 20 women," or "between 10 and 20" women, at the Victory Inn were, on a regular basis, involved in a cycle of "making money and spending it on drugs and mak[ing] money and using more drugs." Trial Transcript Vol. 10 at PageID.7569–7570; see also Trial Transcript Vol. 12 at PageID.7846–7849 (A.P. testifying that "anywhere from five to 10" women were "coming back to [Avery] regularly for drugs, then going and doing dates and coming back for more drugs," and describing the symptoms women would experience if they were not able to access sufficient quantities of opiates).

---

[9] B.D. testified that one gram of heroin would be divided into 20 or 24 individual packs, which he would sell for a total of $200 to $240. One gram of heroin divided into 24 packs is 0.04 grams per pack. $200 divided by 20 packs is $10 per pack, and $240 divided by 24 packs is $10 per pack.

[10] $100 divided by $10 portions is ten supplies of heroin a day. Ten supplies multiplied by 0.04 grams of heroin is 0.4 grams of heroin per day. $200 divided by $10 portions is 20 supplies of heroin a day. Twenty supplies multiplied by 0.04 grams of heroin is 0.8 grams of heroin.

Multiple witnesses testified about being dependent on heroin specifically while at the Victory Inn.  Id. at PageID.7843–7844 (A.P. describing dependency on "wake-ups" which consisted of both cocaine and heroin); Trial Transcript Vol. 10 at PageID.7531 (AV-1 describing her use of both crack and heroin as "out of control"); id. at PageID.7533–7536 (explaining that in a 24-hour period she would use "[a]s much [heroin] as possible . . . you wake up and get money to get drugs and do it over and over again" and explaining that one hit of heroin would last five hours at the most); Trial Transcript Vol. 16 at PageID.8468–8473 (AV-4 explaining that she was addicted to both heroin and crack in 2015–2016 and that she was regularly at the Victory Inn during that time; stating, "I really didn't have a limit at that point" as to how much heroin she could use in a 24-hour period); see also Trial Transcript Vol. 10 at PageID.7581 (AV-1 describing AV-2's "very large drug addiction," and stating that AV-2 "loved to do heroin"); Trial Transcript Vol. 18 at PageID.8824 (B.D. explaining that "the girls" needed heroin and were the primary customers for heroin).  AV-4 testified that when women were addicted, they would want to use heroin every four to six hours to avoid feeling sick.  Trial Transcript Vol. 16 at PageID.8468.

Even if only four women—A.P., AV-1, AV-2, and AV-4—purchased only 0.4 grams of heroin each per day, the 100-gram threshold would be satisfied in 63 days.[11]  If 20 women were purchasing 0.8 grams of heroin each per day, the 100-gram threshold would be satisfied in fewer than seven days.[12]  Given that the drug trafficking continued for over a year, it was reasonable for the jury to conclude that Bell was responsible for 100 grams of heroin over the course of the conspiracy.

---

[11] Four women multiplied by 0.4 grams per day multiplied by 63 days is 100.8 grams of heroin.

[12] Twenty women multiplied by 0.8 grams per day multiplied by seven days is 112 grams of heroin.

Considering the entire record, this Court concludes that there was more than sufficient evidence for a jury to return a guilty verdict on Count Six. Moreover, this is not one of the "extraordinary circumstances where the evidence preponderates heavily against the verdict." Pierce, 62 F.3d at 825 (punctuation modified). Bell's motion is denied as to Count Six.

### ii. Count Seven: Maintaining a Drug Premises

Count Seven charged Bell with maintaining a drug premises and aiding and abetting in violation of 21 U.S.C. 856(a)(1) and 18 U.S.C. § 2. 2d Superseding Indictment at PageID.3866. This charge required the Government to prove that (i) the defendant knowingly leased, rented, used, or maintained a place; and (ii) the defendant did so for the purpose of manufacturing, distributing, or using a controlled substance. United States v. Hofstetter, No. 3:15-cr-27-TAV-DCP, 2020 WL 5519171, at *7 n.6 (E.D. Tenn. Sept. 14, 2020) (slip copy). This offense "does not require that drug distribution be the primary purpose, but only a significant purpose" of maintaining the premises. United States v. Russell, 595 F.3d 633, 642 (6th Cir. 2010) (punctuation modified).

The Government correctly points out that Bell does not actually make an argument that the evidence was insufficient or against the manifest weight of the evidence on this count, although he does seek a judgment of acquittal or a new trial with respect to it. 2d Am. Resp. at PageID.10736. Additionally, the Government produced at trial a wide variety of evidence that could reasonably support a conviction on this count. See, e.g., Trial Transcript Vol. 10 at PageID.7555 (AV-1 testifying that "every room basically was being used for either the girls or people that were selling drugs for [Bell]"); Trial Transcript Vol. 13 at PageID.8075 (Dkt. 917) (J.G. testifying that Bell paid for almost all of the rooms upstairs at the Victory Inn, and that in return, "the girls had to buy drugs from [Bell's] crew"); Trial Transcript Vol. 18 at PageID.8850–

8552 (B.D. testifying that Bell called meetings at the Victory Inn in part to discuss how quickly "the girls" were "bringing in money to purchase drugs from [Bell]"); id. at PageID.8785–8788 (B.D. testifying that Bell took him to the Victory Inn so that B.D. could sell drugs there; stating "I was placed in a room [by Bell and another individual] . . . for the purpose of selling crack").

Because there is sufficient evidence to justify a guilty verdict and because the weight of the evidence does not preponderate against the verdict, Bell's motion is denied as to Count Seven.

**iii. Count Eight: Possession with Intent to Distribute a Controlled Substance**

Count Eight charged Bell with possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). 2d Superseding Indictment at PageID.3867.

The Government again correctly points out that Bell does not actually make an argument that the evidence was insufficient or against the weight of the evidence on this count, although he does seek a judgment of acquittal or a new trial with respect to it. 2d Am. Resp. at PageID.10739–10740. Additionally, the Government produced significant evidence at trial that could reasonably support a conviction on this count. For example, witness R.A. testified that she purchased drugs from Bell and also assisted him in selling drugs. Trial Transcript Vol. 26 at PageID.10529–10530 (Dkt. 970). Additionally, Deputy U.S. Marshal Valgoi testified that when Bell was arrested on July 31, 2019, Bell was in possession of items including a brick of cocaine, marijuana that appeared to be packaged for sale, multiple cell phones, and approximately $11,000 in U.S. currency. Id. at PageID.10420–10425.

After reviewing the record, this Court concludes that there was sufficient evidence to support a guilty verdict and that the verdict was not against the weight of the evidence. Bell's motion is therefore denied as to Count Eight.

## III. CONCLUSION

For the reasons explained above, Bell's motion for a judgment of acquittal or for a new trial on Counts Six, Seven, and Eight (Dkt. 934) is denied.

SO ORDERED.

Dated: March 6, 2023　　　　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge