UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                      CASE NUMBER 17-CR-20183

-v-                                          HON. MARK A. GOLDSMITH

D-1 DARRICK DENARD BELL,

        Defendant.
_____/

**<u>GOVERNMENT'S SUPPLEMENTAL BRIEFING FOR SENTENCING</u>**

On April 1, 2024, the Court ordered the parties to file supplemental sentencing briefs. The Court directed the parties to address three specific issues: (1) whether the Court can consider acquitted conduct; (2) did the government waive the right to object to the Probation Department's calculation of the drug weight attributable to Bell; and (3) was the Probation Department correct to score Bell's convictions from 1989 through 1995.

As argued below, the Court can consider acquitted conduct and conduct associated with the counts in the indictment where the jury was deadlocked. The government did not waive the right to object to the Probation Departments drug quantity calculations. Even if the Court concludes that the government did, good cause exists, under Fed. R. Crim. P. 32, for the Court to allow the government to litigate the objection at Bell's sentencing hearing. Finally, the Probation

Department correctly scored Bell's convictions dating back to 1989. The Michigan Department of Corrections verified that Bell was incarcerated on his 1989, 1990, and 1995 convictions until February 5, 2015.

    1.    <u>The Court can consider acquitted conduct and conduct the jury could not agree on when fashioning Bell's sentence.</u>

The Court may consider acquitted conduct for purposes of sentencing. *United States v. Watts*, 519 U.S. 148 (1997); *United States v. White*, 551 F.3d 381, 386 (6th Cir. 2008) (en banc). As to Bell, the government is not asking the Court to use acquitted conduct to increase a mandatory minimum, increase a statutory maximum, or to elevate Bell's advisory guideline range. The government is simply asking the Court, under 18 U.S.C. §§ 3553 and 3661, to consider the totality of the evidence and testimony from trial when fashioning Bell's sentence. It is a "fundamental sentencing principle" that "'a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come'" *Roberts v. United States*, 445 U.S. 552, 556 (1980) (citing *United States v. Grayson*, 438 U.S. 41, 45-50 (1978)).

The only time a sentencing court must rely solely on a jury's factual findings occurs when the factual finding increases the statutory maximum sentence, or when the jury's factual findings increases a mandatory minimum sentence. *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Alleyne v. United States*, 570 U.S. 99

(2013). Otherwise, at sentencing, the district court "is obligated to rely on reliable evidence . . . ." *United States v. Brika*, 487 F.3d 450, 457 (6th Cir. 2007). As to the guidelines and other conduct, a sentencing court is not bound to only consider convicted conduct. For good reasons, a court may consider many facts that existed outside the trial. Courts look beyond factual findings of a jury and at the preponderance of the evidence when determining guideline levels. *United States v. McReynolds*, 964 F.3d 555, 564 (6th Cir. 2020).

Bell was convicted of all drug related counts. (Verdict Form, ECF No. 896). Bell was acquitted only as to AV-1. On all other human trafficking counts, the jury deadlocked. To be clear, when Bell argues against using acquitted conduct, he can only be referring to the portion of the evidence associated with Count Two of the eight count Indictment. As to the hung counts, a "jury's inability to reach a verdict on a particular count under a reasonable-doubt standard does not require district courts to employ anything other than a preponderance standard at sentencing . . ." when considering that evidence. *Brika,* 487 F.3d at 459 (citing cases). If district courts can consider acquitted conduct "using only a preponderance-of-the-evidence standard, then surely they may employ conduct on which a jury could not agree using the same standard." *Id*. There is no reason to exclude, at sentencing, conduct "on which a jury either deadlocked or rendered a judgment of acquittal." *Id*. This is especially true when the Court sat through the trial. "It goes without saying that

-3-

district courts hear first-hand evidence pertaining to such conduct and that defense counsel has the opportunity to test the reliability of evidence pertaining to that conduct at trial." *Id*.

In *White*, 551 F.3d at 386, the Sixth Circuit "granted en banc review to decide whether the district court's consideration of acquitted conduct in sentencing passes constitutional muster." White received a ten-level increase for "aiding in another robber's discharge of a weapon inside the bank," and a three level increase for "aiding another robber in firing "at least two gunshots at a pursuing police car." *Id*. at 388. The jury had acquitted White of those specific charges and counts. "The two judicial upward adjustments for acquitted charges account[ed] for approximately 14 years of the 22-year sentence." *Id.*

The Court ruled that a court's consideration of acquitted conduct in sentencing "passes constitutional muster." *Id.* at 386. "Our sister circuits agree that it does, insofar as enhancements based on acquitted conduct do not increase a sentence beyond the maximum penalty provided by the United States Code." *Id.* Later, the Sixth Circuit explained that "the district court in *White* did not sentence the defendant based on 'acquitted conduct,' but rather applied a different burden of proof to the record evidence in order to determine whether a certain sentencing enhancement should apply." *McReynolds*, 964 F.3d at 564. The law of the Circuit allows a sentencing judge to enhance a defendant's sentence based on acquitted

-4-

conduct "so long as that conduct has been proved by a preponderance of the evidence." *White*, 551 F.3d at 383 (citing *United States v. Watts,* 519 U.S. 148, 157 (1997)). To answer the Court's question, it may consider acquitted conduct at sentencing.

Congress made this principle abundantly clear when it enacted 18 U.S.C. § 3661, which provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. *See*, 18 U.S.C. § 3661; *United States v. Watts*, 519 U.S. 148, 151 (1997) ("sentencing courts have broad discretion to consider various kinds of information").

At sentencing, a district court could consider evidence illegally obtained by law enforcement, or that might otherwise be inadmissible under the Constitution or rules of evidence. *United States v. Silverman*, 976 F.2d 1502, 1509-11 (6th Cir. 1992). The defendant's due process rights, in this context, extend only to the right "not to be sentenced on the basis of invalid information," and to "be given an opportunity to rebut any challenged information." *Id.* at 1516 (citations, internal quotation marks, and emphasis omitted). "Both Congress and the Sentencing Commission thus expressly preserved the traditional discretion of sentencing courts to 'conduct an inquiry broad in scope, largely unlimited either as to the kind

-5-

of information [they] may consider, or the source from which it may come.'" *United States v. Taylor*, 648 F.3d 417, 426 (6th Cir. 2011) (internal citations omitted). *See also United States v. Kontrol*, 554 F.3d 1089, 1094 (6th Cir. 2009) ("Far from confining the evidence sentencing courts may consider, Congress has insisted that the door remain wide open. [Sometimes] this latitude benefits defendants; sometimes it does not.")

     Bell argues that the Court should not consider any facts separate from the crimes of conviction. Essentially, that the Court cannot consider the role human trafficking played in Bell's drug trafficking conspiracy, as the human trafficking falls under the umbrella of non-conviction-based conduct. But, Bell knowingly structured his drug conspiracy around the victims of human trafficking. Their ability to earn money on Michigan Avenue, all day and night, gave them a stream of money to buy his drugs. Their enslavement to their addictions made them his top consumers. Their need to engage in commercial sex acts, to pay their drug debts and buy more drugs, was also a lure to bring johns (who frequently purchased Bell's drugs) to the Victory Inn. Bell created an inseparable connection between the success of his drug trafficking conspiracy and the women engaged in commercial sex acts. Now, contrary to the law, Bell argues that the Court cannot consider any of this evidence at sentencing.

The law does not prevent this Court from considering how Bell capitalized off these women. To impose a just sentence, under Section 3553, the Court must consider the sinister way in which Bell designed his drug trafficking conspiracy to exploit the women. How Bell and his co-conspirators integrated the women into the conspiracy by fronting them drugs, giving them rooms, threatening them with violence, and directing them to only buy drugs from his conspiracy. The Court must consider Bell's knowledge that the women's addiction was so severe that they could not live without his drugs. This Court is well within its statutory discretion to weigh all aspects of Bell's conduct, knowledge, and planning given the wide latitude permitted by Section 3661. The Court also has wide discretion "in what it may consider as relevant in implementing § 1B1.3." *United States v. Hough*, 276 F.3d 884, 898 (6th Cir. 2002).

The Court can also consider evidence that established Bell engaged in human and drug trafficking in Oakland County prior to his involvement with the Victory Inn. The Court "may appropriately consider any responsible information of a relevant nature . . . including evidence of criminal charges for which the defendant may never have been tried." *Collins v. Buchkoe*, 493 F.2d 343, 345 (6th Cir. 1974) (internal citations omitted).

Outside of impermissible factors the Court cannot consider (race, sex, national origin, etc.), there is no limit on the information a court can consider

-7-

regarding a defendant's background, character, and conduct. 18 U.S.C. § 3661. Sentencing courts maintain the discretion to "conduct an inquiry broad in scope, largely unlimited either as to the kind of information [they] may consider, or the source from which it may come." *Pepper v. United States*, 562 U.S. 476, 489 (2011). Justice "generally requires consideration of more than the particular acts by which the crime was committed . . . [taking] into account the circumstances of the offense together with the character and propensities of the offender. His past may be taken to indicate his present purposes and tendencies and significantly to suggest the period of restraint and the kind of discipline that ought to be imposed upon him." *Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55 (1937).

Contrary to Bell's position, this Court should not turn a blind eye to the full scope of Bell's criminal conduct. The Court has the discretion to consider all the reliable evidence presented by the parties when fashioning Bell's sentence.

> 2. The government did not waive the right to object to the drug quantity, determined by the Probation Department, in the PSR.

Fed. R. Crim. P. 32 and Sixth Circuit case law clearly instructs a district court to resolve a disagreement as to the drug quantity, attributable to a defendant, prior to sentencing. The government concedes it should have done a better job clarifying its position on this issue during the 14 day PSR objection period. But, the government's sentencing memorandum clearly demonstrated that it opposed the drug quantity calculations proposed in the PSR. Regardless, Rule 32 permits any

-8-

party to raise an objection, prior to sentencing, for good cause. Unquestionably, resolving the issue of the drug quantity attributable to Bell, thus, ensuring the proper calculation of his advisory guideline range, qualifies as good cause. Having established good cause, and based on the below caselaw, the Court needs to properly calculate the drug quantity attributable to Bell.

Fed. R. Crim. P. 32(i)(3)(B) requires a district court to resolve any disputed portion of the presentence report or other controverted matter. If the objection satisfies that criterion, "the court must either make a finding on the objection or decide that a finding is not required because the matter will not affect sentencing or that the matter will not be considered at all in sentencing." Rule 32 Advisory Committee Notes (2002 Amendments). Rule 32 does not mention a waiver or a forfeit of an objection for any deficiencies in the written objections. In fact, for good cause, Rule 32(i)(1)(D) permits a party to make a new objection at any time before sentence is imposed.

Under Rule 32, "[t]he district court must affirmatively rule on a controverted matter where it could potentially impact the defendant's sentence." *United States v. White*, 492 F.3d 380, 415 (6th Cir. 2007). Compliance with Rule 32 "helps to ensure that defendants are sentenced on the basis of accurate information and provides a clear record for appellate courts [and others] who may later be involved in the case." *United States v. Williams*, 612 F.3d 500, 515 (6th Cir. 2010) (citing

*United States v. Tackett*, 113 F.3d 603, 613–14 (6th Cir. 1997)). *See also United States v. Lamb*, 726 F. App'x 430, 432-33 (6th Cir. 2018) ([t]he defendant "adequately raised his missing objections when he tried to recite them at the hearing." Since "the disputed enhancement increased Lamb's offense level by four points, the court's failure to rule on it was not harmless"); and *United States v. Higgins*, No. 22-3538, 2023 WL 6536752, at *13 (6th Cir. Oct. 6, 2023) ([u]nder Fed. R. Crim. P. 32(i)(3)(B), the district court's silence on defendant's objection at sentencing "deprived [the defendant] of his 'right to meaningful appellate review'" and "affect[ed] the 'fairness, integrity, or public reputation of the judicial proceedings.'") (internal citations omitted). "Under Rule 32, it is clear that the defendant and the Government enjoy equal procedural entitlements." *Burns v. United States*, 501 U.S. 129, 135 n.4 (1991).

When sentencing in a drug case, Sixth Circuit precedent requires the Court to calculate the correct base offense level based on the drug quantity attributable to a defendant. A "sentencing judge may find (by a preponderance of the evidence) that a defendant is responsible for a greater quantity of drugs than determined by the jury." *United States v. Reed*, 72 F.4th 174, 189 (6th Cir. 2023) (citing *United States v. Castro*, 960 F.3d 857, 868 (6th Cir. 2020)). When "calculating a defendant's base offense level under the Guidelines, a sentencing court must consider the quantity of drugs that are part of the same course of conduct or

common scheme or plan." *United States v. Walker*, 399 F. App'x 75, 82 (6th Cir. 2010). A defendant's base offense level under the Sentencing Guidelines for a drug trafficking conviction is predicated on the total quantity of drugs distributed during the scheme. USSG § 2D1.1(a), (c). The defendant is responsible for the quantity of drugs which he personally distributed, as well as "any quantity that is a reasonably foreseeable consequence of the conspiracy." *United States v. Anderson*, 333 F. App'x 17, 25 (6th Cir. 2009); *see also* USSG § 1B1.3(a)(1)(B). The total drug quantity need only be established by a preponderance of the evidence and can include acquitted conduct. *United States v. Young*, 553 F.3d 1035, 1050 (6th Cir. 2009) (citing *United States v. Mendez*, 498 F.3d 423, 427 (6th Cir. 2007) and *White*, 551 F.3d at 382)).

An estimate of the quantity of drugs distributed will suffice "so long as it errs on the side of caution and likely underestimates the quantity of drugs actually attributable to the defendant." *United States v. Anderson*, 526 F.3d 319, 326 (6th Cir. 2008); *see also* USSG § 2D1.1 cmt. n.5. The estimate of drugs distributed by the defendant may be based on circumstantial evidence, *United States v. Gauna*, 485 F. App'x 70, 74 (6th Cir. 2012), but it must have a "minimal level of reliability beyond mere allegation." *United States v. Keszthelyi*, 308 F.3d 557, 576 (6th Cir. 2002).

In estimating the drug quantity imputable to Bell, "the district court may rely on coconspirator testimony." *United States v. Mosley*, 53 F.4th 947, 962 (6th Cir. 2022) (citing *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008)); *see also United States v. Swanberg*, 370 F.3d 622, 625 (6th Cir. 2004) (internal citations omitted) ("[t]estimonial evidence from a coconspirator may be sufficient to determine the amount of drugs for which another coconspirator should be held accountable."))

Under USSG § 1B1.3, district courts must calculate the drug quantity based on the "relevant conduct" underlying a defendant's offense. Relevant conduct always includes anything that a defendant personally did (or aided and abetted). USSG § 1B1.3(a)(1)(A). But in a conspiracy, it extends more broadly. It includes "all acts" of coconspirators that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity. USSG § 1B1.3(a)(1)(B). The "goal" of § 1B1.3 "is to allow a court to impose sentences commensurate with the gravity of the offense." *United States v. Kappes*, 936 F.2d 227, 229 (6th Cir. 1991).

"[I]n order to hold a defendant accountable for the acts of others [under § 1B1.3(a)(1)(B)], a district court must make two particularized findings: (1) that the acts were within the scope of the defendant's agreement; and (2) that they were foreseeable to the defendant." *McReynolds*, 964 F.3d at 563 (citing *United States v.*

*Campbell*, 279 F.3d 392, 399–400 (6th Cir. 2002)). In making this determination, the district court may consider "any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others." USSG § 1B1.3 cmt. n.3(B).

"A drug quantity need only be established by a preponderance of the evidence, and an estimate will suffice . . . ." *Anderson*, 526 F.3d at 326 (citing *United States v. Davis*, 981 F.2d 906, 911 (6th Cir. 1992)) ("[w]here there is no drug seizure . . ., the court shall approximate the quantity of the controlled substance. In making this determination, the court may consider, for example, the price generally obtained for the controlled substance . . . ."); and *Walker*, 399 F. App'x at 82 (internal citations omitted)). Objections alone are not enough; the defendant must produce some contradictory evidence at the sentencing hearing. *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003); *see also United States v. Adkins*, 729 F.3d 559, 570 (6th Cir. 2013) ("The defendant . . . gets no free ride: he must produce more than a bare denial, or the judge may rely entirely on the PSR.") (internal citation omitted).

In this case, the PSR calculated the drug quantity based on the jury's verdict that Bell distributed 280 grams or more of cocaine base and 100 grams or more of heroin. (Verdict Form, ECF No. 896, PageID.6623, 6624; PSR, ECF No. 1020, PageID.11074). Bell agreed with the drug quantity as determined in the PSR. But, the PSR ignored the evidence at trial and relied solely on the jury's verdict to

-13-

determine quantity. The Court can and must look beyond the jury's verdict, review the witness testimony quoted in the government's sentencing memorandum, and determine the fair drug quantity attributable to Bell. Without such a determination, the Court cannot reach the proper advisory guideline range prior to imposing Bell's sentence.

    3.    <u>The Probation Department was correct in scoring Bell's prior convictions between 1989, through and including, 1995.</u>

The government contacted the Michigan Department of Corrections (MDOC) regarding Bell's prior convictions. A review of their records validated the conclusion of the United States Probation Department. Bell was incarcerated in case numbers 89-004338, 90-004698, 90-004699, and 95-03595 until February 5, 2015. *See* Gov. Ex. 1, Declaration of Kimberly Graham. Therefore, under USSG § 4A1.1(a), his prior convictions identified in PSR ¶¶ 38-42, are properly scored as part of his criminal history category.

    4.    <u>Conclusion</u>

Based on the aforementioned arguments, the government moves this Honorable Court to (1) consider the totality of Bell's conduct, under 18 U.S.C. §§ 3553 and 3661 when determining his sentence; (2) calculate the drug quantity

attributable to Bell; and (3) find that the Probation Department properly scored Bell's criminal history in the PSR.

                                                Respectfully Submitted,

                                                DAWN N. ISON
                                                UNITED STATES ATTORNEY

                                                s/*Matthew Roth*
                                                Matthew Roth
                                                Blake Hatlem
                                                Lisandra Fernandez-Silber
                                                Assistant United States Attorneys
                                                211 West Fort Street, Suite 2001
                                                Detroit, Michigan 48226
                                                Matthew.Roth2@usdoj.gov
                                                313-226-9186

Dated: May 15, 2024

CERTIFICATE OF SERVICE

I certify that on Wednesday, May 15, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

James W Amberg

jamberg@amberglaw.net

*s/Matthew Roth*
Matthew Roth
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
matthew.roth2@usdoj.gov
(313) 226-9186
P58549