# US DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION-DETROIT

**UNITED STATES OF AMERICA**

                    **Plaintiff,**

**v.**                                                    **Case No. 17-20183**
                                                          **Hon. Mark Goldsmith**

**D-1 DARRICK BELL**

                    **Defendant.**

_____/

| | |
|---|---|
| UNITED STATES ATTORNEY | AMBERG & AMBERG, PLLC |
| Dawn Ison (P43111) | James W. Amberg (P68564) |
| Matt Roth, Blake Hatlem | Attorneys for D-1 Darrick Bell |
| Attorneys for the Government | 32121 Woodward Ave, Ste PH |
| 211 W. Fort Street, Suite 2001 | Royal Oak, MI 48073 |
| Detroit, MI | 248.681.6255 office |
| 313.226.9100 office | 248.681.0115 fax |
| | www.amberglaw.net |

_____/

<div style="writing-mode: vertical-rl">AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET
(248) 681-6255</div>

## MEMORANDUM REGARDING DRUG QUANTITIES
━━━━━━━━━━━━━━━━━━━━━━━━━

        Now comes Darrick Bell, by his attorney James Amberg, by his attorney, and provides the Court with this additional memorandum concerning the Probation Department's calculation of drug quantities involved in Mr. Bell's case.  Mr. Bell has reviewed this calculation and objects to the amounts the Probation Department attaches to Mr. Bell for numerous reasons.

        The Probation Department holds Mr. Bell responsible for both heroin and crack cocaine sales attributed to Daugherty, Avery, and Randol.  The basis of this is trial testimony.  At trial, only Daugherty testified.  Mr. Daugherty testified that during his time at the Victory Inn, he received his crack cocaine directly from either Avery or Mr. Bell.  (Trial Vol 18: Pgs 83-84)  As to heroin, Daugherty indicated his source was solely Avery.  (Trial Vol 18: Pg 84)

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

Although the Government contended Mr. Bell was the source of all of the narcotics that Avery sold, during the trial it became apparent that this was not the case.  Specifically Gaggo testified that she had seem an individual named Nathan Bork appear on the hotel video with Daugherty, Randol, and Avery.  (Trial Vol 15: Pgs 37-38)  Important to this memorandum, Gaggo agreed that Bork was a big-time drug dealer.  (Trial Vol 18: Pg 35; Lns 20-25)  Gaggo took this a step further, testifying that she suspected Avery was purchasing drugs from and working for Bork.  (Trial Vol 18: Pg 37; Lns 9-14)  Gaggo took the step to report her suspicion to Mr. Bell.  (Trial Vol 18: Pg 37; Lns 9-10)

These observations directly undercut the narrative that Mr. Bell was the sole provider of narcotics to Avery, Randol, and Daugherty.  Clearly these individuals were being supplied by a "big-time" drug dealer that was not Mr. Bell during the times involved in the conspiracy and specifically, the calculations of Probation.  Given this, how much of the crack cocaine and heroin sold by Avery, Randol, and Daugherty was due to Bork?  If the answer is any, then the Probation Department's calculation is incorrect.  An actual tally is impossible to create and instead the Court must err on the side of caution and attribute nothing more than a nominal amount to Mr. Bell.

As to specifics with Avery, Probation attributed 244 grams of heroin.  It appears that this amount came from Daugherty's testimony.  But Daugherty did not testify to a frequency of heroin sold by Avery.  (Trial Vol 18: Pg 84)  Instead, Daugherty specifically stated that he did not know how much heroin Avery was selling.  (Trial Vol 18: Pg 84; Lns 22-23)  Because of this, Probation's calculation is fatally flawed as it is speculative and without a foundational basis.  Instead, to err on the side of caution, the Court must attribute a far lower amount of heroin from Avery.

Other witnesses testified that there were multiple sources of drugs.  For example, S.F. testified that McAlpane, an enemy of Mr. Bell, was a drug dealer that would rent her rooms at the Victory Inn during the time period involved in the case.  (Trial Vol 11: Pg 56)  Further, S.F. testified that another drug dealer associated with the Victory Inn, O'Neal, sold drugs during this time period.  (Trial Vol 11: Pg 62)  A.P. seconded this, testifying that her friends would also buy drugs from people such as McAlpane.  (Trial Vol 13: Pgs 11-12)  In fact, many of the women that the Government argued were connected to Mr. Bell actually lived with McAlpane.  (Trial Vol 13: Pgs 11-12)  Finally, A.P. testified as to other drug dealers at the Victory Inn beyond O'Neal and McAlpane, such as Pruitt and the Twins. (Trial Vol 12: Pgs 148-149)

The Jury only decided that Mr. Bell was responsible for more than 280 grams or more of cocaine base and 100 or more grams of heroin.  (ECF 896; Verdict Form)  This is the only just result for amounts as all of the additional amounts are speculative.  As such, and as before, Mr. Bell requests the Court attribute 248 grams of cocaine base and 100 grams of heroin rather than the much higher speculative amount proposed by the Probation Department.

<div style="text-align:right">

Respectfully submitted,

/s/*James W. Amberg*
AMBERG & AMBERG, PLLC
James W. Amberg P68564
Attorneys for Mr. Bell
32121 Woodward Ave. Suite PH
Royal Oak, MI 48073
248.681.6255 office
</div>

Dated:  July 22, 2024

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
32121 WOODWARD AVENUE, PH
ROYAL OAK, MI 48073
WWW.AMBERGLAW.NET

(248) 681-6255

## *Certificate of Service*

I, James W. Amberg, attorney at law, certify that on July 22, 2024, I caused a copy of this Supplement to be served upon the Clerk of the Court and Government via efile.

/s/  *James W. Amberg*
James W. Amberg (P68564)